UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
105 STREET ASSOCIATES, LLC,                          :

                              Plaintiff,                 :        05 Civ. 9938 (VM) (DF)

    -against-                                                   :        **MEMORANDUM AND ORDER**

GREENWICH INSURANCE COMPANY,             :

                          Defendants.              :
------------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge.**

      This insurance coverage action has been referred to me for general pretrial supervision. Pending before the Court is a discovery dispute as to whether non-party Wilson, Elser, Moskowitz, Edelman & Dicker LLP ("Wilson, Elser"), which served as "coverage counsel" (and now serves as litigation counsel) for defendant Greenwich Insurance Company ("Greenwich"), should be required to produce certain documents in response to a subpoena *duces tecum* served on it by Plaintiff 105 Street Associates, Inc. ("105 Street"). Wilson, Elser maintains that the documents at issue are protected from disclosure under the attorney-client privilege and/or the work product doctrine. 105 Street, however, argues that the documents should be produced either because privilege has been waived as a result of Wilson, Elser's failure to produce a privilege log in a timely manner, or because the documents are not actually privileged or subject to work product protection. The parties' dispute is resolved as set forth below.

## BACKGROUND

      In this action, 105 Street seeks to compel its insurer, Greenwich, to defend and indemnify it in connection with an underlying personal injury suit. Greenwich declined coverage based on a defense of late notice.

The parties' disagreement here centers on the role played by Wilson, Elser in the investigation and analysis of 105 Street's insurance claim. In response to an interrogatory calling for it to identify "each person who participated in any evaluation or investigation concerning whether to approve or deny coverage, defense or indemnity" with respect to the underlying claims, Greenwich identified three individuals: Michael Barnaba ("Barnaba"), a senior claims analyst at XL Insurance and/or XL Specialty Claims Administrators ("XL");[1] Edward Walsh ("Walsh"), a senior claim account manager at XL; and Stephen A. Postelnek ("Postelnek"), a former member of Wilson, Elser (now deceased). (*See* Letter to the Court from Donald F. Schneider, Esq., dated June 30, 2006 ("6/30/06 Schneider Ltr."), Ex. B, at 4 (Answer to Interrogatory No. 1(a)).)

105 Street asserts that, according to the discovery record to date, it appears that Barnaba asked Postelnek to provide an opinion as to whether there was support for a "late notice" defense, Postelnek provided such an opinion, and then Walsh decided to deny coverage solely in reliance on that opinion, without doing any independent analysis of the issue. (*See* 6/30/06 Schneider Ltr., Ex. C (note by Barnaba, indicating that he had "requested permission to consult with coverage counsel as late reporting denial may be supported"); *id.*, Ex. D, at p. 12, ll. 13-19, and p. 24, ll. 13-18 (deposition testimony by Walsh that he knew nothing about the case other than to review and approve the draft coverage denial prepared by "coverage counsel" and sent to him by Barnaba).) 105 Street contends that Wilson, Elser acted in the role of investigator in the process of determining whether Greenwich should approve or deny coverage for 105 Street's claim, and that, therefore, any work done by Wilson, Elser prior to Greenwich's decision to

---

[1] It appears that XL is Greenwich's claims administrator. (*See* Letter to the Court from Donald F. Schneider, Esq., dated May 25, 2006 ("5/25/06 Schneider Ltr."), at 4.)

2

decline coverage is not immune from discovery as privileged. (*See* 6/30/06 Schneider Ltr. at 2; *see also* Letter to the Court from Donald F. Schneider, Esq., dated June 6, 2006, at 3-7.)

For its part, Wilson, Elser contends that it was retained as "coverage counsel" because there would probably be a denial of coverage, and that, as Walsh apparently testified in his deposition, "coverage counsel does not do investigation." (*See* Letter to the Court from Glenn J. Fuerth, Esq., dated June 7, 2006, at 2-3.) Wilson, Elser argues that it was at all times acting in no other capacity than as counsel for Greenwich, and that the documents sought are protected by the work product doctrine and the attorney-client privilege. (*See* Letter to the Court from Glenn J. Fuerth, Esq., dated June 27, 2006.)

## DISCUSSION

I. **APPLICABLE LEGAL STANDARDS**

    A. **The Work Product Doctrine**

Rule 26(b)(3) of the Federal Rules of Civil Procedure protects, as work product, documents prepared "in anticipation of litigation or for trial by or for [a] party or by or for that . . . party's representative (including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent)." The phrase "in anticipation of litigation" has been construed by the Second Circuit to mean that, "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *U.S. v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024, at 343 (1994)).

As many courts have noted, it often is difficult to determine whether documents prepared by an insurance company or its representatives are entitled to work product protection because insurers are in the business of investigating and adjusting claims. *See SEC v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395 (RWS), 2002 U.S. Dist. LEXIS 627, at *5 (S.D.N.Y. Jan. 16, 2002) (citing cases); *see also Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs.*, No. 96 Civ. 5590 (MJL) (HBP), 1998 U.S. Dist. LEXIS 16183, at *16 (S.D.N.Y. Oct. 16, 1998) ("Application of the work-product doctrine to documents prepared by insurance companies has been particularly troublesome because it is the routine business of insurance companies to investigate and evaluate claims and to defend their insureds against third-party claims."). Thus, in the insurance context, it is particularly important that the party opposing production of the documents, on whom the burden of proof as to privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation. *Weber v. Paduano*, No. 02 Civ. 3392 (GEL), 2003 U.S. Dist. LEXIS 858, at *12 (S.D.N.Y. Jan. 22, 2003).

Although the Court's determination of the point at which "an investigation conducted by counsel crosses the line from business-centered (and unprotected) to litigation-centered . . . must be determined on a case-by-case basis," *Evanston Ins. Co. v. OEA, Inc.*, Misc. M8-85, Related Case No. CIV-02-1505 (E.D. Cal.), 2006 U.S. Dist. LEXIS 26330, at *10 (S.D.N.Y. May 4, 2006), "courts frequently presume that investigative reports prepared by or for an insurer prior to a coverage decision are prepared in the ordinary course of the insurer's business and are not afforded work-product protection," *Mount Vernon*, 1998 U.S. Dist. LEXIS 16183, at *18 (citations omitted); *see also Tudor Ins. Co. v. McKenna Assocs.*, No. 01 Civ. 0115 (DAB) (JCF), 2003 U.S. Dist. LEXIS 10853, at *8 (S.D.N.Y. June 25, 2003) ("An insurer's decision to decline

coverage is typically the point at which the ordinary course of business ends and the anticipation of litigation begins." (citations omitted)). Courts have applied this rule even when such documents are generated by attorneys. *See Evanston*, 2006 U.S. Dist. LEXIS 26330, at *9 (explaining that "the determination to pay (or, more often, not to pay) on an insurance claim has often been held to be a routine business function, even if performed by outside counsel"); *see also Reliance Ins. Co. v. Am. Lintex Corp.*, No. 00 Civ. 5568 (WHP) (KNF), 2001 U.S. Dist. LEXIS 7140, at *5-6 (S.D.N.Y. June 1, 2001) ("'Merely because such an investigation was undertaken by attorneys will not cloak the reports and communications with privilege because the reports, although prepared by attorneys, are prepared as part of the "regular business" of the insurance company.'" (quoting *Bertalo's Restaurant v. Exchange Ins. Co.*, 658 N.Y.S.2d 656, 659 (2d Dep't 1997))).

  B. <u>**Attorney-Client Privilege**</u>

  As jurisdiction in this case is based on diversity, the New York law of privilege applies. *See Mt. Vernon*, 1998 U.S. Dist. LEXIS 16183, at *8. In New York, the attorney-client privilege protects confidential communications between attorney and client relating to legal advice. *Id.* (citing N.Y. C.P.L.R. § 4503(a)); *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 540 N.E.2d 703, 706 (N.Y. 1989)). Availability of the privilege does not depend on the existence or prospect of litigation, *Bank Hapoalim, B.M. v. American Home Assurance Co.*, No. 92 Civ. 2561 (KMW), 1994 U.S. Dist. LEXIS 4091, at *10 (S.D.N.Y. Apr. 6, 1994), but turns on whether the communication, viewed in its full content and context, is of a legal character, *id.* at *15 (citing *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 581 N.E.2d 1055, 1060-61 (N.Y. 1991)). Further, while the privilege protects only communications, and not underlying facts, the inclusion of

nonprivileged information "in an otherwise privileged lawyer's communication to its client – while influencing whether the document would be protected in whole or only in part – does not destroy the immunity." *Spectrum*, 581 N.E.2d at 1060; *see Rossi*, 540 N.E.2d at 706 ("So long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters.").

Although "[i]n the context of insurance litigation, attorney-client communications have been denied protection when it appears the attorney is merely *investigating* a claim on a policy," *Evanston*, 2006 U.S. Dist. LEXIS 26330, at *11 (emphasis added), when such communications relate to *legal advice*, they do not lose the protection of the attorney-client privilege simply because they involve an insurance claim. *See Tudor*, 2003 U.S. Dist. LEXIS 10853, at *7 (finding that communications between the insurer and coverage counsel that related to the provision of legal advice were privileged and did not need to be disclosed); *see also Reliance*, 2001 U.S. Dist. LEXIS 7140, at *5-6 (distinguishing between "attorneys' reports and communications deemed to be not primarily of a legal character," which are not protected by the attorney-client privilege, and communications consisting of legal advice and opinion that "are primarily of a legal character," which are protected by the privilege).

## II.  THE DOCUMENTS AT ISSUE

### A.  Failure to Timely Produce a Privilege Log

The Court first addresses 105 Street's argument that Greenwich has waived any purported privilege or work-product immunity as to any withheld documents because it failed to produce a privilege log in a timely manner. Local Civil Rule 26.2 mandates that, where a claim of privilege is asserted in response to a document request, a privilege log must be produced at the

time of the response to such request, unless otherwise ordered by the Court. *See* Local Civil Rule 26.2(c). Here, while Greenwich's responses to 105 Street's document demand were due on May 1, 2006, Greenwich did not actually produce documents until May 16, 2006, and did not provide a privilege log until May 26, 2006, after several requests were made by 105 Street's counsel. (*See* 5/25/06 Schneider Ltr. at 1-2; Letter to the Court from Donald F. Schneider, Esq., dated May 30, 2006, at 1.)

Judges in this district have repeatedly held that "the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege." *FG Hemisphere Assocs. v. Du Congo*, No. 01 Civ. 8700 (SAS) (HBP), 2005 U.S. Dist. LEXIS 3523, at *14 (S.D.N.Y. Mar. 8, 2005); *see id.* at *14-16 (citing cases). Nonetheless, "[o]f relevance to such a determination is the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties." *AFP Imaging Corp. v. Philips Medizin Sys.*, No. 92 Civ. 6211 (LMM) (THK), 1993 U.S. Dist. LEXIS 18234, at *7 (S.D.N.Y. Dec. 28, 1993). In this instance, Greenwich has explained that its production of the privilege log was delayed by the illness of an attorney working on the matter. (*See* Letter to the Court from Glenn J. Fuerth, Esq., dated June 1, 2006.) Thus, while the Court cautions Wilson, Elser that the appropriate response to such an unexpected delay is to seek an extension of time from opposing counsel or from the Court, the Court declines to impose the harsh remedy of finding privilege waived.

B. **Work Product Protection**

With respect to the assertion of work product protection, the Court notes that, with the exception of Document No. GR 401-02, which is listed on the privilege log as "undated," all of

the documents at issue were created prior to September 20, 2004, the date on which Greenwich declined coverage. Greenwich has not sustained its burden of demonstrating, by specific and competent evidence, that these documents were created in anticipation of litigation. *See Weber*, 2003 U.S. Dist. LEXIS 858, at *12. As there is no apparent reason why Greenwich would have anticipated litigation prior to its decision to decline coverage on 105 Street's claim, *see Evanston*, 2006 U.S. Dist. LEXIS 26330, at *10, materials generated prior to September 20, 2004 are not entitled to work product protection. Accordingly, with the exception of Document No. GR 401-02, work product protection is denied to all documents that have been submitted. As to Document No. GR 401-02, while the document itself appears to be undated, there are dates on the second page of the document that indicate that the document was prepared by Wilson, Elser after the commencement of the instant litigation. As such, Document No. GR 401-02 is entitled to work product protection and need not be produced.

### C. Attorney-Client Privilege

Finally, with respect to the assertion of attorney-client privilege, the Court has reviewed the documents *in camera* and finds as follows:

#### 1. Document Nos. GR 288 and GR 289-93

Document No. GR 288 is a one-page letter, dated September 1, 2004, from Barnaba to Postelnek, that requests legal advice. Document No. GR 289-93 is a five-page letter, dated August 25, 2004, from Barnaba to Postelnek, that requests legal advice.[2] Accordingly, these documents are protected by the attorney-client privilege and need not be produced.

---

[2] Document No. GR 294-97 is a document entitled "Guidelines Regarding Payment of Defense Costs," which was apparently attached to this letter (GR 289-93). The parties have agreed that this document need not be produced. (*See* Stipulation, so ordered June 26, 2006.)

### 2. Document No. GR 298-99

Document No. GR 298-99 is a two-page letter, dated August 25, 2004, from Barnaba to Estelle Rodriguez at 105 Street. According to Greenwich's privilege log, it appears that this letter was attached to the above 5-page letter from Barnaba to Postelnek (GR 289-93). Yet, even if this letter was sent to Postelnek by Barnaba, there is no indication that Barnaba sought specific legal advice regarding the letter. Further, there is no indication that this letter was not, in fact, sent to 105 Street. Accordingly, Document No. GR 298-99 is not protected by the attorney-client privilege and must be produced.

### 3. Document No. GR 300-06

Document No. GR 300-06 is a six-page letter, dated September 10, 2004, from Postelnek to Barnaba, which is described in Greenwich's privilege log as the "first report of coverage counsel." This document contains both factual background and legal analysis and advice regarding 105 Street's claim.

Although underlying facts are not protected by the attorney-client privilege, *see Spectrum*, 581 N.E.2d at 1060; *see also Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, 80 (S.D.N.Y. 1986) (explaining that the privilege does not protect facts that an attorney obtains from independent sources and then conveys to the client), where facts are presented "as the foundation for the [lawyer's] legal advice" in a communication that is "primarily and predominantly of a legal character," the entire communication may retain its privileged status, *see Spectrum*, 581 N.E.2d at 1061 (finding the entire document at issue exempt from discovery where "the narration relate[d] and integrate[d] the facts with the law firm's assessment of the client's legal position"). Here, however, it is unnecessary to attempt to distinguish between the portion of the document that sets forth only factual narrative, and the

portion of the document that contains legal analysis, as the Court finds that, with the limited exception discussed below, privilege has been waived as to the entirety of the document.

It is well-established that the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication to a third party or stranger to the attorney-client relationship. *See In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 468 (S.D.N.Y. 1996); *see also In re Penn Cent. Commercial Paper Litigation*, 61 F.R.D. 453, 463-64 (S.D.N.Y. 1973) ("It is hornbook law that the voluntary disclosure or consent to the disclosure of a communication, otherwise subject to a claim of privilege, effectively waives the privilege. This view is universally shared by both the courts and leading commentators." (citations omitted)). Voluntary disclosure to a party outside the attorney-client relationship destroys the attorney-client privilege because it destroys the confidentiality of the communication. *SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 146 (S.D.N.Y. 2004) (citing *In re von Bulow*, 828 F.2d 94, 102-03 (2d Cir. 1987)). Nonetheless, "the extrajudicial disclosure of an attorney-client communication – one not subsequently used by the client in a judicial proceeding to his adversary's prejudice – does not waive the privilege as to the undisclosed portions of the communication." *In re von Bulow*, 828 F.2d at 102.

With respect to Document No. GR 300-06, a significant part of the communication in this document – in fact, nearly all of it – was disclosed to 105 Street in the September 20, 2004 letter in which Greenwich declined coverage. (*See* 6/30/06 Schneider Ltr., Ex. A (Letter to 105 Street from Wilson, Elser, dated September 20, 2004).) As the Court finds that this disclosure waives privilege as to those communications, Document No. GR 300-06 must be produced. Greenwich may, however, redact the fourth, fifth and sixth full paragraphs on page six of the document

(GR 305), as the communications contained in this portion of the document were not previously disclosed and plainly contain legal advice.

### 4. Document Nos. GR 307, GR 308-09, and GR 406

Document No. GR 307 is a one-page e-mail, dated September 10, 2004, from Reena Blinkoff, Esq. ("Blinkoff"), an attorney at Wilson, Elser, to Barnaba. Although this e-mail relates to legal advice, a portion of this communication was disclosed to 105 Street in the September 20, 2004 letter in which Greenwich declined coverage. (*See* 6/30/06 Schneider Ltr., Ex. A.) Privilege is therefore waived as to this portion of the communication. Accordingly, Document No. GR 307 should be produced, except that Greenwich may redact the third full paragraph of the e-mail, which also appears to be privileged, but as to which privilege has not been waived.

The Blinkoff e-mail message contained in Document No. GR 307 is also contained in two e-mail "strings," which Wilson, Elser has submitted separately for the Court's review. The two documents containing these e-mail strings are numbered GR 308-09 (consisting of the Blinkoff e-mail message and a responsive message dated September 16, 2004, from Barnaba to Blinkoff), and GR 406 (consisting of the Blinkoff e-mail message, a subsequent message of the same date from Barnaba to Walsh, and a third message, dated September 15, 2004, from Walsh to Barnaba). Having reviewed each of the additional messages in these e-mail strings for potentially privileged communications, the Court concludes that, with the exception of the communications described above in connection with Document No. GR 307, the documents are not privileged. Each should therefore be produced in its entirety, except for the same redaction that the Court has permitted with respect to Document No. GR 307.

### 5. Document No. GR 403-05

Document No. GR 403-05 is a three-page invoice, dated November 19, 2004, which is described in Greenwich's privilege log as Wilson, Elser's "interim statement for services rendered and disbursement made to Broadspire."

Under New York law, "attorney time records and billing statements are not privileged when they do not contain detailed accounts of the legal services rendered." *DiBella v. Hopkins*, 403 F.3d 102, 120 (2d Cir. 2005) (citing *Eisic Trading Corp. v. Somerset Marine, Inc.*, 622 N.Y.S.2d 728, 729 (1st Dep't 1995)); *see also Orange County Publs. v. County of Orange*, 637 N.Y.S.2d 596, 602 (N.Y. Sup. Ct. 1995) (same). Nonetheless, "billing statements which 'are detailed in showing services, conversations, and conferences between counsel and others' are protected by the attorney-client privilege." *Orange County Publs.*, 637 N.Y.S.2d at 602 (quoting *Licensing Corp. of Am. v. Nat'l Hockey League Players Ass'n*, 580 N.Y.S.2d 128, 129 (N.Y. Sup. Ct. 1992)). Although such documents do not provide legal advice, they are considered privileged because "disclosure would reveal . . . privileged communications between [the client] and its attorneys." *Licensing Corp. of Am.*, 580 N.Y.S.2d at 130; *see also Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 2001 U.S. Dist. LEXIS 17920, at *5-6 (S.D.N.Y Nov. 2, 2001) (explaining that attorney billing statements are generally discoverable, but that such documents may be redacted if production will reveal client confidences).

While Document No. GR 403-05 contains some description of the services rendered by Wilson, Elser, none of the descriptions in the invoice reveals client confidences or privileged communications, with the exception of the first time entry for September 8, 2004, which contains a description of research pertaining to legal advice. Accordingly, Document No. GR 403-05 must be produced, but the description for this single time entry may be redacted.

### 6.     Document No. GR 408

Document No. GR 408 is a one-page XL internal file note, written by Barnaba, which contains file note entries dating from August 20, 2004 to October 12, 2004. According to Greenwich's privilege log, Document No. GR 408 was produced to 105 Street, but the file note entry dated September 8, 2004 was partially redacted, and the file note entry dated September 17, 2004 was entirely redacted.

As to the September 8, 2004 entry, the Court finds that only the last sentence of this entry concerns an attorney-client communication that relates to legal advice. As to the September 17, 2004 entry, the Court finds that, although this entry concerns an attorney-client communication that relates to legal advice, the attorney-client privilege has been waived as to this entry by the communications disclosed to 105 Street in the September 20, 2004 letter in which Greenwich declined coverage. (*See* 6/30/06 Schneider Ltr., Ex. A.) Accordingly, Document No. GR 408 must be produced, except that Greenwich may redact the last sentence of the September 8, 2004 entry.

### **CONCLUSION**

For all of the foregoing reasons:

(1) Greenwich is directed to produce the withheld documents to the extent set forth above no later than November 14, 2006. The parties shall schedule the deposition of Barnaba to take place following the production of these documents.

(2) All discovery is now closed, except for (i) the above-ordered production of documents by Greenwich, (ii) the deposition of Barnaba, and (iii) the non-party depositions of North Shore Risk Management and BFC Construction Corporation. The deadline for completion of this remaining fact discovery is hereby extended to December 7, 2006.

Dated: New York, New York
       November 7, 2006

                                        SO ORDERED

                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

Donald F. Schneider, Esq.
Schneider Goldstein Bloomfield, LLP
90 Broad Street, 6th Floor
New York, NY 10004

Glenn J. Fuerth, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
150 East 42nd Street
New York, NY 10017