UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

105 STREET ASSOCIATES, LLC,                          :

                                    Plaintiff,       :
                                                           05 CV 9938 (VM) (DCF)
                   -against-                          :

                                                     :     **DECLARATION OF BRAD**
GREENWICH INSURANCE COMPANY,                                **RICHARDS IN SUPPORT**
                                                     :
                                    Defendant.       :
                                                     :
------------------------------------------------------------------X


     **BRAD RICHARDS** hereby declares under the penalties of perjury, pursuant to 28

U.S.C. § 1746, that the following is true and correct:


    1.    I was at all times relevant herein an owner's representative for 105 Street

Associates, LLC ("Plaintiff"), the Plaintiff in the above-captioned action.  I am fully and

personally familiar with the facts hereinafter set forth and I respectfully submit this Declaration in

support of Plaintiff's motion for summary judgment.


    2.    This action concerns Defendant-insurer's disclaimer for alleged late notice

of a personal injury lawsuit against the Plaintiff-insured.  Notice of the lawsuit was received by

Defendant more than one month before a response to the Complaint was due by Plaintiff (or any

other party).

3.    Plaintiff owns the real property (235 East 105th St. in Manhattan) where the accident is alleged to have occurred (the "Property"), and had hired BFC Construction Corp. ("BFC") as general contractor in connection with construction work to be done at the Property. The injured party is alleged to have been employed by a subcontractor which had been hired by BFC's subcontractor. Plaintiff, BFC and others are defendants in the personal injury action in state court, which is on the trial calendar.

**The Parties, Jurisdiction and Venue**

4.    At all times relevant herein, Plaintiff was and still is a limited liability company organized and existing under and by virtue of the laws of the State of New York, and maintains its principal place of business within the Southern District of New York.

5.    Defendant Greenwich Insurance Company ("Defendant") acknowledges in its Answer to the Complaint and its Petition for Removal that it is an insurance company which is a Connecticut corporation with its principal place of business in the State of Connecticut.

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that the matter is between citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events and omissions giving rise to the claim occurred in this District, and because Defendant was subject to personal jurisdiction in this District at the time when the action was commenced.

**The Policy**

8.     Defendant issued and delivered to Plaintiff comprehensive commercial general liability insurance policy No. WGG5001058 on an occurrence basis (the "Policy," Exhibit "A") for the period from April 15, 2002 through April 15, 2003 (the "Policy Period").

9.     Plaintiff is insured under the Policy and duly performed all the terms and conditions of the Policy on its part to be performed.

**The Underlying Personal Injury Action**

10.     In April 2004, an individual named Richard Conrad filed a personal injury lawsuit entitled _Richard Conrad v. 105 Street Associates, LLC, et al._ (Exhibit "B," the "Conrad Action"). Conrad alleges that he was injured while performing construction at the Property on July 2, 2002.

11.     The Conrad Action is within the scope of coverage under the Policy.

**Notice**

12.     Plaintiff, which owns the Property, was not aware of the alleged accident involving Richard Conrad and did not learn of it until mid-July 2004, when it received in the mail a letter dated July 8, 2004 from Mr. Conrad's attorneys, the law firm of Kelner & Kelner (Exhibit "C"). A similar letter (Ex. "C1") was addressed to another defendant named in the Conrad Action (Ex. "C" and "C1, each a "Kelner Letter," and collectively, the "Kelner Letters").

13.     Each Kelner Letter states in pertinent part that on April 20, 2004, a Summons and Complaint with respect to the Conrad Action was served through service via the New York Secretary of State, but that no appearance on behalf of defendant had been received. Plaintiff's agent for service of process had not previously received the Summons and Complaint or known about the Conrad Action. *See* accompanying Declaration of Donald Capoccia.

14.     The Kelner Letter was the first occasion on which Plaintiff, the owner of the Property, learned that the plaintiff in the Conrad Action claimed to have been injured at the Property, as well as the first time that Plaintiff learned of the Conrad Action. *See also,* accompanying Declaration of Donald Capoccia.

15.     Promptly, on or about July 15, 2004, I caused a copy of a Kelner Letter to be mailed to Plaintiff's insurance broker, North Shore Risk Management ("North Shore").

16.     On July 19, 2004, North Shore received from Plaintiff a copy of the Kelner Letter. A copy of the postal receipt signed for by North Shore on July 19, 2004 is annexed hereto as Exhibit "D."[1]

17.     North Shore had a copy of the Complaint in the Conrad Action by July 26, 2004. Annexed hereto as Exhibit "E" is a copy of a letter from North Shore, dated July 26, 2004, returning that Complaint and mistakenly stating that Plaintiff did not have insurance coverage for the subject occurrence.

18.     Plaintiff retained counsel. With the assistance of counsel, such error was acknowledged by North Shore and was straightened out, _see_ Ex. "F," and notice was given to Defendant's agent on August 18, 2004 when Barbara Weiner of North Shore faxed to WKF&C Agency, the agent for Defendant, in two separate submissions (collectively, Ex. "G") a General Liability Notice of Occurrence/Claim and a copy of Kelner Letter, the Summons and Complaint in the Conrad Action and an Affidavit of Service thereof.

19.     During this thirty day period between when North Shore had information about the Conrad Action and when it gave notice to Defendant's agent, Plaintiff acted reasonably in obtaining an extension of time through counsel to respond to the Complaint in the Conrad

---

[1] I recollect sending to North Shore only the Kelner Letter at first because I did not, as I recall, initially receive the Complaint and an affidavit of service. I recall obtaining such documents and having them sent to Ms. Weiner of North Shore shortly after I mailed the Kelner Letter to her.

Action, which was later extended to a date beyond when Defendant later disclaimed coverage, thus preserving the ability of Defendant from inception to control the defense of the Conrad Action on behalf of Plaintiff. (After Defendant disclaimed, an Answer to the Complaint was served on behalf of Plaintiff through private defense counsel.)

20.     That same day of August 18, 2004, WKF&C Agency acknowledged receipt of the claim. Exhibit "H."

21.     The following day, the claims administrator for Defendant acknowledged receipt of the claim. Exhibit "I." The acknowledgment was signed by "Michael Barnaba, Claims Analyst."

22     On August 20, 2004, Mr. Barnaba sent an e-mail to Ms. Weiner requesting documents. Exhibit "J".

23.     The same day, Ms. Weiner had faxed to Mr. Barnaba copies of what he requested, which included the same documents she had previously transmitted to Defendant's agent. Exhibit "K."

**Defendant's Untimely Disclaimer**

24.     Mr. Barnaba raised the possibility of a late notice disclaimer the very same day (August 20) when he received from Plaintiff's insurance broker another copy of what she had previously sent to Defendant's agent. Exhibit "L". Mr. Barnaba's deposition testimony also makes clear that he "recogniz[ed] at the outset of the claim that there appears to be a late reporting situation." Ex. "M" at 53-54.

25.     Defendant did not investigate or cause to be investigated whether Plaintiff, in fact, had knowledge of the Conrad Action at any time between April 2004 and mid-July 2004 when Defendant received the Kelner Letter. _Id._ at 93-94. Mr. Barnaba testified that it is irrelevant if the insured actually knew about the Conrad Action if it was "legally served through their last registered agent with New York State." _Id._ at 90, 93.

26.     Defendant waited until September 20, 2004 to mail its letter denying coverage (the "Disclaimer Letter," Exhibit "N").

27.     The Disclaimer Letter states in pertinent part:

> As referenced above here, notice was first received on April 20, 2004 by affidavit of service of the summons and verified complaint served on the Secretary of State. However, notice was first reported to WKF&C on August 18, 2004 in the form of a facsimile from North Shore, with a Notice of Occurrence/Claim. Therefore, [Plaintiff] was on notice of the claim well in advance of its notice of the claim to [Defendant].

S:\docs\BFC\Conrad\Greenwich Ins\richards declaration 3-19-07.wpd     7

The nearly four (4) month delay in reporting this matter is clearly unreasonable and leads [Defendant] to deny coverage. Since coverage is denied based on your breach of the policy's requirements, a defense of any lawsuit filed will not be afforded to you, nor will [Defendant] indemnify [Plaintiff] for any losses that may be asserted with this claim.

28.    I am advised that the accompanying Memorandum of Law demonstrates that Defendant's failure to disclaim until 33 days after receipt of notice of the Conrad Action by its agent is unreasonable as a matter of law given that Defendant did not conduct (or need to conduct) a detailed factual investigation before determining to disclaim on the basis of late notice of the Conrad Action, and specifically did not investigate whether Plaintiff in fact had knowledge of the Conrad Action between April 2004 and mid-July 2004. Ex. "M" at 93-94.

29.    It should be noted that the Disclaimer Letter equates delivery of the Summons and Complaint in the Conrad Action to the Secretary of State, with knowledge of the Conrad Action by Plaintiff.

**The Pleadings in the Within Action**

30.    The within lawsuit contains three claims. (Exhibit "O"). The First Cause of Action seeks a judgment declaring that Defendant is obligated to fully insure, defend and indemnify Plaintiff in connection with the Conrad Action. The Second Cause of Action seeks a judgment directing and compelling Defendant to fully comply with its defense and indemnity obligations with respect to the Conrad Action, which is ongoing. The Third Cause of Action

seeks damages caused by Defendant's breach of the Policy, essentially attorneys' fees and expenses that Plaintiff has incurred and will continue to incur in connection with the defense of Conrad Action until Defendant assumes its defense obligations.

31.    After removing the within action to this Court, Defendant served an Answer (Exhibit "P"). The Answer contains 17 affirmative defenses, most of which are pro forma defenses which have nothing to do with the facts of the within action. The Eleventh Affirmative Defense alleges lack of timely notice by Plaintiff of the Conrad Action.

## Discovery is Concluded in the Within Action

32.    Discovery is concluded in the within action.

## The Status of the Conrad Action

33.    The Conrad Action is on the state court trial calendar. The injured plaintiff's motion for summary judgment on the issue of liability against Plaintiff herein is pending.[2]

_____

[2] The plaintiff in the underlying personal injury action filed a demand for damages of $10 million on each of his three causes of action. Ex. "Q."

## CONCLUSION

For all of the foregoing reasons and those set forth in the accompanying

Memorandum of Law, Plaintiff's motion for summary judgment should be granted in all respects.

Dated: New York, New York
       March 22, 2007

_____
**BRAD RICHARDS**

ALMA NORIEGA
Notary Public - State of New York
No. 01NO6109895
Qualified in Queens County
My Commission Expires May 24, 2008

S:\docs\BFC\Conrad\Greenwich Ins\richards declaration 3-19-07.wpd



COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1997

GR0000000001

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

G 0000000000 2

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

Copyright, Insurance Services Office, Inc., 1997

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III -- Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

GR000000 0004

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage **A**.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

GR0000000006

(2) Provides us with written authorization to:

    (a) Obtain records and other information related to the "suit"; and

    (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal and advertising injury":

    (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

    (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

    (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

    (a) Owned, occupied or used by,

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

GR0000OO007

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

      Copyright, Insurance Services Office, Inc., 1997      CG 00 01 07 98      □

GR0000000008

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Copyright, Insurance Services Office, Inc., 1997

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98

GR0000000010

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in **a.** above; or

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers.

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    □

GR000000012

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

B

Wednesday, August 18, 2004 12:39 PM          Grey Baron 212-346-3418                    P.07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------x

RICHARD CONRAD,                                          Index No. 105554/04

                                    Plaintiff,

         -against-                                        **VERIFIED**
                                                         **COMPLAINT**

105 STREET ASSOCIATES, LLC,
BFC CONSTRUCTION CORP., and
BFC PARTNERS, L.P.

                                  Defendants.

------------------------------------------------x

         Plaintiff, complaining of the defendants herein, by and through his attorneys, Kelner & Kelner,

Esqs., respectfully alleges, upon information and belief, as follows:

                     **AS AND FOR A FIRST CAUSE OF ACTION:**

         1.       At all times hereinafter mentioned, defendant, 105 STREET ASSOCIATES LLC

(hereinafter referred to as defendant "105 STREET"), was a domestic limited liability company duly

organized and existing under and by virtue of the laws of the State of New York.

         2.       That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION CORP.

(hereinafter referred to as defendant "BFC CONSTRUCTION"), was a corporation duly organized

and existing under and by virtue of the laws of the State of New York.

         3.       That at all times hereinafter mentioned, defendant, BFC PARTNERS L.P. (hereinafter

referred to as defendant "BFC PARTNERS"), was a domestic limited partnership duly organized and

existing under and by virtue of the laws of the State of New York.

         4.       The causes of action asserted herein are not subject to the provisions of Article 16

CPLR or come within the stated exceptions found in CPLR 1102.

         5.       That at all times hereinafter mentioned, defendant, 105 STREET, was the owner of

premises located at 235-237, 239-241 AND 243-247 East 105th Street, City, County and State of

New York.

Wednesday, August 18, 2004 12:59 PM          Greg Baron 212-348-3418                                    P. 06

6.   That at all times hereinafter mentioned, defendant, 105 STREET, was the owner of premises located at 235-237 East 105th Street in the City, County and State of New York(hereinafter referred to as the "subject premises").

7.   That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, was the general contractor at the subject premises.

8.   That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, was a construction manager at the subject premises.

9.   That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, was a contractor at the subject premises.

10.   That at all times hereinafter mentioned, defendant, BFC PARTNERS, was the developer of the said premises.

11.   That at all times hereinafter mentioned, defendant, BFC PARTNERS, was the agent of the owner of the subject premises.

12.   That at all times hereinafter mentioned, defendant, BFC PARTNERS, was the general contractor at the subject premises.

13.   That at all times hereinafter mentioned, defendant, BFC PARTNERS, was a construction manager at the subject premises.

14.   That at all times hereinafter mentioned, defendant, BFC PARTNERS, was a contractor at the subject premises.

15.   That at all times hereinafter mentioned, defendant, 105 STREET, its agents, servants and/or employees operated the subject premises.

16.   That at all times hereinafter mentioned, defendant, 105 STREET, its agents, servants and/or employees managed the subject premises.

2

GR0000000275

08/18/2004 12:58 FAX 518 884 5418    NORTH SHORE RISK MGMT    ☑008/017
Wednesday, August 18, 2004 12:59 PM    Greg Baron 212-348-3416    p.008

17. That at all times hereinafter mentioned, defendant, 105 STREET, its agents, servants and/or employees maintained the subject premises.

18. That at all times hereinafter mentioned, defendant, 105 STREET, its agents, servants and/or employees controlled the subject premises.

19. That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees operated the subject premises.

20. That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees managed the subject premises.

21. That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees maintained the subject premises.

22. That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees controlled the subject premises.

23. That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees operated the subject premises.

24. That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees managed the subject premises.

25. That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees maintained the subject premises.

26. That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees controlled the subject premises.

27. That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents entered into a contract or written agreement with defendant BFC CONSTRUCTION, with reference to performing work and services at the aforesaid location.

3

GR0000000276

28.    That on or prior to July 2, 2002, defendant, BFC PARTNERS, or its authorized agents entered into a contract or written agreement with defendant BFC CONSTRUCTION with reference to performing work and services at the aforesaid location.

29.    That on or prior to July 2, 2002, defendant, BFC CONSTRUCTION, was engaged to perform work and services at the subject premises pursuant to agreement with defendant 105 STREET.

30.    That on or prior to July 2, 2002, defendant, BFC CONSTRUCTION, was engaged to perform work and services at the subject premises pursuant to agreement with defendant BFC PARTNERS.

31.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged defendant BFC CONSTRUCTION, to perform work, labor and services in and upon the subject premises.

32.    That on or prior to July 2, 2002, defendant, BFC PARTNERS, or its authorized agents hired and/or engaged defendant, BFC CONSTRUCTION, to perform work, labor and services in and upon the subject premises.

33.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents entered into a contract or written agreement with defendant, BFC PARTNERS, with reference to performing work and services at the aforesaid location.

34.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged defendant, BFC PARTNERS, to perform work, labor and services in and upon the subject premises.

35.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged defendant, BFC PARTNERS, to develop the subject premises.

4

GR0000000277

36.    That on or prior to July 2, 2002 , defendant, 105 STREET, or its authorized agents hired and/or engaged Jem Erectors, Inc. to perform work, labor and services in and upon the subject premises.

37.    That on or prior to July 2, 2002, defendant, BFC PARTNERS, or its authorized agents hired and/or engaged Jem Erectors, Inc. to perform work, labor and services in and upon the subject premises.

38.    That on or prior to July 2, 2002, defendant, BFC CONSTRUCTION, or its authorized agents hired and/or engaged Jem Erectors, Inc., to perform work, labor and services in and upon the subject premises.

39.    That at all times hereinafter mentioned, Jem Erectors, Inc. performed work in and upon the premises pursuant to contract and/or written agreement with defendant, 105 STREET.

40.    That at all times hereinafter mentioned, Jem Erectors, Inc. performed work in and upon the premises pursuant to contract and/or written agreement with defendant, BFC PARTNERS.

41.    That at all times hereinafter mentioned, Jem Erectors, Inc. performed work in and upon the premises pursuant to contract and/or written agreement with defendant, BFC CONSTRUCTION.

42.    At all times hereinafter mentioned, plaintiff, RICHARD CONRAD, was an employee of Jem Erectors, Inc.

43.    That on July 2, 2002, at approximately 10:00A.M., plaintiff, RICHARD CONRAD, was lawfully working at the subject premises as an employee of Jem Erectors, Inc.

44.    That at the aforesaid time and place, the work being performed by plaintiff, RICHARD CONRAD, at the subject premises was subject to the relevant and applicable provisions of the Labor Law of the State of New York.

5

GR0000000278

45.    That on July 2, 2002, at approximately 10:00 A.M.  plaintiff, RICHARD CONRAD, while lawfully engaged in his duties at the aforesaid site, was working on an elevated and unguarded work area at the subject premises.

46.    That on July 2, 2002,  at approximately 10:00 A.M., while plaintiff, RICHARD CONRAD, was lawfully working at the subject premises, he  fell

47.    That on July 2, 2002,  at approximately 10:00 A.M., while plaintiff, RICHARD CONRAD, was lawfully working at the subject premises, he was caused to fall from an elevated work area.

48.    That on July 2, 2002,  at approximately 10:00 A.M., while plaintiff, RICHARD CONRAD, was lawfully working at the subject premises, he was caused to fall from an elevation, thereby sustaining serious injuries.

49.    That at the aforesaid time and place, plaintiff, RICHARD CONRAD, was injured as a result of the dangerous, defective and unsafe condition which was caused, created, allowed and/or permitted by defendant(s), its agents, servants and/or employees and that such condition was permitted to exist for an unreasonable length of time and was known or in the exercise of reasonable care should have been known to defendant(s), its agents, servants and/or employers.

50.    That the aforesaid premises was not so constructed, placed, managed, operated and located so as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein and using same including the plaintiff herein.

51.    That at the aforesaid time and place, the defendant herein failed to furnish or erect, or cause to be furnished or erected for the performance of such labor, at the premises as was then and there being performed, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys and/or other devices so constructed, placed and/or operated so as to give plaintiff proper protection in the course of his employment.

6

GR0000000279

52.     That the aforementioned occurrence and injuries resulting therefrom were caused solely and wholly by the negligence, recklessness and carelessness of defendants herein, their agents, servants and/or employees in the ownership, operation, management, maintenance and control of the premises and/or by their violation and failure to comply with applicable and relevant provisions of the Labor Law of the State of New York, including, but not limited to Sections 200, 240 and 241(6) thereof, as well as the applicable provisions of the NYCRR and New York Industrial Code applicable thereto.

53.     That by reason of the foregoing, plaintiff, RICHARD CONRAD, sustained severe permanent personal injuries and special damages.

54.     That by reason thereof, plaintiff, RICHARD CONRAD, has been damaged in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## AS AND FOR A SECOND CAUSE OF ACTION:

55.     Plaintiff repeats, reiterates and realleges each and every allegation of this complaint numbered and designated "1" through "54", inclusive with the same force and effect as though more fully set forth at length herein.

56.     That prior to July 2, 2002, defendants, their agents, servants and/or employees, knew, or in the exercise of reasonable care should have known, of the dangerous and defective conditions existing at the premises.

57.     That upon information and belief, the dangerous, hazardous and defective condition complained of herein existed for a prolonged period of time, prior to the happening of the occurrence herein such that the defendants, their agents, servants and/or employees, in the exercise of reasonable care, knew or should have known of the dangerous and defective condition and said defendants failed to timely remedy same.

7

Wednesday, August 18, 2004 12:59 PM    Greg Baron 212-348-3418    @013/017    p.75

58. That prior to July 2, 2002, the defendants herein, their agents, servants and/or employees knew, or in the exercise of reasonable care, should have known, that the dangerous and defective conditions as aforesaid were in violation of relevant and applicable provisions of the Labor Law of the State of New York.

59. That prior to July 2, 2002, the defendants herein, their agents, servants and/or employees failed and neglected to cure and/or correct the dangerous and defective conditions as aforesaid, and further failed and/or neglected to correct the violations of the relevant and applicable provisions of the Labor Law of the State of New York.

60. Prior to July 2, 2002, the defendants herein, their agents, servants and/or employees caused, permitted and/or allowed the subject premises to be, become and remain in the aforesaid dangerous and defective condition.

61. That defendants herein by and through their agents, servants and/or employees and/or contractors and/or subcontractors had actual notice or knowledge of the dangerous and defective condition complained of herein and failed to timely and properly remedy same and provide a safe place for plaintiff, RICHARD CONRAD, to work.

62. That defendants herein, by and through their agents, servants and/or employees and/or contractors and/or subcontractors, had constructive notice and knowledge of the dangerous and defective conditions complained of herein and failed to timely and properly remedy same and provide a safe place for plaintiff RICHARD CONRAD to work.

63. That defendants herein by and through their agents, servants and/or employees and/or contractors and/or subcontractors created the dangerous and defective conditions complained of herein.

GR0000000281

64.    The aforesaid acts of the defendants herein, the r agents, servants and/or employees, constituted a conscious disregard of the substantial, unjustifia le risk of death, dismemberment and serious injury to the plaintiff as aforesaid, and further constitute i a gross and significant deviation and departure from the standards of conduct that a reasonable pe son would have observed under the circumstances.

65.    That by reason thereof, plaintiff, RICHARD CONRAD, has been damaged in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## AS AND FOR A THIRD CAUSE O F ACTION:

66.    Plaintiff repeats, reiterates and realleges each a id every allegation of this complaint numbered and designated "1" through "65", inclusive with the ame force and effect as though more fully set forth at length herein.

67.    At all times hereinafter mentioned, the cond ict of the defendants, their agents, servants and/or employees was governed by the New York Lal or Law and more particularly, Labor Law sections 200, 240(1) and 241(6).

68.    The defendants, their agents, servants and/or imployees violated and/or failed to comply with the relevant and applicable provisions of the Labor Law, as aforesaid.

69.    Said violations of the Labor Law caused and/ or contributed to the occurrence as aforesaid, and the resulting injuries to plaintiff.

70.    That by reason thereof, plaintiff, RICHARD CONRAD, has been damaged in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

9

GR0000000282

Wednesday, August 18, 2004 12:59 PM          Greg Baron 212-346-3411

P. 17

WHEREFORE, plaintiff RICHARD CONRAD  demands judgment against defendants,

jointly and severally in an amount in excess of the jurisdictional limits of all lower courts which would

otherwise have jurisdiction over this matter, together with costs and disbursements of this action.

Dated:  New York, New York
        March 31, 2004

                                        Respectfully submitted,

                                        KELNER & KELNER

                            By:         _____
                                        GAIL S. KELNER
                                        Attorneys for Plaintiff(s)
                                        140 Broadway, 37th Floor
                                        New York, New York 10005
                                        (212) 425-0700

10

GR0000000283

Wednesday, August 18, 2004 12:59 PM          Greg Baron 212-948-3418                                        p. 18

## VERIFICATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York, hereby affirms as true under all the penalties of perjury that affirmant is one of the attorneys for the plaintiff in the within action; that affirmant has read the foregoing COMPLAINT and knows the contents thereof; that the same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that those matters affirmant believes to be true.

That the reason this verification is made by your affirmant and not by the plaintiff is that the plaintiff does not reside within the County of New York, which is the County in which your affirmant has her office.

Dated: New York, New York
      March 31, 2004

*Gail S. Kelner*

GAIL S. KELNER

11

GR000O000284

Index No.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RICHARD CONRAD,

                                              Plaintiff,

                        -against-

105 STREET ASSOCIATES, LLC, BFC CONSTRUCTION CORP. and
BFC PARTNERS, L.P.,

                                              Defendants.

*SUMMONS AND VERIFIED COMPLAINT*

**KELNER & KELNER, Esqs.**
Attorneys for Plaintiff
140 Broadway, 37th Floor
New York, New York 10005
212-425-0700

To:

Attorneys for Defendant

Service of a copy of the within                    is hereby admitted.

Dated:

_____
                                          Attorney for Plaintiff

PLEASE TAKE NOTICE

☐  NOTICE OF ENTRY
    that the within is a (certified) true copy of a
    entered in the office of the clerk of the within named Court on

    NOTICE OF SETTLEMENT
☐  that an Order of which the within is a true copy will be presented for
    settlement to the Honorable                    one of the Judges of the within
    named Court, at                    on          , 200__ at 9:30 A.M.

Dated:

**KELNER & KELNER, Esqs.**
Attorneys for Plaintiff
140 Broadway, 37th Floor
New York, New York    1000?
212-425-0700

GR0000000285

C

**KELNER AND KELNER**
ATTORNEYS AT LAW
140 BROADWAY
37TH FLOOR
NEW YORK, N.Y. 10005

(212) 425-0700
FAX NO.: (212) 425-0007

L. I. OFFICE
114 OLD COUNTRY ROAD, SUITE 152
MINEOLA, N.Y. 11501

July 8, 2004

*Via Certified Mail*

105 Street Associates, LLC
c/o Donald Capoccia
2226 First Avenue
New York, New York 10029

Re: Richard Conrad v. 105 Street Associates, LLC., Et Al.

Dear Sir/Madam,

This office represents the plaintiff in the above-reference matter. A recent review of our file reveals that on April 20, 2004 a Summons and Verified Complaint with respect to this matter was served upon you via the Secretary of State. To date, however, we have not received an appearance and/or answer on your behalf. Thus, you are in default.

Enclosed please find a copy of the summons and complaint, together with a copy of the affidavit of service thereof. It is suggested that you turn the enclosed documentation over to the appropriate party so that an appearance and/or answer can be interposed on your behalf.

Your failure to so appear and/or answer within ten (10) days from the date of this letter will leave us no alternative but to move for a Default Judgement as against you.

Very truly yours,

Kelner & Kelner, Esqs.

Kathleen M. Campoverde,
Paralegal for Gail S. Kelner, Esq.

DEFENDANT'S
EXHIBIT NO. *Capoccia* F
FOR IDENTIFICATION
DATE: 5/24/06     RPTR: PK

P00079

D

Ms. Barbara Weiner
North Shore Risk Management LLC
33 Powerhouse Road
Roslyn Heights, NY 11577

7003 2260 0002 6957 9149

**SENDER: COMPLETE THIS SECTION**

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

7003 2260 0002 6957 9149

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To _____
Street, Apt. No.; or PO Box No. _____
City, State, ZIP+4 _____

PS Form 3800, June 2002          See Reverse for Instructions

**E**

NORTH SHORE    RISK MANAGEMENT LLC

85 Powerhouse Road
P.O. Box 5007
Roslyn Heights, NY 11577-0007

Phone: 516.484.7800
Fax: 516.484.8418
www.nsrminsurance.com

July 26, 2004

BFC Construction Corp.
2126 First Avenue
New York, NY 10029
Att: Estelle Rodriguez

Re: Richard Conrad vs. 105 Street Associates, LLC
    July 2, 2002 date of loss

Dear Estelle:

Enclosed herewith is the paperwork that was recently sent to my office with regard to the above captioned matter. Recently, it appears that BFC Partners, LP was included in this action, although the claim appears to be unrelated to BFC Partners, LP activity.

As discussed, this claim was forwarded to my office on September 18, 2002 and was immediately forwarded to the insurance carrier. Their investigation results are attached and they declined coverage to BFC Construction Corp, citing a number of reasons. In addition, there was no coverage for 105 Street Associates, LP, at the time of the incident. I was not approached on this entity until mid July, 2002 and my correspondence to the insurance carrier is attached requesting coverage. This coverage was subsequently denied based on an issue of non-combinability ... which we all discussed extensively.

On October 21, 2002, following the response from the Insurance Carrier, we were requested by your office (Greg Cross) to fax a copy of the paperwork to you so that Don Snyder could be contacted to handle this. That was the last we heard on the matter.

I urge you to turn this matter over to your legal counsel immediately. If I can be of any further assistance, please do not hesitate to contact me.

Sincerely,

Steven Potofsky
Managing Director
SP:dw
eno.



Mr. Bernard Wagner
North Shore Risk Management LLC
21 Powerhouse Road
Roslyn Heights, NY 11577

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

OFFICIAL USE

P0013B

**F**



August 18, 2004


Schneider Goldstein Bloomfield LLP
90 Broad Street (6th floor)
New York, NY 10004
Att: Donald F. Schneider


Re: Richard Conrad vs. BFC Construction Corp. ;  Date of loss – July 2, 2002


Dear Donald:

Pursuant to your letter today, I would like to correct a few inaccuracies with regard to the above incident. As I mentioned to Greg Baron and Brad Richards on August 16, 2004, I incorrectly stated in my letter of July 26, 2004 that 105 Street Associates, LP did not have insurance for the date of the incident referenced above. The reference to this entity, however, did not pertain to the declination of coverage for BFC Construction Corp. in this matter as I indicated in the letter and I included a copy of the declination from Sirius America Insurance Company.

Your statement that "our clients previously sent notifications to your office of a claim and the lawsuit, respectively" is not quite correct. Our first and only notification of this incident was received by my office on September 16, 2002. Estelle Rodriguez forwarded to my office in a letter dated September 12, 2002, the original letter and second request from the Law Offices of Conrad J. Benedetto pertaining to this incident. In her correspondence, she included a description of the incident dated July 1, 2002, a copy of a certificate of insurance from Jem Erectors, Inc. referencing a Madison Avenue project and a picture of the site. In a subsequent phone call to Estelle on the date of our receipt, she mentioned that she was unaware of any details pertaining to this incident. We immediately reported the incident to the insurance carrier for BFC Construction Corp. by fax. (a copy of our incident report is attached) and a copy of their acknowledgement of September 23, 2002 is attached. Please note that the letter from the Law Offices of Conrad J. Benedetto references BFC Construction Corp., only, and not any other entities. This was the only correspondence sent to my office with regard to the incident. In addition, there was no lawsuit sent to us with regard to this matter to indicate an action being brought against either 105 Street Associates, LLC or BFC Partners, L.P.

Page #2

On October 11, 2002, the Insurance Carrier for BFC Construction Corp. through their claims administration issued a declination citing a variety of reasons. The first one cited a violation of the terms and conditions in reporting the incident "2 months and 16 days" after the client was aware of it (late reporting). The second one cited is, in my estimation, incorrect on the part of the Insurance Carrier (this also, by the way, led to my incorrect statement regarding the coverage issue for 105 Street Associates, LLC in my letter of July 26, 2004). The Carrier's statement that "underwriters rejected covering the accident location in this policy" is misguided. What the underwriters rejected was adding 105 Street Associates, LLC to the general liability policy of BFC Construction Corp. as a named insured, citing a non-combinable financial control and interest. 105 Street Associates, LLC, however, was covered under separate insurance continuously through this period. Our original intent in requesting this combination was to be able to save our client money in what Donald Capoccia considered a duplication of coverage. This second reason for the declination of coverage, in my estimation, can be refuted. The third reason cited, and this may be the most difficult to overcome, is the specific exclusion of coverage regarding the policy warranty that BFC Construction Corp. have a signed written contract with anyone who performs work on their behalf requiring them to indemnify and hold them harmless. Harold J. Siering's letter is specific on this point and references attempts to secure copies of the signed written contract.

Upon receipt of this declination, I immediately contacted Greg Cross at BFC and suggested that he turn the file over to you. Accordingly, on October 21, 2002, we faxed to Greg a copy of the entire file for handling. This was the last we heard of this incident that was declined by Sirius America Insurance Company.

As a result of my conversation with Greg Baron on August 16, 2004, we have put the Insurance Carrier for 105 Street Associates, LLC (Greenwich Insurance Company) on notice of this incident. The only documentation we have been able to provide them with has been the contents of our file that makes no reference to 105 Street Associates, LLC. As respects BFC Partners, L.P. please give me some guidance on how you would like this handled. To the best of my knowledge they are not involved in this.

Page #3

Unfortunately, I'll be out of town through September 6, 2004 (my last date is this Friday) but the file is being handled by my in-house employee, Barbara Weiner. If you need any additional information, you can always contact her.

Very truly yours,


Steven Potolsky
SP:dw
enc.
cc:  Donald Capoccia, Brandon Baron,
     Greg Baron and Brad Richards, by fax.

# G



/18/2004 11:43 FAX 516 484 5418     NORTH SHORE RISK MGMT     ☑007/006

NORTH SHORE RISK MANAGEMENT LLC
PO BOX 9007
ROSLYN HEIGHTS, N.Y. 11577-9007

Phone: #516-484-7500
Fax:   #516-484-5418

## FACSIMILE COVER SHEET

DATE: August 18, 2004

NO. OF PAGES (including cover sheet): 6

TO: WKF&C Agency     FAX # 631-756-2500

FROM: Barbara Weiner x28

RE: 105 Street Assocs., LLC
    Policy – WGG 5001058

MESSAGE:                     DOL: 07/02/02
                            Location: 105th Street, NY NY
                            Claimant: Richard Conrad

GR0000000263

NORTH SHORE RISK MGMT.    ☎002/006

| ACORD₃ | GENERAL LIABILITY NOTICE OF OCCURRENCE/CLAIM | | CSR: EG | DATE (MM/DD/YY) 08/16/04 |

| PRODUCER | PHONE (A/C, No, Ext) 516-484-7500 |
|---|---|
| North Shore Risk Mgmt. LLC<br>PO Box 9007<br>Roslyn Heights NY 11577-9007 | |

| | NOTICE OF OCCURRENCE [X] | DATE OF OCCURRENCE AND TIME | AM [X] PM |
| | NOTICE OF CLAIM | 07/0: /02 | |
| EFFECTIVE DATE 04/10/02 | EXPIRATION DATE 04/10/0: | POLICY TYPE | PREVIOUSLY REPORTED |
| COMPANY | NAIC CODE: | [X] OCCURRENCE   CLAIMS MADE | YES [X] NO |
| | | | RETROACTIVE DATE |

| CODE: | SUB CODE: | POLICY NUMBER WGG 5001058 | MISCELLANEOUS INFO (Site & location code) |
| AGENCY CUSTOMER ID: 105ST-1 | | | REFERENCE NUMBER |

INSURED

| NAME AND ADDRESS | | SOC SEC # OR FEIN | |
|---|---|---|---|
| 105 Street Associates, LLC<br>c/o BFC Construction Corp.<br>2226 First Avenue<br>New York NY 10029 | | | |

| CONTACT | [X] CONTACT INSURED |
|---|---|
| NAME AND ADDRESS<br>105 Street Assoc ates, LLC<br>Greg Cross<br>2226 First Avenu<br>New York NY 1002 | WHERE TO CONTACT<br>see below<br><br>WHEN TO CONTACT<br>daily |

| RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) 212 722-3671 | RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) 212 722-3671 |

OCCURRENCE

| LOCATION OF OCCURRENCE (Include city & state) | 105th Street<br>New York NY | AUTHORITY CONTACTED |
|---|---|---|
| DESCRIPTION OF OCCURRENCE (Use separate sheet if necessary) | Richard Conrad; employee of sub lost his balance & sustained persl. injuries | |

POLICY INFORMATION

| COVERAGE PART OR FORMS (Insert form # and edition date) | | | | | | | |
|---|---|---|---|---|---|---|---|
| GENERAL AGGREGATE 2000000. | PRODU/COMP OP AGG 1000000. | PERS & ADV INJ 1000000. | EACH OCCURRENCE 1000000. | FIRE DAMAGE : 10000. | MEDICAL EXPENSE 5000. | DEDUCTIBLE | PD BI |
| UMBRELLA/ EXCESS | UMBRELLA | EXCESS | CARRIER: | LIMITS: | AGGR | PER CLAIM/OCC | PD BI SIR/ DED |

TYPE OF LIABILITY

| PREMISES: INSURED IS | OWNER | TENANT | [X] OTHER job site | TYPE OF PREMISES | |
|---|---|---|---|---|---|
| OWNERS NAME & ADDRESS (if not insured) | | | | TYPE OF PREMISES | |
| PRODUCTS: INSURED IS | MANUFACTURER | VENDOR | OTHER: | OWNERS PHONE (A/C, No, Ext) | |
| MANUFACTURER'S NAME & ADDRESS (if not insured) | | | | TYPE OF PRODUCT | |
| | | | | MANUFACT PHONE (A/C, No, Ext) | |
| WHERE CAN PRODUCT BE SEEN? | | | | | |
| OTHER LIABILITY INCLUDING COMPLETED OPERATIONS (Explain) | | | | | |

INJURED/PROPERTY DAMAGED

| NAME & ADDRESS (Injured/Owner) | Richard Conrad | | | PHONE (A/C, No, Ext) |
|---|---|---|---|---|
| AGE | SEX M | OCCUPATION laborer | EMPLOYER'S NAME & ADDRESS JEM Erector Inc. 142 Stokes Road Shamong NJ 08088 | PHONE (A/C, No, Ext) |
| DESCRIBE INJURY FATALITY | | | WHERE TAKEN | WHAT WAS INJURED DOING? |
| DESCRIBE PROPERTY (Type, model, etc) | | ESTIMATE AMOUNT | WHERE CAN PROPERTY BE SEEN? | WHEN CAN PROPERTY BE SEEN? |

WITNESSES

| NAME & ADDRESS | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) |
|---|---|---|
| | | |

| REMARKS<br>letter from claimant's attny & copy of policy, attached |

| REPORTED BY Estelle Rodriguez ; | REPORTED TO Barbara Weiner | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER |
|---|---|---|---|

ACORD 3 (2002/01)    NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE    © ACORD CORPORATION 1986

GR0000000264

# GREENWICH INSURANCE COMPANY
## 70 Seaview Avenue, Stamford, CT 0i 902-6040

### COMMON POLICY DECLARATIONS



PRODUCER NAME: Zimmerman Specialty Insurance Brokerage, Inc

POLICY NO. WGG 5001058

NAMED INSURED  105 Street Associates, LLC

MAILING ADDRESS c/o BFC Construction Corp.
2226 First Ave
New York, NY  10029

POLICY PERIOD: Frои ___April 15, 2002___ ¡ ___April 15, 2003___ аt
12:01 A.M. Standard Time at your mailing address sh иwn above.

BUSINESS DESCRIPTION Other _____

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ¡ LL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS I OLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PAR'S
FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY
BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Boiler and Machinery Coverage Part | $_____ |
| Commercial Auto Coverage Part | $_____ |
| Commercial Crime Coverage Part | $_____ |
| Commercial General Liability Coverage Part | $39,750 |
| Commercial Inland Marine Coverage Part | $_____ |
| Commercial Property Coverage Part | $_____ |

TOTA $39,750

Premium shown is payable: $39,750 _____ at incep' on $39,750

Forms applicable to all Coverage Parts: See Schedule Attached _____
(Sh w numbers.)

COUNTERSIGNED_____ BY___ W (F & C Agency, Inc _____
(Date)                              (A ithorized Representative)

IN WITNESS WHEREOF, this Company has caused this Policy to be signed by its President and its Secretary a  i countersigned by a duly authorized representative.

President                                        Secretary

This form includes copyrighted material of Insurance Services C ffice with its permission.
Copyright, Insurance Services Office, Inc., 19೯ ∂, 1984

GR0000000265

GREENWICH INSURANCE COMPANY

70 Seaview Avenue, Stamford, CT 06902-6040

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Renewal of Number

Policy No. WGG 5001058

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)
105 Street Associates, LLC
c/o BFC Construction Corp.
2226 First Ave
New York, NY 10029

Policy Period : From     April 15, 2002     to     April 15, 2003     at 12:01 A.M. Standard Time at your mailing
address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products—Completed Operations) | $2,000,000 |
| Products—Completed Operations Aggregate Limit | $Included |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Fire Damage Limit | $50,000   Any One Fire |
| Medical Expense Limit | $5,000   Any One Person |

### RETROACTIVE DATE (CG 00 02 only)
Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive
Date, if any, shown here: _____
(Enter Date or "None" if no Retroactive Date applies)

### DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES
Form of Business:
Other
Business Description:
Renovations

Location of All Premises You Own, Rent or Occupy:

See Schedule Attached

PREMIUM   $39,750

| Classification | Code No. | Premium Basis | Pr/Co | Rate All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|
| See Schedule Attached | | | | | $ | $ |

Total Advance Premium   $

Premium shown is payable: $ _____ at inception; $ _____ 1st Anniversary; $ _____ 2nd Anniversary

### FORMS AND ENDORSEMENTS
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

See Schedule Attached

Countersigned: _____

By _____   WKF & C Agency, Inc.

Authorized Representative

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE
FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1984

IDL 190 (2)-0 (11-85)

Page 1 of 1

GR0000000266

08/18/2004 11:44 FAX  516 484 5619    NORTH SHORE RISK MGMT    ☒005/008

## Commercial General Liability
## Supplemental Declarations Page

Policy No: WGG 5001058

Location of all premises you own, rent or occupy:

| Location Address: | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|
| 1   235-247 East 105th Street | Vacant Building | 68606 | 40,000 sq ft | |
| New York, NY 10029 | Owners Interst | 91585 | 5,900,000 cost | |

GR00000O0267

# Forms Schedule

Named Insured    105 Street Associates, LLC

Policy No: WGG 5001058

Policy No:    Greenwich Insurance Company

| Form Name | Form Edition No |
|---|---|
| Commercial General Liability | CG 0001 (07/98) |
| Total Pollution Exclusion - Except Hostile Fire | CG 21 55 |
| Employment Practices Exclusion | CG 21 47 |
| Nuclear Energy Liability Exclusion Endorsement | IL 00 21 (04/98) |
| Designated Premises Endorsement | CG 21 44 |
| Common Policy Conditions | IL 0017 (11/98) |
| Supplemental Declarations Page | GL SD (6/99) |
| Amendment of Other Insurance Condition(Occurrence) | CG 0055 (03/97) |
| Asbestos Exclusion | GENL103 (7/99) |
| Exclusion Designated Ongoing Operations | CG 2153 01 96 |
| Sexual Abuse/Molestation Excl. | CG 21 46 |
| New York Changes - CGL Coverage Form | CG 01 63 09 99 |
| NY - Changes - Cancellation & Non-Renewal | IL 0268 (07/00) |
| Professional Services Exclusion - Engineers, etc. | CG 22 43 01 96 |

GR0000000268

08/18/2004 15:02 FAX  516 484 5418    NORTH SHORE RISK MGMT                ☑0017017

NORTH SHORE RISK MANAGEMENT LLC
PO BOX 9007
ROSLYN HEIGHTS, N.Y. 11577-9007

Phone: #516-484-7500
Fax:   #516-484-5418


FACSIMILE COVER SHEET

DATE: August 18, 2004

NO. OF PAGES (including cover sheet): 16

TO: Peg / WKF&C Agency        FAX # 631-756-5781

FROM:  Barbara Weiner x28

RE: 105 Street Assocs., LLC
    Policy – WGG 5001058

MESSAGE:        DOL: 07/02/02
                Location: 105th Street, NY NY
                Claimant: Richard Conrad

Dear Peg: As per our conversation, enclosed is the summons & verified complaint that was
          faxed to our office today.
          Please forward to company & advise adjuster & claim number. Thank you so much
          for your assistance.

GR0000000269

## KELNER AND KELNER
ATTORNEYS AT LAW
140 BROADWAY
37TH FLOOR
NEW YORK, N.Y. 10005

(212) 425-0700
FAX NO.: (212) 425-0007

L. I. OFFICE
114 OLD COUNTRY ROAD, SUITE 158
MINEOLA, N.Y. 11501

July 8, 2004

_Via Certified Mail_

BFC Partners, L.P.
c/o Donald Capoccia
2226 First Avenue
New York, New York 10029

Re: Richard Conrad v. 105 Street Associates, LLC., Et Al

Dear Sir/Madam,

This office represents the plaintiff in the above-referenced matter. A recent review of our file reveals that on April 20, 2004 a Summons and Verified Complaint with respect to this matter was served upon you via the Secretary of State. To date, however, we have not received an appearance and/or answer on your behalf. Thus, you are in default.

Enclosed please find a copy of the summons and complaint, together with a copy of the affidavit of service thereof. It is suggested that you turn the enclosed documentation over to the appropriate party so that an appearance and/or answer can be interposed on your behalf.

Your failure to so appear and/or answer within ten (10) days from the date of this letter will leave us no alternative but to move for a Default Judgement against you.

Very truly yours,

Kelner & Kelner, Esqs.

Kathleen M. Campoverde,
Paralegal for Gail S. Kelner, Esq.

GR0000000270

Wednesday, August 18, 2004 12:58 PM          Greg Baron 212-348-3418                                    p.04

EXRA

## State of New York – Department of State
### Receipt for Service

Receipt #: 200404200155                          Cash #: 200404200142
Date of Service:  04/20/2004                     Fee Paid: $40 – CHECK
Service Company:  83 STAR PROCESS SERVICE

Service was directed to be made pursuant to:  SECTION 121-109 OF THE REVISED
   LIMITED PARTNERSHIP ACT

Party Served:  BFC PARTNERS, L.P.

Plaintiff/Petitioner:
         CONRAD, RICHARD


Service of Process Address:
C/O DONALD CAPOCCIA
2226 1ST AVE.
NEW YORK,  NY 10029

Kelner

                                        Secretary of State
                                        By  CAROL VOGT



GR0000000271

Wednesday, August 18, 2004 12:59 PM          Greg Baron 212-348-3418                          P.05

Kolmer 18201          ORIGINAL          INDEX NO: 04-105554
STATE OF NEW YORK,          COUNTY OF NEW YORK          FILED ON: April 8, 2004
SUPREME COURT          NEW YORK          DISTRICT:
                    COUNTY CLERK'S OFFICE
                         *Richard Conrad*

          APR 2 9 2004          vs          Plaintiff(s)

          NOT          103 Street Associates, LLC, et al
          WITH          COUNTY NEW YORK
                              CLERK'S OFFICE
                         APR 2 9 2004          Defendant(s)
                         NOT
                         WITH          AFFIDAVIT OF SERVICE
                              BY THE SECRETARY OF STATE

STATE OF NEW YORK, COUNTY OF ALBANY, SS.:

_____ Stephan L. Collen _____, being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____ April 20, 2004 _____, at _____ 10:00am _____, at the office

of the Secretary of State of the State of New York in the City of Albany, New York, deponent served the annexed

_____ Summons and Verified Complaint _____

_____ on

_____ BFC Partners, L.P. _____

Defendant in this action, by delivering to and leaving with _____ Carol Vog _____, Authorized Agent, in the Office of

the Secretary of State of the State of New York, personally at the Office of the Secretary of State of the State of New

York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State

the statutory fee, if required. Service was made pursuant to Section _____ 121- 09 Revised Limited Partnership Law .

☐ Service was completed by mailing notice of such service and one (1) true copy thereof by     ☐ Registered or

    ☐ 1st Class Mail and Certified Mail, # _____, Return Receipt Requested on _____

    to said defendant at: _____

☒ Papers so served were properly endorsed with the index number and date of filing.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the

Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

Description of the person served:   Approx. Age: __47 years__     Approx. Weight __110 lbs.__     Approx. Ht.: __5' 1"__

Sex: __Female__   Color of skin: __White__   Color of hair: __Brown__   Other: _____

Sworn to before me on __April 20, 2004__

_____          _____
MARCY A. O'HARE                              Stephen L. Collen
NOTARY PUBLIC, State of New York
No. _____, Qualified in Albany County          Invoice-Work Order # 0404373
Term Expires July 14, 2006

GR0000000272

Wednesday, August 18, 2004 12:58 PM          Greg Baron 212-348-3410          P.06

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

RICHARD CONRAD,

                                    Plaintiff,

           -against-

105 STREET ASSOCIATES, LLC,
BFC CONSTRUCTION CORP. and
BFC PARTNERS, L.P.,

                                    Defendants.

------------------------------------------------------------x

Index No. 105554/04
Date Purchased 4/8/04

Plaintiffs Designate
NEW YORK
County as the place of Trial

The Basis of venue is
Defendants' Principal Place
of Business

**SUMMONS**

Plaintiff resides at
4 Lake Michigan Drive
Little Egg Harbor, New Jersey
County of Ocean

*TO THE ABOVE NAMED DEFENDANT(S)*

          *YOU ARE HEREBY SUMMONED* to answer the complaint in this action to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff(s)' Attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
           March 31, 2004

                                   KELNER & KELNER, Esqs.

                       By:      _____
                                   GAIL S. KELNER
                                   Attorneys for Plaintiffs
                                   Office and P.O. Address
                                   140 Broadway, 3th Floor
                                   New York, New York 10005
                                   212-425-0700

Defendant's Address:

105 STREET ASSOCIATES, LLC:
          c/o Secretary of State

BFC CONSTRUCTION CORP.:
          c/o Secretary of State

BFC PARTNERS, L.P.:
          c/o Secretary of State

Wednesday, August 18, 2004 12:59 PM          Greg.Baron 212-348-3418          P.07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------X

RICHARD CONRAD,                                    Index No.  105554/04

                              Plaintiff,

            -against-                              VERIFIED
                                                  COMPLAINT
105 STREET ASSOCIATES, LLC,
BFC CONSTRUCTION CORP., and
BFC PARTNERS, L.P.

                              Defendants.
---------------------------------------------------------------X

Plaintiff, complaining of the defendants herein, by and through his attorneys, Kelner & Kelner,

Esqs., respectfully alleges, upon information and belief, as follows:

## AS AND FOR A FIRST CAUSE OF ACTION:

1.     At all times hereinafter mentioned, defendant, 105 STREET ASSOCIATES LLC

(hereinafter referred to as defendant "105 STREET"), was a domestic limited liability company duly

organized and existing under and by virtue of the laws of the State of New York.

2.     That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION CORP.

(hereinafter referred to as defendant "BFC CONSTRUCTION"), was a corporation duly organized

and existing under and by virtue of the laws of the State of New York.

3.     That at all times hereinafter mentioned, defendant, BFC PARTNERS L.P. (hereinafter

referred to as defendant "BFC PARTNERS"), was a domestic limited partnership duly organized and

existing under and by virtue of the laws of the State of New York.

4.     The causes of action asserted herein are not subject to the provisions of Article 16

CPLR or come within the stated exceptions found in CPLR 1602.

5.     That at all times hereinafter mentioned, defendant, 105 STREET, was the owner of

premises located at 235-237, 239-241 AND 243-247 East 105th Street, City, County and State of

New York.

GR000000O274

Wednesday, August 18, 2004 12:59 PM          Greg Baron 212-348-3418                              P: 06

6.    That at all times hereinafter mentioned, defendant, 105 STREET, was the owner of premises located at 235- 237 East 105th Street in the City, County and State of New York(hereinafter referred to as the "subject premises").

7.    That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, was the general contractor at the subject premises.

8.    That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, was a construction manager at the subject premises.

9.    That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, was a contractor at the subject premises.

10.    That at all times hereinafter mentioned, defendant, BFC PARTNERS, was the developer of the said premises.

11.    That at all times hereinafter mentioned, defendant, BFC PARTNERS, was the agent of the owner of the subject premises.

12.    That at all times hereinafter mentioned, defendant, BFC PARTNERS, was the general contractor at the subject premises.

13.    That at all times hereinafter mentioned, defendant, BFC PARTNERS, was a construction manager at the subject premises.

14.    That at all times hereinafter mentioned, defendant, BFC PARTNERS, was a contractor at the subject premises.

15.    That at all times hereinafter mentioned, defendant, 105 STREET, its agents, servants and/or employees operated the subject premises.

16.    That at all times hereinafter mentioned, defendant, 105 STREET, its agents, servants and/or employees managed the subject premises.

GR0000000275

08/18/2004 13:08 FAX 516 484 3410     NORTH SHORE RISK MGMT     ☑008/017
Wednesday, August 18, 2004 12:58 PM     Greg Baron 212-348-3416     p.08

17.     That at all times hereinafter mentioned, defenda it, 105 STREET, its agents, servants and/or employees maintained the subject premises.

18.     That at all times hereinafter mentioned, defenda it, 105 STREET, its agents, servants and/or employees controlled the subject premises.

19.     That at all times hereinafter mentioned, defendant , BFC CONSTRUCTION, its agents, servants and/or employees operated the subject premi es.

20.     That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees managed the subject premi es.

21.     That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees maintained the subject prer ises.

22.     That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees controlled the subject prem ises.

23.     That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees operated the subject premises.

24.     That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees managed the subject premises,

25.     That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees maintained the subject premises,

26.     That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees controlled the subject premises,

27.     That on or prior to July 2, 2002, defendant, 1 5 STREET, or its authorized agents entered into a contract or written agreement with defendant BF C CONSTRUCTION, with reference to performing work and services at the aforesaid location.

3

28.    That on or prior to July 2, 2002, defendant, BFC PARTNERS, or its authorized agents entered into a contract or written agreement with defendant BFC CONSTRUCTION with reference to performing work and services at the aforesaid location.

29.    That on or prior to July 2, 2002, defendant, BFC CONSTRUCTION, was engaged to perform work and services at the subject premises pursuant to agreement with defendant 105 STREET.

30.    That on or prior to July 2, 2002, defendant, BFC CONSTRUCTION, was engaged to perform work and services at the subject premises pursuant to agreement with defendant BFC PARTNERS.

31.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged defendant BFC CONSTRUCTION, to perform work, labor and services in and upon the subject premises.

32.    That on or prior to July 2, 2002, defendant, BFC PARTNERS, or its authorized agents hired and/or engaged defendant, BFC CONSTRUCTION, to perform work, labor and services in and upon the subject premises.

33.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents entered into a contract or written agreement with defendant, BFC PARTNERS, with reference to performing work and services at the aforesaid location.

34.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged defendant, BFC PARTNERS, to perform work, labor and services in and upon the subject premises.

35.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged defendant, BFC PARTNERS, to develop the subject premises.

4

GR0000000277

36.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged Jem Erectors, Inc. to perform work, labor and services in and upon the subject premises.

37.    That on or prior to July 2, 2002, defendant, I FC PARTNERS, or its authorized agents hired and/or engaged Jem Erectors, Inc. to perform work, labor and services in and upon the subject premises.

38.    That on or prior to July 2, 2002, defendant, BFC CONSTRUCTION, or its authorized agents hired and/or engaged Jem Erectors, Inc., to perform work, labor and services in and upon the subject premises.

39.    That at all times hereinafter mentioned, Jem Erectors, Inc. performed work in and upon the premises pursuant to contract and/or written agreement with defendant, 105 STREET.

40.    That at all times hereinafter mentioned, Jem Erectors, Inc. performed work in and upon the premises pursuant to contract and/or written agreement with defendant, BFC PARTNERS.

41.    That at all times hereinafter mentioned, Jem Erectors, Inc. performed work in and upon the premises pursuant to contract and/or written agreement with defendant, BFC CONSTRUCTION.

42.    At all times hereinafter mentioned, plaintiff, RICHARD CONRAD, was an employee of Jem Erectors, Inc.

43.    That on July 2, 2002, at approximately 10:00A. M., plaintiff, RICHARD CONRAD, was lawfully working at the subject premises as an employee of Jem Erectors, Inc.

44.    That at the aforesaid time and place, the work being performed by plaintiff, RICHARD CONRAD, at the subject premises was subject to the relevant and applicable provisions of the Labor Law of the State of New York.

5

45.    That on July 2, 2002, at approximately 10:00 A.M  plaintiff, RICHARD CONRAD, while lawfully engaged in his duties at the aforesaid site, was working on an elevated and unguarded work area at the subject premises.

46.    That on July 2, 2002,  at approximately 10:00 A.M., while plaintiff, RICHARD CONRAD, was lawfully working at the subject premises, he fell

47.    That on July 2, 2002,  at approximately 10:00 A.M., while plaintiff, RICHARD CONRAD, was lawfully working at the subject premises, he was caused to fall from an elevated work area.

48.    That on July 2, 2002,  at approximately 10:00 A.M., while plaintiff, RICHARD CONRAD, was lawfully working at the subject premises, he was caused to fall from an elevation, thereby sustaining serious injuries.

49.    That at the aforesaid time and place, plaintiff, RICHARD CONRAD, was injured as a result of the dangerous, defective and unsafe condition which was caused, created, allowed and/or permitted by defendant(s), its agents, servants and/or employees and that such condition was permitted to exist for an unreasonable length of time and was known or in the exercise of reasonable care should have been known to defendant(s), its agents, servants and/or employees.

50.    That the aforesaid premises was not so constructed, placed, managed, operated and located so as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein and using same including the plaintiff herein.

51.    That at the aforesaid time and place, the defendant herein failed to furnish or erect, or cause to be furnished or erected for the performance of such labor at the premises as was then and there being performed, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys and/or other devices so constructed, placed and/or operated so as to give plaintiff proper protection in the course of his employment.

6

52.    That the aforementioned occurrence and injuries resulting therefrom were caused solely and wholly by the negligence, recklessness and carelessness of defendants herein, their agents, servants and/or employees in the ownership, operation, management, maintenance and control of the premises and/or by their violation and failure to comply with applicable and relevant provisions of the Labor Law of the State of New York, including, but not limited to Sections 200, 240 and 241(6) thereof, as well as the applicable provisions of the NYCRR and New York Industrial Code applicable thereto.

53.    That by reason of the foregoing, plaintiff, RICHARD CONRAD, sustained severe permanent personal injuries and special damages.

54.    That by reason thereof, plaintiff, RICHARD CONRAD, has been damaged in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## AS AND FOR A SECOND CAUSE OF ACTION:

55.    Plaintiff repeats, reiterates and realleges each and every allegation of this complaint numbered and designated "1" through "54", inclusive with the same force and effect as though more fully set forth at length herein.

56.    That prior to July 2, 2002, defendants, their agents, servants and/or employees, knew, or in the exercise of reasonable care should have known, of the dangerous and defective conditions existing at the premises.

57.    That upon information and belief, the dangerous, hazardous and defective condition complained of herein existed for a prolonged period of time, prior to the happening of the occurrence herein such that the defendants, their agents, servants and/or employees, in the exercise of reasonable care, knew or should have known of the dangerous and defective condition and said defendants failed to timely remedy same.

7

GR0000000280

Wednesday, August 18, 2004 12:59 PM          Greg Baron 212-346-3418

58. That prior to July 2, 2002, the defendants herein, their agents, servants and/or employees knew, or in the exercise of reasonable care, should have known, that the dangerous and defective conditions as aforesaid were in violation of relevant and applicable provisions of the Labor Law of the State of New York.

59. That prior to July 2, 2002, the defendants herein, their agents, servants and/or employees failed and neglected to cure and/or correct the dangerous and defective conditions as aforesaid, and further failed and/or neglected to correct the violations of the relevant and applicable provisions of the Labor Law of the State of New York.

60. Prior to July 2, 2002, the defendants herein, their agents, servants and/or employees caused, permitted and/or allowed the subject premises to be, become and remain in the aforesaid dangerous and defective condition.

61. That defendants herein by and through their agents, servants and/or employees and/or contractors and/or subcontractors had actual notice or knowledge of the dangerous and defective condition complained of herein and failed to timely and properly remedy same and provide a safe place for plaintiff, RICHARD CONRAD, to work.

62. That defendants herein, by and through their agents, servants and/or employees and/or contractors and/or subcontractors, had constructive notice and knowledge of the dangerous and defective conditions complained of herein and failed to timely and properly remedy same and provide a safe place for plaintiff RICHARD CONRAD to work.

63. That defendants herein by and through their agents, servants and/or employees and/or contractors and/or subcontractors created the dangerous and defective conditions complained of herein.

8

GR0000000281

Wednesday, August 18, 2004 12:59 PM    Greg Baron 212-348-341    p. 16

64.  The aforesaid acts of the defendants herein, their agents, servants and/or employees, constituted a conscious disregard of the substantial, unjustifiable risk of death, dismemberment and serious injury to the plaintiff as aforesaid, and further constitute a gross and significant deviation and departure from the standards of conduct that a reasonable person would have observed under the circumstances.

65.  That by reason thereof, plaintiff, RICHARD CONRAD, has been damaged in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

### AS AND FOR A THIRD CAUSE OF ACTION:

66.  Plaintiff repeats, reiterates and realleges each and every allegation of this complaint numbered and designated "1" through "65", inclusive with the same force and effect as though more fully set forth at length herein.

67.  At all times hereinafter mentioned, the conduct of the defendants, their agents, servants and/or employees was governed by the New York Labor Law and more particularly, Labor Law sections 200, 240(1) and 241(6).

68.  The defendants, their agents, servants and/or employees violated and/or failed to comply with the relevant and applicable provisions of the Labor Law, as aforesaid.

69.  Said violations of the Labor Law caused and/or contributed to the occurrence as aforesaid, and the resulting injuries to plaintiff.

70.  That by reason thereof, plaintiff, RICHARD CONRAD, has been damaged in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

9

GR0000000282

WHEREFORE, plaintiff RICHARD CONRAD demands judgment against defendants, jointly and severally in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter, together with costs and disbursements of this action.

Dated: New York, New York
March 31, 2004

Respectfully submitted,

KELNER & KELNER

By: _____

GAIL S. KELNER
Attorneys for Plaintiff(s)
140 Broadway, 37th Floor
New York, New York 10005
(212) 425-0700

10

GR0000000283

## VERIFICATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York, hereby affirms as true under all the penalties of perjury that affirmant is one of the attorneys for the plaintiff in the within action; that affirmant has read the foregoing **COMPLAINT** and knows the contents thereof; that the same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that those matters affirmant believes to be true.

That the reason this verification is made by your affirmant and not by the plaintiff is that the plaintiff does not reside within the County of New York, which is the County in which your affirmant has her office.

Dated: New York, New York
      March 31, 2004

                                             *GAIL S. KELNER*

11

GR0000000284

Wednesday, August 18, 2004 12:58 PM          Greg Baron 212-348-3478          @017/017

P. 10

Index No.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RICHARD CONRAD,

Plaintiff,

~against~

105 STREET ASSOCIATES, LLC, BFC CONSTRUCTION CORP. and
BFC PARTNERS, L.P.,

Defendants.

SUMMONS AND VERIFIED COMPLAINT

KELNER & KELNER, Esqs.
Attorneys for Plaintiff
140 Broadway, 37th Floor
New York, New York 10005
212-425-0700

To:

Attorneys for Defendant

Service of a copy of the within                    is hereby admitted.

Dated:

                                        Attorney for Plaintiff

PLEASE TAKE NOTICE

☐  NOTICE OF ENTRY
    that the within is a (certified) true copy of a
    entered in the office of the clerk of the within named Court on

    NOTICE OF SETTLEMENT
☐  that an Order of which the within is a true copy will be presented for
    settlement to the Honorable              one of the Judges of the within
    named Court, at              on          , 200___ at 9:30 A.M.

Dated:

                KELNER & KELNER, Esqs.
                Attorneys for Plaintiff
                140 Broadway, 37th Floor
                New York, New York  10005
                212-425-0700

**H**

# WKF&C AGENCY, INC.

One Huntington Quadrangle, Suite 2C18
Melville, NY 11747
Telephone: (631)756-3000
Fax: (631)756-5781

# CLAIM NOTIFICATION

| | | | |
|---|---|---|---|
| Date: | 8/18/2004 | # of pages (including cover): 11 | |
| To: | **XL CLAIMS** | From: | Cindy Herring |
| Attn: | Bill Helmig | | |
| Fax #: | 610-458-2519 | Re: | **New Claim** |

**Insured:      105 Street Assoc,. LLC**
**Policy #:       WGG 5001058**
**Date of Loss:     7/02/02**
**Type of Loss:    Bodily Injury**

Please find a first report for the above mentioned insured.  A copy of our policy is attached.

Please acknowledge and handle accordingly.

c/c:  North Shore Risk Management
Attn:  Barbara Weiner
Fax #:  516-484-5418
# of pages:      1

SB

**I**



XL Environmental
520 Eagleview Boulevard
PO Box 636
Exton, PA 19341-0636
USA

Phone 800-327-1414
Fax     610-458-8667
www.xlenvironmental.com

August 19, 2004

## ACKNOWLEDGMENT OF LOSS

Ms. Peg Polosino
WKF&C Agency, Inc.
One Huntington Quadrangle, Suite 2C18
Melville, New York 11747

RE:     Insured                         105 Street Associates, LLC
        Claimant                        Richard Conrad
        Date of Loss                    07/02/04
        Our Claim No.                   P5502044
        Your Policy No.                 WGG5001058
        Our File No.                    105-13927

Dear Ms. Polosino:

This is to acknowledge receipt of the above-captioned claim.  Please direct all inquiries to my attention using our File Number referenced above.

If you have any questions regarding your claim, please feel free to give me a call at (800) 823-7351, extension 9467.

Regards,

Mike Barnaba/mls

Mike Barnaba
Claims Analyst

MB/mls

PLAINTIFF'S EXHIBIT      1
FOR IDENTIFICATION
DATE                     12-29-06
MARC SCHAFLER

A division of XL Specialty Insurance Company

A member of the XL Capital group

**J**

Barnaba, Mike

From:       Barnaba, Mike
Sent:       Friday, August 20, 2004 9:52 AM
To:         'bweiner@nsrminsurance.com'
Subject:    105 Street Associates, LLC

P5502044
WGG5001058

Dear Ms. Weiner:

As discussed, we are the claims administrators for Greenwich Insurance Company and are handling this matter on their behalf. We acknowledge notice of this claim. All I have in the file is the ACORD form for this loss, but none of the attachments. Please FAX another copy of the entire first report you submitted to include any summons, letters from attorneys, etc.

Thank you!

Michael J. Barnaba, Senior Claims Analyst
XL Specialty Claims Administrators, Inc.
600 Eagleview Boulevard
P.O. Box 636
Exton, PA 19341
(800) 823-7351 X 9467
FAX (610) 458-2519

**K**

NORTH SHORE RISK MANAGEMENT LLC
PO BOX 9007
ROSLYN HEIGHTS, N.Y. 11577-9007

Phone: #516-484-7500
Fax:    #516-484-5418

### FACSIMILE COVER SHEET

**DATE:** August 20, 2004

**NO. OF PAGES (including cover sheet):** 23

**TO:** Michael Barnaba          **FAX #** 610-458-2519

**FROM:** Barbara Weiner x28

**RE:** 105 Street Assocs., LLC
       Policy – WGG 5001058

**MESSAGE:**          DOL: 07/02/02
                     Claim #: P5502044

Dear Mike:   In accordance with our conversation, enclosed s the Acord notice, copy of policy
             & summons & verified complaint pertaining to the above.
             I am also enclosing a copy of a letter from clair ant's attorney to our insured, dated
             08/06/02, putting us on notice for the construct on company we insured during the
             loss period.  There was no mention of any othe entity involved.
             Please handle and advise me accordingly.
             Thanks for your help!!

GR0000000014

# ACORD™  GENERAL LIABILITY NOTICE OF OCCURRENCE/CLAIM

DATE (MM/DD/YYYY)
08/16/04

| PRODUCER | PHONE (A/C, No, Ext): 516-484-7500 | | X | NOTICE OF OCCURRENCE | | DATE OF OCCURRENCE AND TIME | AM | DATE OF CLAIM | | PREVIOUSLY REPORTED |
|---|---|---|---|---|---|---|---|---|---|---|

North Shore Risk Mgmt. LLC
PO Box 9007
Roslyn Heights NY 11577-9007

| | NOTICE OF CLAIM | 07/02/02 | PM | | | YES | X | NO |
|---|---|---|---|---|---|---|---|---|

| EFFECTIVE DATE | EXPIRATION DATE | | POLICY TYPE | | RETROACTIVE DATE |
|---|---|---|---|---|---|
| 04/10/02 | 04/10/03 | X OCCURRENCE | CLAIMS MADE | |

| COMPANY | NAIC CODE: | MISCELLANEOUS INFO (Site & location code) |
|---|---|---|

| CODE: | SUB CODE: | POLICY NUMBER | REFERENCE NUMBER |
|---|---|---|---|
| AGENCY CUSTOMER ID: 105ST-1 | | WGG 5001058 | |

## INSURED

| NAME AND ADDRESS | SOC SEC # OR FEIN: | CONTACT | X CONTACT INSURED |
|---|---|---|---|

105 Street Associates, LLC
c/o BFC Construction Corp.
2226 First Avenue
New York NY 10029

| NAME AND ADDRESS | WHERE TO CONTACT |
|---|---|

105 Street Associates, LLC
Greg Cross
2226 First Avenue
New York NY 1002!

see below

WHEN TO CONTACT
daily

| RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) |
|---|---|
| | 212  722-3671 |

| RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) |
|---|---|
| | (212)  722-3671 |

## OCCURRENCE

| LOCATION OF OCCURRENCE (Include city & state) | 105th Street     New York NY | AUTHORITY CONTACTED |
|---|---|---|

DESCRIPTION OF OCCURRENCE (Use separate sheet, if necessary)
Richard Conrad; employee of sub lost his balance &
sustained persl. injuries

## POLICY INFORMATION

| COVERAGE PART OR FORM(S) (Insert form its armd edition dates) | | | | | | | |
|---|---|---|---|---|---|---|---|
| GENERAL AGGREGATE | PRODS/COMP OP AGG | PERS & ADV INJ | EACH OCCURRENCE | FIRE DAMAGE | MEDICAL EXPENSE | DEDUCTIBLE | PD |
| 2000000. | 1000000. | 1000000. | 1000000. | 50000. | 5000. | | BI |

| UMBRELLA/ EXCESS | UMBRELLA | EXCESS | CARRIER: | | LIMITS: | AGGR | PER CLAIM/OCC | SIR/ DED |
|---|---|---|---|---|---|---|---|---|

## TYPE OF LIABILITY

| PREMISES INSURED IS: | OWNER | TENANT | X OTHER: job site | TYPE OF PREMISES |
|---|---|---|---|---|

| OWNER'S NAME & ADDRESS (If not insured) | | | | |
|---|---|---|---|---|

OWNER'S PHONE (A/C, No, Ext):

| PRODUCTS: INSURED IS | MANUFACTURER | VENDOR | OTHER: | TYPE OF PRODUCT |
|---|---|---|---|---|

| MANUFACTURER'S NAME & ADDRESS (If not insured) | | | MANUFACT PHONE (A/C, No, Ext): |
|---|---|---|---|

| WHERE CAN PRODUCT BE SEEN? | |
|---|---|

OTHER LIABILITY INCLUDING COMPLETED OPERATIONS (Explain)

## INJURED/PROPERTY DAMAGED

| NAME & ADDRESS (Injured/Owner) | Richard Conrad | | | PHONE (A/C, No, Ext) |
|---|---|---|---|---|

| AGE | SEX | OCCUPATION | EMPLOYER'S NAME & ADDRESS | PHONE (A/C, No, Ext) |
|---|---|---|---|---|
| | M | laborer | JEM Erector Inc.  142 Stokes Road  Shamong NJ 08088 | |

| DESCRIBE INJURY     FATALITY | | WHERE TAKEN | WHAT WAS INJURED DOING? |
|---|---|---|---|

| DESCRIBE PROPERTY (Type, model, etc) | ESTIMATE AMOUNT | WHERE CAN PROPERTY BE SEEN? | WHEN CAN PROPERTY BE SEEN? |
|---|---|---|---|

## WITNESSES

| NAME & ADDRESS | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) |
|---|---|---|

REMARKS
letter from claimant's attny & copy of policy, attached

| REPORTED BY | REPORTED TO | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER |
|---|---|---|---|
| Estelle Rodriguez | Barbara Weiner | | |

ACORD 3 (2002/01)          NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE          © ACORD CORPORATION 1986

# GREENWICH INSURANCE COMPANY
70 Seaview Avenue, Stamford, CT 0. 902-6040

## COMMON POLICY DECLARATIONS 

**PRODUCER NAME:** Zimmerman Specialty Insurance Brokerage, Inc

**POLICY NO.** WGG 5001058

**NAMED INSURED** 105 Street Associates, LLC

**MAILING ADDRESS** c/o BFC Construction Corp.
2226 First Ave
New York, NY 10029

**POLICY PERIOD: From** ___April 15, 2002___ | ___April 15, 2003___ at
12:01 A.M. Standard Time at your mailing address shown above.

**BUSINESS DESCRIPTION** Other

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM. |
|---|---|
| Boiler and Machinery Coverage Part | $ |
| Commercial Auto Coverage Part | $ |
| Commercial Crime Coverage Part | $ |
| Commercial General Liability Coverage Part | $39,750 |
| Commercial Inland Marine Coverage Part | $ |
| Commercial Property Coverage Part | $ |
| | TOTAL $39,750 |

Premium shown is payable: $39,750 ___ at Inception $39,750

Forms applicable to all Coverage Parts: See Schedule Attached

(Show numbers.)

COUNTERSIGNED _____ BY ___ WKF & C Agency, Inc.
(Date)                              (Authorized Representative)

IN WITNESS WHEREOF, this Company has caused this Policy to be signed by its President and its Secretary and countersigned by a duly authorized representative.

President                          Secretary

This form includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, Inc., 1983, 1984

GREENWICH INSURANCE COMPANY

70 Seaview Avenue, Stamford, CT 06901-6040

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Renewal of Number*

Policy No. WGG 5001058

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)*

105 Street Associates, LLC

c/o BFC Construction Corp.

2228 First Ave

New York, NY 10029

Policy Period*: From ____ April 15, 2002 ____ to ____ April 15, 2003 ____ at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products—Completed Operations) | $2,000,000 |
| Products—Completed Operations Aggregate Limit | $Included |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Fire Damage Limit | $50,000  Any One Fire |
| Medical Expense Limit | $5,000  Any One Person |

## RETROACTIVE DATE (CG 00 02 only)

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: _____ (Enter Date or "None" if no Retroactive Date applies)

## DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES

Form of Business:

Other

Business Description*:

Renovations

Location of All Premises You Own, Rent or Occupy:

See Schedule Attached

PREMIUM  $39,750

| Classification | Code No. | Premium Basis | Pr/Co | Rate All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|
| See Schedule Attached | | | | | $ | $ |

Total Advance Premium  $

Premium shown is payable*: $ _____ at inception: $ _____ 1st Anniversary; $ _____ 2nd Anniversary

## FORMS AND ENDORSEMENTS

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue†:

See Schedule Attached

Countersigned:* _____

By _____ WKF & C Agency, Inc

Authorized Representative

Entry optional if shown in Common Policy Declarations.
*Forms and Endorsements applicable to this Coverage Part omitted if shown elsewhere in the policy.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

IDL 190 (2)-0 (11-85)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc., 1983, 1984

Page 1 of 1

GR0000000017

Commercial General Liability
Supplemental Declarations Page

Policy No: WGG 5001058

**Location of all premises you own, rent or occupy:**

**Location Address:**

| | | Description/Occupancy | Class Code | Premium Basis | Remarks |
|---|---|---|---|---|---|
| 1 | 235-247 East 105th Street | Vacant Building | 68606 | 40,000 sq ft | |
| | New York, NY 10029 | Owners Interst | 91585 | 6,900,000 cost | |

GL SD (6/99)

*Page 1 of 1*

GR0000000018

# Forms Schedule

Named Insured    105 Street Associates, LLC

Policy No: WGG 5001058

Policy No:    Greenwich Insurance Company

| Form Name | Form Edition No |
|---|---|
| Commercial General Liability | CG 0001 (07/98) |
| Total Pollution Exclusion - Except Hostile Fire | CG 21 55 |
| Employment Practices Exclusion | CG 21 47 |
| Nuclear Energy Liability Exclusion Endorsement | IL 00 21 (04/98) |
| Designated Premises Endorsement | CG 21 44 |
| Common Policy Conditions | IL 0017 (11/98) |
| Supplemental Declarations Page | GL SD (6/99) |
| Amendment of Other Insurance Condition(Occurrence) | CG 0055 (03/97) |
| Asbestos Exclusion | GENL103 (7/99) |
| Exclusion Designated Ongoing Operations | CG 2153 01 96 |
| Sexual Abuse/Molestation Excl. | CG 21 46 |
| New York Changes - CGL Coverage Form | CG 01 63 09 99 |
| NY - Changes - Cancellation & Non-Renewal | IL 0268 (07/00) |
| Professional Services Exclusion - Engineers, etc. | CG 22 43 01 96 |

LAW OFFICES

# CONRAD J. BENEDETTO

ONE GREENTREE CENTRE
SUITE 201
MARLTON, NEW JERSEY 688 3

Telephone:   (856) 983-7033
Fax:         (856) 983-6000

CONRAD J. BENEDETTO*

* ALSO MEMBER OF PA BAR

PHILADELPHIA OFFICE
1615 SOUTH BROAD STREET
PHILADELPHIA, PENNSYLVANIA, 19148
PHONE:  (215) 389-1900
FAX:    (215) 271-8910

TOLL FREE:

(800) 985-1333

PLEASE REPLY TO:
NEW JERSEY

August 6, 2002

BFC Construction
2226 1st Avenue
New York, NY 10029

|       | Re: | Our Client | : | Richard Conrad |
|-------|-----|------------|---|----------------|
|       |     | D/Accident | : | 7/2/ 2 |
|       |     | Location   | : | 105 ' Street between 2nd & 3rd Avenue |

Dear Sir or Madam:

Please be advised this office represents Richard Conrad  n a workmen's compensation claim for personal injuries sustained as a result of a fall down accident, w ich occurred the date and location captioned above. Kindly forward this letter to your liability ins rance carrier as promptly as possible.

Thank you for your prompt and courteous attention to th s matter.

Very truly ours,

Conrad J. Benedetto

/ps

CERTIFIED & REGULAR MAIL
RETURN RECEIPT REQUESTED

**KELNER AND KELNER**
ATTORNEYS AT LAW
140 BROADWAY
37TH FLOOR
NEW YORK, N.Y. 10005

(212) 425-0700
FAX NO.: (212) 425-0007

L. I. OFFICE
114 OLD COUNTRY ROAD, SUITE 318
MINEOLA, N.Y. 11501

July 8, 2004

_Via Certified Mail_

BFC Partners, L.P.
c/o Donald Capoccia
2226 First Avenue
New York, New York 10029

Re: Richard Conrad v. 105 Street Associates, LLC., Et A .

Dear Sir/Madam,

This office represents the plaintiff in the above-referen e matter. A recent review of our file reveals that on April 20, 2004 a Summons and Verified Com plaint with respect to this matter was served upon you via the Secretary of State. To date, howevei  we have not received an appearance and/or answer on your behalf. Thus, you are in default.

Enclosed please find a copy of the summons and co plaint, together with a copy of the affidavit of service thereof. It is suggested that you turn the enclosed documentation over to the appropriate party so that an appearance and/or answer can be interposed on your behalf.

Your failure to so appear and/or answer within ten (10) days from the date of this letter will leave us no alternative but to move for a Default Judgement  s against you.

Very truly yours,

Kelner & Kelner, Esqs.

Kathleen M. Campoverde,
Paralegal for Gail S. Kelner, Esq.

State of New York – Department of State
Receipt for Service

Receipt #:  200404200155                    Cash #: 200404200142
Date of Service:  04/20/2004                Fee Paid: $40 - CHECK
Service Company:  83 STAR PROCESS SERVICE

Service was directed to be made pursuant to:  SECTION 121-109 OF THE REVISED
    LIMITED PARTNERSHIP ACT

Party Served:  BFC PARTNERS, L.P.


Plaintiff/Petitioner:
          CONRAD, RICHARD



Service of Process Address:
C/O DONALD CAPOCCIA
2226 1ST AVE.
NEW YORK, NY 10029

*Kelner*                                    Secretary of State
                                            By  CAROL VOGT



Wednesday, August 18, 2004 12:59 PM    NORTH SHORE RISK MGMT.

Greg Beron 212-348-3418    p.0

Kelner 18220    ORIGINAL    010/023

STATE OF NEW YORK    COUNTY OF NEW YORK    INDEX NO.: 04-105554
SUPREME COURT    FILED ON: April 8, 2004
   NEW YORK    DISTRICT:
COUNTY CLERK'S OFFICE
   Richard Conrad

APR 29 2004    vs    Plaintiff(s)

NOT    105 Street Associates, LLC, et al
WITH    Defendant(s)

STATE OF NEW YORK, COUNTY OF ALBANY, SS.:

**AFFIDAVIT OF SERVICE BY THE SECRETARY OF STATE**

_____ Stephan L. Collen _____, being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; that on _____ April 20, 2004 _____, at _____ 10:00 am _____, at the office of the Secretary of State of the State of New York in the City of Albany, New York, deponent served the annexed

Summons and Verified Complaint

BFC Partners, L.P. , on

Defendant in this action, by delivering to and leaving with _____ Carol Vo _____, Authorized Agent, in the Office of the Secretary of State of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State the statutory fee, if required. Service was made pursuant to Section 121-109 Revised Limited Partnership Law .

☐ Service was completed by mailing notice of such service and one (1) true copy thereof by ☐ Registered or
☐ 1st Class Mail and Certified Mail, # _____, Return Receipt Requested on _____
to said defendant at: _____

☒ Papers so served were properly endorsed with the index number and date of filing.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

Description of the person served: Approx. Age: 47 years    Approx. Weight: 110 lbs.    Approx. Ht: 5' 1"
Sex: Female    Color of skin: White    Color of hair: Brown    Other:

Sworn to before me on _____ April 20, 2004 _____

_____
MARCY A. O'HARE
NOTARY PUBLIC, State of New York
No. 4965630, Qualified in Albany County
Term Expires July 14, 2006

_____
Stephen L. Collen

Invoice-Work Order # 0404373

GR0000000023

Case 2:05-cv-09938-VM-DCF    Document 26-13  SHO Filed 04/16/2007    Page 42 of 54
Wednesday, August 18, 2004 12:59 PM                                              ☑ 0 1 1/023

Greg Baron 212-346-3418

p.0(

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RICHARD CONRAD,

                                        Plaintiff,

                        -against-

105 STREET ASSOCIATES, LLC,
BFC CONSTRUCTION CORP. and
BFC PARTNERS, L.P.,

                                        Defendants.

TO THE ABOVE NAMED DEFENDANT(S)

Index No. 105554/04
Date Purchased 4/8/04

Plaintiffs Designate:
NEW YORK
County as the place of Trial

The Basis of venue is
Defendants' Principal Place
of Business
      *SUMMONS*
Plaintiff resides at
Lake Michigan Drive
Little Egg Harbor, New Jersey
County of Ocean

YOU ARE HEREBY SUMMONED to answer the complaint in this action to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on
the Plaintiff(s)' Attorneys within 20 days after the service of this summons, exclusive of the day of service (or
within 30 days after the service is complete if this summons is not personally delivered to you within the State
of New York); and in case of your failure to appear or answer, judgment will be taken against you by default
for the relief demanded in the complaint.

Dated: New York, New York
       March 31, 2004

                                        KELNER & KELNER, Esqs.

                        By: _____
                                        GAIL S. KELNER
                                        Attorneys for Plaintiff
                                        Office and P.O. Address
                                        140 Broadway,  7th Floor
                                        New York, New York 10005
                                        212-425-0700

Defendant's Address:

105 STREET ASSOCIATES, LLC:
     c/o Secretary of State

BFC CONSTRUCTION CORP.:
     c/o Secretary of State

BFC PARTNERS, L.P.:
     c/o Secretary of State

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

RICHARD CONRAD,

Index No. 105554/04

Plaintiff,

-against-

VERIFIED
COMPLAINT

105 STREET ASSOCIATES, LLC,
BFC CONSTRUCTION CORP., and
BFC PARTNERS, L.P.

Defendants.

------------------------------------------------------------x

Plaintiff, complaining of the defendants herein, by and through his attorneys, Kelner & Kelner, Esqs., respectfully alleges, upon information and belief, as follows:

## AS AND FOR A FIRST CAUSE OF ACTION:

1.    At all times hereinafter mentioned, defendant, 105 STREET ASSOCIATES LLC (hereinafter referred to as defendant "105 STREET"), was a domestic limited liability company duly organized and existing under and by virtue of the laws of the State of New York.

2.    That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION CORP. (hereinafter referred to as defendant "BFC CONSTRUCTION"), was a corporation duly organized and existing under and by virtue of the laws of the State of New York.

3.    That at all times hereinafter mentioned, defendant, BFC PARTNERS L.P. (hereinafter referred to as defendant "BFC PARTNERS"), was a domestic limited partnership duly organized and existing under and by virtue of the laws of the State of New York.

4.    The causes of action asserted herein are not subject to the provisions of Article 16 CPLR or come within the stated exceptions found in CPLR 1602.

5.    That at all times hereinafter mentioned, defendant, 105 STREET, was the owner of premises located at 235-237, 239-241 AND 243-247 East 105th Street, City, County and State of New York.

Wednesday, August 18, 2004 12:59 PM     Greg Baron 212-348-3416     P. 06

6.     That at all times hereinafter mentioned, defendant, 105 STREET, was the owner of premises located at 235-237 East 105th Street in the City, County and State of New York (hereinafter referred to as the "subject premises").

7.     That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, was the general contractor at the subject premises.

8.     That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, was a construction manager at the subject premises.

9.     That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, was a contractor at the subject premises.

10.     That at all times hereinafter mentioned, defendant, BFC PARTNERS, was the developer of the said premises.

11.     That at all times hereinafter mentioned, defendant, BFC PARTNERS, was the agent of the owner of the subject premises.

12.     That at all times hereinafter mentioned, defendant, BFC PARTNERS, was the general contractor at the subject premises.

13.     That at all times hereinafter mentioned, defendant, BFC PARTNERS, was a construction manager at the subject premises.

14.     That at all times hereinafter mentioned, defendant, BFC PARTNERS, was a contractor at the subject premises.

15.     That at all times hereinafter mentioned, defendant, 105 STREET, its agents, servants and/or employees operated the subject premises.

16.     That at all times hereinafter mentioned, defendant, 105 STREET, its agents, servants and/or employees managed the subject premises.

2

Wednesday, August 18, 2004 12:59 PM        Greg Baron 212-346-3416

17.    That at all times hereinafter mentioned, defends it, 105 STREET, its agents, servants and/or employees maintained the subject premises.

18.    That at all times hereinafter mentioned, defends it, 105 STREET, its agents, servants and/or employees controlled the subject premises.

19.    That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees operated the subject premises.

20.    That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees managed the subject premises.

21.    That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees maintained the subject premises.

22.    That at all times hereinafter mentioned, defendant, BFC CONSTRUCTION, its agents, servants and/or employees controlled the subject premises.

23.    That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees operated the subject premises.

24.    That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees managed the subject premises.

25.    That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees maintained the subject premises.

26.    That at all times hereinafter mentioned, defendant, BFC PARTNERS, its agents, servants and/or employees controlled the subject premises.

27.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents entered into a contract or written agreement with defendant BFC CONSTRUCTION, with reference to performing work and services at the aforesaid location.

3

GR0000000276

28.    That on or prior to July 2, 2002, defendant, BFC PARTNERS, or its authorized agents entered into a contract or written agreement with defendant BFC CONSTRUCTION with reference to performing work and services at the aforesaid location.

29.    That on or prior to July 2, 2002, defendant, BFC CONSTRUCTION, was engaged to perform work and services at the subject premises pursuant to agreement with defendant 105 STREET.

30.    That on or prior to July 2, 2002, defendant, BFC CONSTRUCTION, was engaged to perform work and services at the subject premises pursuant to agreement with defendant BFC PARTNERS.

31.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged defendant BFC CONSTRUCTION, to perform work, labor and services in and upon the subject premises.

32.    That on or prior to July 2, 2002, defendant, BFC PARTNERS, or its authorized agents hired and/or engaged defendant, BFC CONSTRUCTION, to perform work, labor and services in and upon the subject premises.

33.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents entered into a contract or written agreement with defendant, BFC PARTNERS, with reference to performing work and services at the aforesaid location.

34.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged defendant, BFC PARTNERS, to perform work, labor and services in and upon the subject premises.

35.    That on or prior to July 2, 2002, defendant, 105 STREET, or its authorized agents hired and/or engaged defendant, BFC PARTNERS, to develop the subject premises.

4

GR0000000277

Wednesday, August 18, 2004 12:59 PM          Greg Baron 212-348-3418                                    @010/017

                                                                                                      P.11

36.     That on or prior to July 2, 2002 , defendant, 105 STREET, or its authorized agents hired and/or engaged Jem Erectors, Inc. to perform work, labor and services in and upon the subject premises.

37.     That on or prior to July 2, 2002, defendant, I FC PARTNERS, or its authorized agents hired and/or engaged Jem Erectors, Inc. to perform wor t, labor and services in and upon the subject premises.

38.     That on or prior to July 2, 2002, defendant, BFC CONSTRUCTION, or its authorized agents hired and/or engaged Jem Erectors, Inc., to perform wor k, labor and services in and upon the subject premises.

39.     That at all times hereinafter mentioned, Jem Ei ectors, Inc. performed work in and upon the premises pursuant to contract and/or written agreem nt with defendant, 105 STREET.

40.     That at all times hereinafter mentioned, Jem Ei ectors, Inc. performed work in and upon the premises pursuant to contract and/or written agreemen ; with defendant, BFC PARTNERS.

41.     That at all times hereinafter mentioned, Jem Ei ectors, Inc. performed work in and upon the premises pursuant to contract and/or written agreement with defendant, BFC CONSTRUCTION.

42.     At all times hereinafter mentioned, plaintiff, RIC HARD CONRAD, was an employee of Jem Erectors, Inc.

43.     That on July 2, 2002, at approximately 10:00A. 4., plaintiff, RICHARD CONRAD, was lawfully working at the subject premises as an employee o Jem Erectors, Inc.

44.     That at the aforesaid time and place, the work bei g performed by plaintiff, RICHARD CONRAD, at the subject premises was subject to the relevant an d applicable provisions of the Labor Law of the State of New York.

5

45.     That on July 2, 2002, at approximately 10:00 A.M  plaintiff, RICHARD CONRAD, while lawfully engaged in his duties at the aforesaid site, was working on an elevated and unguarded work area at the subject premises.

46.     That on July 2, 2002,  at approximately 10:00  A.M., while plaintiff, RICHARD CONRAD, was lawfully working at the subject premises, he fell

47.     That on July 2, 2002,  at approximately 10:00 . A.M., while plaintiff, RICHARD CONRAD, was lawfully working at the subject premises, he was caused to fall from an elevated work area.

48.     That on July 2, 2002,  at approximately 10:00 . A.M., while plaintiff, RICHARD CONRAD, was lawfully working at the subject premises, he was caused to fall from an elevation, thereby sustaining serious injuries.

49.     That at the aforesaid time and place, plaintiff, RICHARD CONRAD, was injured as a result of the dangerous, defective and unsafe condition which was caused, created, allowed and/or permitted by defendant(s), its agents, servants and/or employees and that such condition was permitted to exist for an unreasonable length of time and was known or in the exercise of reasonable care should have been known to defendant(s), its agents, servants and/or employees.

50.     That the aforesaid premises was not so constructed, placed, managed, operated and located so as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein and using same including the plaintiff herein.

51.     That at the aforesaid time and place, the defendant herein failed to furnish or erect, or cause to be furnished or erected for the performance of such labor at the premises as was then and there being performed, scaffolding, hoists, stays, ladders, slings, hangars, blocks, pulleys and/or other devices so constructed, placed and/or operated so as to give plaintiff proper protection in the course of his employment.

6

GR0000000279

52.     That the aforementioned occurrence and injuries resulting therefrom were caused solely and wholly by the negligence, recklessness and carelessness of defendants herein, their agents, servants and/or employees in the ownership, operation, management, maintenance and control of the premises and/or by their violation and failure to comply with applicable and relevant provisions of the Labor Law of the State of New York, including, but not limited to Sections 200, 240 and 241(6) thereof, as well as the applicable provisions of the NYCRR and New York Industrial Code applicable thereto.

53.     That by reason of the foregoing, plaintiff, RICHARD CONRAD, sustained severe permanent personal injuries and special damages.

54.     That by reason thereof, plaintiff, RICHARD CONRAD, has been damaged in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## AS AND FOR A SECOND CAUSE OF ACTION:

55.     Plaintiff repeats, reiterates and realleges each and every allegation of this complaint numbered and designated "1" through "54", inclusive with the same force and effect as though more fully set forth at length herein.

56.     That prior to July 2, 2002, defendants, their agents, servants and/or employees, knew, or in the exercise of reasonable care should have known, of the dangerous and defective conditions existing at the premises.

57.     That upon information and belief, the dangerous, hazardous and defective condition complained of herein existed for a prolonged period of time, prior to the happening of the occurrence herein such that the defendants, their agents, servants and/or employees, in the exercise of reasonable care, knew or should have known of the dangerous and defective condition and said defendants failed to timely remedy same.

7

58.   That prior to July 2, 2002, the defendants herein, their agents, servants and/or employees knew, or in the exercise of reasonable care, should have known, that the dangerous and defective conditions as aforesaid were in violation of relevant and applicable provisions of the Labor Law of the State of New York.

59.   That prior to July 2, 2002, the defendants herein, their agents, servants and/or employees failed and neglected to cure and/or correct the dangerous and defective conditions as aforesaid, and further failed and/or neglected to correct the violations of the relevant and applicable provisions of the Labor Law of the State of New York.

60.   Prior to July 2, 2002, the defendants herein, their agents, servants and/or employees caused, permitted and/or allowed the subject premises to be, become and remain in the aforesaid dangerous and defective condition.

61.   That defendants herein by and through their agents, servants and/or employees and/or contractors and/or subcontractors had actual notice or knowledge of the dangerous and defective condition complained of herein and failed to timely and properly remedy same and provide a safe place for plaintiff, RICHARD CONRAD, to work.

62.   That defendants herein, by and through their agents, servants and/or employees and/or contractors and/or subcontractors, had constructive notice and knowledge of the dangerous and defective conditions complained of herein and failed to timely and properly remedy same and provide a safe place for plaintiff RICHARD CONRAD to work.

63.   That defendants herein by and through their agents, servants and/or employees and/or contractors and/or subcontractors created the dangerous and defective conditions complained of herein.

8

64.    The aforesaid acts of the defendants herein, their agents, servants and/or employees, constituted a conscious disregard of the substantial, unjustifiable risk of death, dismemberment and serious injury to the plaintiff as aforesaid, and further constitute a gross and significant deviation and departure from the standards of conduct that a reasonable person would have observed under the circumstances.

65.    That by reason thereof, plaintiff, RICHARD CONRAD, has been damaged in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## AS AND FOR A THIRD CAUSE OF ACTION:

66.    Plaintiff repeats, reiterates and realleges each and every allegation of this complaint numbered and designated "1" through "65", inclusive with the same force and effect as though more fully set forth at length herein.

67.    At all times hereinafter mentioned, the conduct of the defendants, their agents, servants and/or employees was governed by the New York Labor Law and more particularly, Labor Law sections 200, 240(1) and 241(6).

68.    The defendants, their agents, servants and/or employees violated and/or failed to comply with the relevant and applicable provisions of the Labor Law, as aforesaid.

69.    Said violations of the Labor Law caused and/or contributed to the occurrence as aforesaid, and the resulting injuries to plaintiff.

70.    That by reason thereof, plaintiff, RICHARD CONRAD, has been damaged in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

9

GR0000000282

Wednesday, August 18, 2004 12:58 PM    Greg Baron 212-346-3411    P. 17

WHEREFORE, plaintiff RICHARD CONRAD demands judgment against defendants, jointly and severally in an amount in excess of the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter, together with costs and disbursements of this action.

Dated: New York, New York
        March 31, 2004

Respectfully submitted,

KELNER & KELNER

By: _____
    GAIL S. KELNER
    Attorneys for Plaintiff(s)
    140 Broadway, 37th Floor
    New York, New York 10005
    (212) 425-0700

10

GR0000000283

Wednesday, August 18, 2004 12:39 PM          Greg Baron 212-348-3416                    R-18

## VERIFICATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York, hereby affirms as true under all the penalties of perjury that affirmant is one of the attorneys for the plaintiff in the within action; that affirmant has read the foregoing COMPLAINT and knows the contents thereof; that the same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that those matters affirmant believes to be true.

That the reason this verification is made by your affirmant and not by the plaintiff is that the plaintiff does not reside within the County of New York, which is the County in which your affirmant has her office.

Dated: New York, New York
       March 31, 2004

_GAIL S. KELNER_

11

GR000O000284

Wednesday, August 18, 2004 12:59 PM    Greg Baron 212-848-3411    P.70

Index No.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RICHARD CONRAD,

Plaintiff,

-against-

105 STREET ASSOCIATES, LLC, BFC CONSTRUCTION CORP. and
BFC PARTNERS, L.P.,

Defendants.

SUMMONS AND VERIFIED COMPLAINT

KELNER & KELNER, Esqs.
Attorneys for Plaintiff
140 Broadway, 37th Floor
New York, New York 10005
212-425-0700

To:

Attorneys for Defendant

Service of a copy of the within                                    is hereby admitted.
Dated:

                                                    Attorney for Plaintiff

PLEASE TAKE NOTICE

☐ NOTICE OF ENTRY
that the within is a (certified) true copy of a
entered in the office of the clerk of the within named Court on

NOTICE OF SETTLEMENT
☐ that an Order of which the within is a true copy will be presented for
settlement to the Honorable            one of the Judges of the within
named Court, at                    on        , 200___ at 9:30 A.M.

Dated:

KELNER & KELNER, Esqs.
Attorneys for Plaintiff
140 Broadway, 37th Floor
New York, New York 1000 ?
212-425-0700

GR0000000285

**L**

JUL. 21. 2006 9:43AM RK-HTS-NJ

7/05   7:17:02        9085084850;        08/05/2006  NO. 2282 #4- P. 6. Page 1/2
BWXC901              CLAIM ABSTRACT REPORT                    Page
m Print - Commercial General Liab.                                    2

                          BARN

                    CLAIM NOTE PAD
DATE: 08/20/04 USER ID: BARNABAM
LOSS DATES BACK TO 2002 SO LATE NOTICE MAY BE AN ISSUE. ATTY'S LETTER THAT
GENERATED THIS CLAIM DID NOT MAKE IT TO THE FILE. I CALLED BROKER TO SEE IF
THEY HAVE IT-THEY HAVE SUMMONS, LETTERS FROM ATTY, ETC. THEY WILL FAX OVER.
I SENT E-MAIL AT THEIR REQUEST TO CONFIRM WHO WE ARE. PER BROKER, INSURED IS
STATING BROKER WAS NOTIFIED OF THIS IN THE PAST. I WILL SEE WHAT BROKER
FORWARDS AND GO FROM THERE. BROKER IS NOT AGENT OF CARRIER. NOTICE TO BROKER
IS NOT NOTICE TO CARRIER AND DOES NOT SATISFY REPORTING REQUIREMENTS UNDER
POLICY. ONLY NOTICE TO WKF & C OR GREENWICH WOULD MEET REQUIREMENTS. MJB
DATE: 08/24/04 USER ID: BARNABAM
I HAVE ADDITIONAL MATERIALS FROM BROKER INCLUDING A LOR DIRECTED TO BFC
CONSTRUCTION (I PRESUME THEY ARE GC...THEY ARE THE C/O IN MAILING ADDRESS TO
NAMED INSURED) DATED 8/6/02 ALTHOUGH IT ONLY STATES FOR W/COMP AGAINST BFC.
ALSO I HAVE SUIT PAPERS WHICH WERE APPARENTLY SERVED ON THE INSURED ON 4/20/04
NOTIFIED XLP OF LABOR LAW MATTER. REQUESTED PERMISSION TO CONSULT WITH
COVERAGE COUNSEL AS LATE REPORTING DENIAL MAY BE SUPPORTED. I CALLED INSURED
CONTACT TO REQUEST CONTRACTS WITH GC AND SUB SO I CAN TENDER TO THE OTHER
CARRIERS (PENDING COVERAGE ANALYSIS) I WAS ASKED TO PUT REQUEST IN WRITING SO I
FAXED A REQUEST TO THEM. MJB
DATE: 08/31/04 USER ID: BARNABAM
I HAVE PACKAGE OF MATERIALS FROM THE INSURED. I LACK COVERAGE INFO FOR GC.
I CALLED CONTACT AND S/W BRAD RICHARDS. HE TOLD ME BFC (GC) WAS INSURED WITH
SIRIUS AMERICA AND HE WILL F/U WITH HIS BROKER AND FORWARD THAT INFO SHORTLY.
HE SAID BROKER IS ON VACA. I TOLD HIM WE NEED THAT ASAP AS IT IS TIME
SENSITIVE. I HAD ALL DOCUMENTS COPIED AND SENT TO COVERAGE COUNSEL. AS SOON
AS I HAVE GC'S COVERAGE INFO I WILL GET TENDERS OUT TO ALL PARTIES. MJB
DATE: 09/08/04 USER ID: BARNABAM
I HAVE TENDERED TO GC, GC'S CARRIER, SUB AND SUB'S CARRIER.


                    MJB
DATE: 09/17/04 USER ID: BARNABAM

                                                    THIS HAS
BEEN AUTHORIZED BY XLP. MJB
DATE: 09/27/04 USER ID: A003638
FAXED COPY OF DENIAL LETTER TO EXCESS CARRIER. MJB
DATE: 10/06/04 USER ID: A003638
UTICA REP CALLS, TRACY SHELDON (SP) (800) 866-1914 X 6670 FILE 054859. PER HER
MESSAGE, THEY ACK TENDER, ARE SENDING TO COVERAGE COUNSEL FOR REVIEW. SHE SAID
AN ACK LETTER WOULD BE SENT SHORTLY. MJB
DATE: 10/12/04 USER ID: A003638
EXCESS COPIES ME ON LATE NOTICE DENIAL TO INSURED. MJB
/////////
LARRY KNIGHT'S CARRIER WRITES AND ACK'S TENDER, NOTES THEY ARE INVESTIGATING.

Post-It Fax Note   7871   Date        # of pages 2
To Jenn Fourth           From Lori Ann Buprecki
Co./Dept. WEMED          Co. Broadspire
Phone #                  Phone #
Fax # 212 4902038        Fax #

                              GR 408

Sept. JUL. 21. 2006 9:43AM HTS-NJ          8085084850;          06/05/2006  9: NO. 2282448;P. 7;e 2/2

5/27/05  7:17:02                    CLAIM ABSTRACT REPORT                    Page        3
CS - BWXC901
Claim Print - Commercial General Liab.                      BARN
JB
ATE: 10/18/04 USER ID: A003638
FC'S CARRIER COPIES ME ON COVERAGE DENIAL ISSUED TO THEIR INSURED BACK IN 2002.
HEY DENIED FOR LATE REPORTING AND ALSO CITE PROJECT NOT SCHEDULED ON POLICY
ND THEIR UNDERWRITERS DECLINED TO COVER THIS PROJECT.  MJB
ATE: 11/23/04 USER ID: A003278
    REVIEWED FILE:
      PLACED ON DIARY FOR ANY ISSUES REGARDING COVG DENIAL - GB
ATE: 12/01/04 USER ID: A003638
PAID COVERAGE COUNSEL TIME THROUGH LATE SEPTEMBER.  MJB
DATE: 12/09/04 USER ID: A003638
COVERAGE WAS DENIED IN MID SEPTEMBER.  NO PUSHBACK TO DENIAL TO DATE.
BASIS OF DENIAL IS WELL SUPPORTED, AND DENIAL WAS ISSUED TIMELY.  I AM RETIRING
THE FILE PENDING ANY FURTHER CONTACT ON THE MATTER.  MJB
DATE: 01/18/05 USER ID: A003638
LARRY KNIGHT'S CARRIER WRITES TO DENY TENDER.  LOOKS LIKE THEY HAVE BLANKET AI
ENDORSEMENT.  THEY DENY CITING TO LANGUAGE THAT EXCLUDES COVERAGE FOR THE
INDEPENDENT ACTS OR OMISSIONS OF THE CONTRACTUAL AI.  PRETTY WEAK BASIS FOR
DENIAL AND IT WAS ISSUED LATE.  IN ANY EVENT, WE HAVE DISCLAIMED COVERAGE IN
THIS MATTER.  MJB
DATE: 05/26/05 USER ID: A003638.
BROKER FORWARDS SUIT PAPERS FILED BY GC AGAINST THEIR CARRIER AND EVERYONE ELSE
IN THIS MATTER.  I AM HAVING FILE REOPENED AND THIS WILL NEED TO GO OUT TO
COVERAGE COUNSEL FOR ANTICIPATED SUPPLEMENTAL DENIAL OF COVERAGE.  MJB

GR 409

**M**

ORIGINAL    1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------

105 STREET ASSOCIATES, LLC.,

                                    Plaintiff,


            - against -

GREENWICH INSURANCE COMPANY,


                                    Defendant.

------------------------------------------

                    Wilson, Elser, Moskowitz,
                    Edlerman & Dicker, LLP.
                    Philadelphia, Pennsylvania

                    December 29, 2006
                    10:35 a.m.


EXAMINATION BEFORE TRIAL of Defendant, BY:

MICHAEL BARNABA, taken by Plaintiff, Pursuant

to Order, and held at the above-mentioned time

and place, before Marc Schafler, a

Stenographer and Notary Public within and for

the State of New York.

53

BARNABA

1
2      claim came in more than two years

3      after the incident occurred and after

4      the filing of a lawsuit.  It included

5      a letter of representation from an

6      attorney to a BFC entity which was

7      more than -- also quite aged, I

8      believe also about approximately two

9      years old, so I was trying to

10     determine if my insured had received

11     notice when the construction entities

12     had received notice of the claim.

13          Q.     Besides seeking the

14     information you sought in this letter

15     of August 25, what other steps did you

16     take to investigate the timeliness of

17     the claim.

18               MR. FUERTH: At that time?

19               MR. SCHNEIDER: As of the

20     date of the letter.

21          A.     Well, I recall that I

22     sent a request to the broker for

23     additional documentation.  I sent this

24     request to the insured for additional

25     documentation and information and

54

1                    BARNABA

2       recognizing at the outset of the claim

3       that there appears to be a late

4       reporting situation.

5                    I also recommended to

6       XL Programs that we consult with

7       coverage counsel on a possible late

8       notice disclaimer of coverage.

9           Q.     In your answer, you refer

10      to a request to the broker for

11      additional documentation.  Was that

12      the request you made of Ms. Weiner?

13          A.     I believe I only made one

14      request to her.

15          Q.     When did you seek out

16      coverage counsel?

17                  MR. FUERTH: Objection to

18      form.  You can answer.

19          A.     I would need to defer to

20      my file materials, my notes and my

21      e-mails, but approximately the same

22      time this letter was issued, give or

23      take a day or two.

24          Q.     Besides seeking information

25      from the broker and from the insured

```
1                          BARNABA

2       summons and complaint on or about

3       April 20, 2004?

4            A.    My understand of New York

5       law is that it is irrelevant if the

6       insured actually received a copy of

7       the lawsuit if they were legally

8       served through their last registered

9       agent with New York State.  Without my

10      signature here and reading the entire

11      report, I don't know if this is

12      commented on in the legal analysis.

13                 MR. SCHNEIDER: Could you

14      read back my question?

15

16                      (Whereupon, the reporter

17      read back the above-referred to

18      portion.)

19

20           A.    I'm sorry, can you read

21      it back again?

22

23                      (Whereupon, the reporter

24      read back the above-referred to

25      portion.)
```

93

BARNABA

2      asking you to opine legal case law.

3      What the question to you is, what did

4      you understand?

5                   MR. SCHNEIDER: Yes.

6           A.      Just solely from this

7      document or from my --

8           Q.      At the time you made a

9      recommendation to Mr. Walsh to deny

10     coverage.

11          A.      At the time that I made

12     a request to Mr. Walsh to deny

13     coverage, my understanding of New York

14     law, it was in fact irrelevant whether

15     or not the insured agent actually

16     received a copy of the lawsuit so long

17     as they were legally served as

18     prescribed under New York law.

19          Q.      Thank you.  Now, at any

20     time, did you investigate whether or

21     not the insured actually received a

22     copy of the summons and complaint in

23     April, May or June 2004?

24                  MR. FURETH: It is a yes or

25     no.

94

BARNABA

1

2          A.      No.

3          Q.      At any time, did you

4    authorize an investigation into

5    whether the insured actually received

6    a copy of the summons and complaint in

7    April, May or June 2004?

8              MR. FURETH: Again, note my

9    objection, but over my objection, you

10   can answer.

11         A.      No.

12         Q.      To your knowledge, did

13   anyone investigate whether the insured

14   actually received a copy of the

15   summons and complaint in the Conrad

16   lawsuit during April, May or June

17   2004?

18             MR. FURETH: Note my

19   objection.  You can answer over my

20   objection.

21         A.      No.

22         Q.      Without telling me

23   anything that you may have said to

24   counsel or counsel said to you, after

25   you received and reviewed Plaintiff's

**N**

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, New York 10017-5639    Tel: (212) 490-3000    Fax: (212) 490-3038

*New York• Los Angeles • San Francisco • Washington, DC • Newark • Philadelphia • Baltimore • Miami • Chicago • White Plains, NY*
*Dallas • Albany, NY • San Diego • Houston • Garden City, NY • Boston • McLean, VA • Stamford • London*
*Affiliate Offices: Paris • Berlin • Cologne • Frankfurt • Munich*

www.wemed.com

September 20, 2004

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

105 Street Associates, LLC
C/o BFC Construction Corp.
2226 First Avenue
New York, New York 10029

Attention:  Brad Richards

|  |  |  |
|---|---|---|
| Re: | Insured: | **105 Street Associates, LLC** |
|  | Claimant: | **Richard Conrad** |
|  | Policy No.: | **WGG 5001058** |
|  | D/Loss: | **July 2, 2002** |
|  | Client File: | **P5502044** |
|  | Our File: | **06928.00226** |

Dear Mr. Richards:

Please be advised that the undersigned law firm represents the interests of Greenwich Insurance Company ("Greenwich"), which provides Commercial General Liability Insurance on an occurrence basis to 105 Street Associates, LLC ("105 Street Associates") for the period of April 15, 2002, to April 15, 2003, under policy number WGG5001058. This letter will serve to advise you of Greenwich's coverage position regarding the claim initiated by Richard Conrad ("Conrad") with respect to an accident that allegedly occurred on July 2, 2002.

This letter sets forth the facts upon which we rely at this time in evaluating coverage and our understanding of the situation from the materials provided to date, and may be subject to change as more information becomes available. Should you have information that is contrary to these facts that may impact your coverage or our evaluation, this information should be provided to the undersigned as soon as possible.

We are recently in receipt of the information and documentation you submitted in regard to the above-referenced matter. While we lend no credence to Mr. Conrad's claim, referenced therein, we are constrained to advise you on behalf of Greenwich that coverage is not afforded under the Policy for this matter.

1702393.1

P00103

Our File No. 06928.00226
Page 2

By way of background, based upon the documents reviewed to date, on July 2, 2002, Richard Conrad ("Conrad"), was allegedly injured when he fell at a work site at a building located at 235-237 East 105th Street, New York, New York (the "Building"). Conrad was an employee of Jem Erectors, Inc., the subcontractor working at the Building. The Building is owned by the insured entity 105 Street Associates, LLC, whose office is located at 2226 First Avenue, New York, New York 10029.

We understand that 105 Street Associates first received notice of the claim on April 20, 2004, with the affidavit of service of the summons and verified complaint. In turn, notice of the alleged accident was first received by WKF&C Agency, Secretary of State. Inc. on August 18, 2004, by facsimile from the insured's broker, North Shore Risk Management, LLC ("North Shore"), with a Notice of Occurrence/Claim. Also, on August 20, 2004, North Shore also submitted the Notice of Occurrence/Claim, the summons and verified complaint and an August 6, 2002 letter from the claimant's counsel to the insured advising of a workmen's compensation claim filed on the claimant's behalf.

While we are unclear as to whether you received notice of the August 6, 2002 letter from claimant's counsel, should further investigation establish that you received notice of the occurrence prior to April 20, 2004, we reserve our rights to deny coverage for late notice on that basis as well.

## THE POLICY

After reviewing the policy language and the applicable case law, Greenwich Insurance Company denies coverage for late notice in accordance with the terms and conditions of the Policy.

Greenwich Commercial General Liability Insurance Policy No. WGG 5001058 was issued to 105 Street Associates, LLC for the period of April 15, 2002 to April 15, 2003, with a limit of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate.

Under the heading, "**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**," the subject Policy provides:

1.     Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

b.     This insurance applies to "bodily injury" and "property damage" only if:

Our File No. 06928.00226
Page 3

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The Policy contains the following definitions:

> (3) "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> (13) "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The Policy further sets forth in "SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS":

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

> (1) How, when and where the "occurrence" or offense took place;
>
> (2) The names and addresses of any injured persons and witnesses; and
>
> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

> (1) Immediately record the specifics of the claim or "suit" and the data received; and

Our File No. 06928.00226
Page 4

    (2)    Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.    You and any other involved insured must:

    (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim of "suit";

    (2)    Authorize us to obtain records and other information;

    (3)    Cooperate with us in the investigation of settlement of the claim or defense against the "suit";

As provided in the Policy, "[t]he words "we", "us" and "our" refer "to the Company providing the insurance."

As you can see from the above cited policy language, the insured is required to give Greenwich notice of an occurrence which may result in a claim as soon as practicable.

Under New York law, compliance with an insurance policy notice provision operates as a condition precedent to coverage. _Sirignano v. Chicago Ins. Co._, 192 F. Supp. 2d 199, 203 (S.D.N.Y. 2002); _White v. City of New York_, 598 N.Y.S.2d 759,760 (1993); _Paramount Ins. Co. v. Rosedale Gardens, Inc._, 743 N.Y.S.2d 59, 62 (1st Dep't 2002). Absent a showing of legal justification, the failure to comply with the notice condition vitiates coverage. _Sirignano, supra,_ at 203; _Security Mut. Ins. Co. v. Acker-Fitzsimons Corp._, 340 N.Y.S.2d 902, 905 (1972); _Paramount Ins. Co._, supra, at 63.

The duty to provide notice arises when circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim on the subject policy. _Sirignano, supra,_ at 203; _Security Mut. Ins. Co._, supra, at 907; _Paramount Ins. Co._, supra, at 62. Therefore, the duty to give notice frequently arises prior to the commencement of an action with respect to a claim.

Knowledge of an occurrence obtained by an agent charged with the duty to report such matters is imputed to the principal. _Paramount Ins. Co._, supra, at 760. A reasonable possibility that coverage "may exist even though there are some factors that tend to suggest the opposite" of the policy's involvement is sufficient to trigger the duty. _Christiania General Ins. Corp. v. Great American Ins. Co._, 979 F.2d 268, 276 (2d Cir. 1992). A provision requiring notice when it "appears likely" that a claim will or "may" involve a policy does not require a certainty, or even a probability, that the policy will be involved. _Id._ When the policy requires notice whenever a claim may arise, the fact that a particular occurrence will result in a ripened claim does not relieve the insured from advising the carrier of that event. _Heydt Contracting Corp. v. American Home Assur. Co._, 536 N.Y.S.2d 770, 773 (1st Dep't 1989). An insurer need not demonstrate prejudice in order to deny coverage on the basis of late

Our File No. 06928.00226
Page 5

notice. Travelers Insurance Company v. Buffalo Reinsurance Company, 735 F. Supp. 2d 492 (S.D.N.Y. 1990); Security Mut. Ins. Co., supra, at 905.

Where a policy requires notice of loss "as soon as practicable", the insured must provide such notice within a reasonable time in view of all the facts and circumstances. Security Mut. Ins. Co., supra, at 906; Paramount Ins. Co., supra, at 62; Nationwide Ins. Co. v. Empire Ins. Group, 742 N.Y.S.2d 387, 389 (2d Dep't 2002). The phrase "as soon as practicable" is an "elastic" measure of time, and "there is no inflexible test of reasonableness." Mighty Midgets, Inc. v. Centennial Ins. Co., 416 N.Y.S.2d 559 (1979). While New York courts recognize some excuses for an insured's failure to provide timely notice of a potential claim, the insured has the burden of proving the reasonableness of the delay. Security Mut. Ins. Co., supra, at 906; Paramount Ins. Co., supra, at 63. New York courts have held that relatively short delays in providing notice of an actual or potential claim violate the notice requirement. American Home Assur. Co. v. Republic Ins. Co., supra, 984 f.2d 76 (2d Cir. 1993) [one to two month delay]; Heydt supra [approximately 4 months]; Power Authority of New York v. Westinghouse Elec. Corp., 502 N.Y.S.2d 420 (1st Dep't 1986) [53 days]; Horowitz v. Transamerica Ins. Co., 683 N.Y.S.2d 290 (2nd Dep't 1999) [48 days].

As referenced above, here, notice was first received on April 20, 2004 by affidavit of service of the summons and verified complaint served on the Secretary of State. However, notice was first reported to WKF&C on August 18, 2004 in the form of a facsimile from North Shore, with a Notice of Occurrence/Claim. Therefore, 105 Street Associates was on notice of the claim well in advance of its notice of the Claim to Greenwich.

The nearly four (4) month delay in reporting this matter is clearly unreasonable and leads Greenwich to deny coverage. Since coverage is denied based on your breach of the policy's requirements, a defense of any lawsuit filed will not be afforded to you, nor will Greenwich indemnify 105 Street Associates for any losses that may be asserted with this claim. Therefore, we suggest that you contact your personal attorney regarding this matter.

We understand, however, that the general contractor, BFC Construction Corporation is insured by Sirius with regard to the construction project related to this claim. In addition, pursuant to the Subcontractor Agreement between BFC Construction and Larry E. Knight, coverage is to be afforded for this matter by Graphic Arts Mutual Insurance Company. We note that Greenwich's coverage is excess to all other valid and collectible insurance. We recommend, therefore, if you have not already done so, that you contact the relevant carriers, as well as any Umbrella Carriers, Errors and Omissions Carriers, or other insurance carriers where coverage may be applicable.

Please note that this letter is not to be construed as a waiver of any of the rights, which Greenwich Insurance Company may have under the policy. Nor is it an admission of any liability of Greenwich Insurance Company to your company. Furthermore, if you have any information that would contradict this coverage determination, please provide the information as soon as possible.

We trust the foregoing is satisfactory. Should you have any questions or comments, or if you believe you have any material information, documentation or evidence which would alter

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1702393.1

Our File No. 06928.00226
Page 6

this determination that there is no coverage under the Policy, please do not hesitate to contact the undersigned.

Should you wish to take up this matter with the New York State Insurance Department, you may write or visit the: 1) Consumer Services Bureau, New York State Insurance Department, at either 160 W. Broadway, New York, NY 10013; 2) Agency Building One, Governor Nelson A. Rockefeller Empire State Plaza, Albany, NY 12257; or 3) 220 Delaware Avenue, Suite 229, Buffalo, NY 14202.

If you have any questions or comments concerning this letter or your Policy, or if you have additional information that you would like to bring to our attention, please do not hesitate to contact us.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Stephen A. Postelnek

SAP:ms

cc:   Michael Barnaba, Claims Analyst
      XL Specialty Claims Administrators

      Robert Klipera, CPCU- Vice President, Claims
      WKF&C Agency, Inc.

      North Shore Risk Management LLC

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1702393.1

P00108



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------X

105 STREET ASSOCIATES, LLC,                              :

                              Plaintiff,         :

        -against-                                       :

GREENWICH INSURANCE COMPANY,                           :

                        Defendant.        :

--------------------------------------------------------------X

Date Summons and Complaint
filed: October 24/2005

Index No. 603783/05

**SUMMONS**

Plaintiff designates New York
County as the place of trial

The basis of venue is the principal place
of business of each party and where
the cause of action arose.

Plaintiff resides at
2226 First Avenue
County of New York

To the above-named Defendant

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve a

notice of appearance, on the plaintiff's attorneys within 20 days after the service of this

summons, exclusive of the day of service (or within 30 days after the service is complete if this

summons is not personally delivered to you within the State of New York); and in case of your

failure to appear or answer, judgment will be taken against you by default for the relief demanded

in the complaint.

Dated: New York, New York
October 17, 2005

SCHNEIDER GOLDSTEIN BLOOMFIELD LLP

By: _____
    Donald F. Schneider
Attorneys for Plaintiff
Office and P.O. Address:
90 Broad Street, 6th Floor
New York, New York 10004
(212) 265-2266

Defendant's address:

Greenwich Insurance Company
Seaview House
70 Seaview Avenue
Stamford, CT 06902

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X

105 STREET ASSOCIATES, LLC,                          :

                                    Plaintiff,       :

                   -against-                         :        Index No. 603783/05

GREENWICH INSURANCE COMPANY,                         :        **COMPLAINT**

                                    Defendant.       :

-------------------------------------------------------------X

      Plaintiff 105 Street Associates LLC ("Plaintiff"), by its undersigned attorneys,

Schneider Goldstein Bloomfield LLP, as and for its Complaint herein, alleges:


## THE PARTIES

    1.    At all times relevant herein, Plaintiff was and still is a limited liability

company duly organized and existing under and by virtue of the laws of the State of New York.


    2.    Upon information and belief, at all times relevant herein, Defendant

Greenwich Insurance Company ("Greenwich") was and still is an insurance company organized

and existing under the laws of the State of New York.


    3.    Greenwich conducts an insurance business in the State of New York.

## ADDITIONAL ALLEGATIONS APPLICABLE
## TO ALL CAUSES OF ACTION

### The Insurance Policy

4.      Greenwich made, issued, and delivered to Plaintiff comprehensive commercial general liability insurance policy no. WGG5001058 on an occurrence basis (the "Greenwich Policy") for the period from April 15, 2002 to April 15, 2003 (the "Policy Period").

5.      Plaintiff was an insured under the Greenwich Policy.

6.      Plaintiff has duly performed all of the terms and conditions of the Greenwich Policy on its part to be performed.

### The Claim by Richard Conrad

7.      An individual named Richard Conrad claimed to have suffered injury during the Policy Period at 235 East 105th Street, New York, New York, a location specified in the Greenwich Policy.

8.      Richard Conrad commenced a personal injury action against Plaintiff and others, entitled Conrad v. 105 Street Associates LLC, et al, Index No. 105554/04 (the "Conrad Action").

9.    Promptly upon learning of the alleged occurrence and claim by Richard Conrad, Plaintiff duly notified the insurance agent and Greenwich thereof and transmitted a copy of the Summons and Complaint in the Conrad Action.

10.    The Conrad Action is within the scope of coverage under the Greenwich Policy.

11.    The insurance coverage provided by the Greenwich Policy was in full force and effect all times relevant herein.

12.    Greenwich has an obligation under the Greenwich Policy to defend and indemnify Plaintiff in connection with the Conrad Action.

13.    Plaintiff demanded that Greenwich assume its responsibilities and obligations to it under the Greenwich Policy with respect to the Conrad Action.

14.    Nonetheless, Greenwich wrongfully disclaimed any obligation to defend and indemnify Plaintiff in the Conrad Action, thereby breaching its obligations under the Greenwich Policy.

15.    Plaintiff lacks an adequate remedy at law.

## FIRST CAUSE OF ACTION

16.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 15 above as if fully set forth herein.

17.     A justiciable controversy exists between Plaintiff and Greenwich.  Plaintiff believes that it has fully complied with the Greenwich Policy and that Greenwich is obligated to defend and indemnify Plaintiff in connection with the Conrad Action.  On the other hand, Greenwich asserts that it is not obligated to defend and indemnify Plaintiff with respect to the Conrad Action.

18.     By reason of the foregoing, Plaintiff is entitled to a judgment declaring that Greenwich is obligated to fully insure, defend and indemnify Plaintiff in connection with the Conrad Action.

## SECOND CAUSE OF ACTION

19.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 15 above as if fully set forth herein.

20.    By reason of the foregoing, Plaintiff is entitled to a judgment directing and compelling Greenwich to fully comply with its defense and indemnity obligations with respect to the Conrad Action.

### THIRD CAUSE OF ACTION

21.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 15 above as if fully set forth herein.

22.    As a result of Greenwich's wrongful refusal to defend Plaintiff in the Conrad Action, Plaintiff retained litigation counsel to defend the Conrad Action in order to protect its interests.

23.    As a result of Greenwich's breach of its obligation to provide a defense to Plaintiff, Plaintiff has incurred and paid attorney's fees and expenses, and upon information and belief, will continue to incur and pay attorney's fees and expenses, in connection with the defense of the Conrad Action.

24.    By reason of the foregoing, Plaintiff is entitled to damages, including the attorneys' fees and expenses it has incurred and paid, and upon information and belief, will continue to incur and pay, in connection with the Conrad Action, in an amount which will be proven at the trial of this action.

**WHEREFORE,** Plaintiff 105 Street Associates, LLC. demands judgment against Defendant Greenwich Insurance Company as follows:

(a)    On the First Cause of Action, a judgment declaring the rights and obligations of the parties under the Greenwich Policy, including Greenwich's obligations to fully insure, defend and indemnify Plaintiff with respect to the Conrad Action;

(b)    On the Second Cause of Action, a judgment directing and compelling Greenwich to fully comply with and fulfill its defense and indemnity obligations with respect to the Conrad Action;

(c)    On the Third Cause of Action, damages in a sum that will be proven at the trial of this action; and

(d)    Granting such other and further relief as to this Court may seem just and proper, including the costs and disbursements of this action.

Dated: New York, New York
       October 17, 2005

SCHNEIDER GOLDSTEIN BLOOMFIELD LLP

By: _____
       Donald F. Schneider
       Attorneys for Plaintiff
       Office and P.O. Address:
       90 Broad Street, 6th Floor
       New York, New York 10004
       (212) 265-2266

**P**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

105 STREET ASSOCIATES, LLC

Index No.: 05-cv-9938 (VM)

Plaintiff,

-against-

**DEFENDANT GREENWICH
INSURANCE COMPANY'S
ANSWER TO PLAINTIFF'S
COMPLAINT**

GREENWICH INSURANCE COMPANY

Defendant.
------------------------------------------------------------------ X

Defendant, GREENWICH INSURANCE COMPANY, (hereinafter "Greenwich"); whose

principal place of business is 70 Seaview Avenue, Stamford, Connecticut, by and through its

attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby answers the

Complaint of the Plaintiff, 105 STREET ASSOCIATES, LLC (hereinafter "105" or "Plaintiff"),

upon information and belief, as follows:

## THE PARTIES

FIRST:    Denies knowledge and information sufficient to form a belief as to the truth of the

allegations contained in paragraph 1 of the Complaint.

SECOND:    Denies each and every allegation contained in paragraph 2 of the complaint

except admits that Greenwich is a Connecticut corporation with a principal place of business at

70 Seaview Avenue, Stamford, Connecticut, engaged in the practice of issuing insurance policies

and begs leave to refer all questions of fact to the Court upon the trial of this action.

THIRD:    Denies the allegations contained in paragraph 3 of the Complaint except admits

that Greenwich is a Connecticut corporation with a principal place of business at 70 Seaview

Avenue, Stamford, Connecticut, engaged in the practice of issuing insurance policies in the State

2121611 1

of New York and begs leave to refer all questions of fact to the Court upon the trial of this action.

## ADDITIONAL ALLEGATIONS APPLICABLE
## TO ALL CAUSES OF ACTION

### AS TO THE INSURANCE POLICY

FOURTH:    Denies the allegations contained in paragraph 4 of the Complaint except admits Greenwich issued a commercial general liability policy no. WGG5001058 to provide plaintiff with general liability insurance and begs leave to refer to the true terms and conditions of the policy at the trial of this action.

FIFTH:    Denies the allegations contained in paragraph 5 of the Complaint except admits Greenwich issued a commercial general liability policy to plaintiff and begs leave to refer to the true terms and conditions of the policy at the trial of this action.

SIXTH:    Denies the allegations contained in paragraph 6 of the Complaint.

### THE CLAIM BY RICHARD CONRAD

SEVENTH:    Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint and begs leaves to all questions of fact to the Court upon trial of this action.

EIGHTH:    Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint and begs leaves to all questions of fact and law to the Court upon trial of this action.

NINTH:    Denies the allegations contained in paragraph 9 of the Complaint and begs leaves to all questions of fact to the Court upon trial of this action.

TENTH:    Denies the allegations contained in paragraph 10 of the Complaint and begs leave to refer to the true terms and conditions of the policy at the trial of this action.

ELEVENTH: Denies the allegations contained in paragraph 11 of the Complaint and begs leave to refer to the true terms and conditions of the policy at the trial of this action.

TWELFTH:   Denies the allegations contained in paragraph 12 of the Complaint.

THIRTEENTH:    Denies the allegations contained in paragraph 13 of the Complaint and begs leave to refer all questions of fact to the Court upon trial of this action.

FOURTEENTH:    Denies the allegations contained in paragraph 14 of the Complaint.

FIFTEENTH:    Denies the allegations contained in paragraph 15 of the Complaint and begs leave to refer all questions of law to the Court upon the trial of this action.

## FIRST CAUSE OF ACTION

SIXTEENTH:    Repeats, reiterates and realleges each and every response to the allegations contained in paragraphs 1-15 of the Complaint as and for its response to the allegations contained in paragraph 16 of the Complaint with the same force and effect as if fully set forth at length herein.

SEVENTEENTH:    Denies the allegations contained in paragraph 17 of the complaint except admits that Greenwich is not obligated to defend and indemnify plaintiff with respect to the

"Conrad action" and begs leave to refer to the Contract and to refer the policy and all questions of fact to the Court at the trial of this action.

EIGHTEENTH:    Denies the allegations contained in paragraph 18 of the Complaint.

## SECOND CAUSE OF ACTION

NINETEENTH:    Repeats, reiterates and realleges each and every response to the allegations contained in paragraphs 1-18 of the Complaint as and for its response to the allegations contained in paragraph 19 of the Complaint with the same force and effect as if fully set forth at length herein.

TWENTIETH:    Denies the allegations contained in paragraph 20 of the Complaint.

## THIRD CAUSE OF ACTION

TWENTY-FIRST:    Repeats, reiterates and realleges each and every response to the allegations contained in paragraphs 1-20 of the Complaint as and for its response to the allegations contained in paragraph 21 of the Complaint with the same force and effect as if fully set forth at length herein.

TWENTY-SECOND: Denies the allegations contained in paragraph twenty second of the Complaint as against Greenwich and begs leave to refer all questions of fact and law to the Court upon the trial of this action.

TWENTY-THIRD:   Denies knowledge and information sufficient to form a belief as to the truth of the allegation contained in paragraph twenty third of the Complaint and begs leave to refer all questions of fact to the Court upon the trial of this action.

TWENTY-FOURTH: Denies the allegations contained in paragraph twenty fourth of the Complaint.

## AS AND FOR A FIRST SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

TWENTY-FIFTH:    The Complaint fails to state a cause of action for which relief can be granted.

## AS AND FOR A SECOND SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

TWENTY-SIXTH:    Upon information and belief, if damages were sustained by plaintiff, which Greenwich expressly denies, as alleged in the Complaint such damages are attributable in whole or in part to the culpable conduct of plaintiff without any negligence, fault or want of care on the part of Greenwich.

## AS AND FOR A THIRD SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

TWENTY-SEVENTH: Upon information and belief, plaintiff has failed to take such reasonable measures so as to mitigate and reduce losses and damages, if any, as alleged in the Complaint.

## AS AND FOR A FOURTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

TWENTY-EIGHTH: The alleged insured has failed to carry their burden of proof by clear and convincing evidence to demonstrate the compliance of all terms, conditions and coverage, of the purported Greenwich Policy.

## AS AND FOR A FIFTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

TWENTY-NINTH:    To the extent that the Complaint states a claim against Greenwich upon which relief could be granted, which Greenwich expressly denies, such claim is or may be barred in whole or in part by application of the doctrines of laches, estoppel, waiver, unclean hands, other equitable doctrines and/or by the applicable statutes of limitations.

2121611 1

## AS AND FOR A SIXTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTIETH: The Complaint is, or may be, barred and subject to dismissal for failure to join necessary and/or indispensable parties.

## AS AND FOR A SEVENTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTY-FIRST:    Coverage, if any, for the alleged "Conrad Action" as set forth in the Complaint is or may barred or excluded to the extent that the insured has failed to comply with any or all material terms and conditions precedent to the purported Greenwich Policy including, without limitation, any provisions governing notice of occurrence or accident, notice of claims or suit, assistance and cooperation.

## AS AND FOR A EIGHTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTY-SECOND:  The purported Greenwich Policy is not applicable to and Greenwich has no indemnity obligation, if any, for any liabilities or monetary obligations assumed, or monies voluntary paid, or that it was not legally obligated to pay as damages by its alleged insured or that were paid without Greenwich's consent for the alleged "Conrad Action" as set forth in the Complaint.

## AS AND FOR A NINTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTY-THIRD: The purported Greenwich Policy would not provide coverage for non-fortuitous acts and/or any loss, injury, damage or risks which was known or should have been known by the insured at the time of application and/or inception of the purported Greenwich Policy.

## AS AND FOR A TENTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTY-FOURTH: Greenwich's indemnity obligation, which Greenwich expressly denies, under the purported Greenwich Policy for the alleged "Conrad Action" as set forth in the

2121611 1

Complaint, would be limited to amounts the insured is legally obligated to pay as damages because of "personal injury" or "bodily injury" within the meaning of the purported Greenwich Policy.

## AS AND FOR A ELEVENTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTY-FIFTH: As a condition precedent to coverage, the Greenwich Policy requires that the insured comply with notice requirements. Greenwich has no obligation under the purported Greenwich Policy to the extent that it was not provided with timely and proper notice required by the purported Greenwich Policy with respect to the alleged "Conrad Action" as set forth in the Complaint.

## AS AND FOR A TWELVTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTY-SIXTH: The claims are barred because there is no actual and justiciable controversy existing between the parties.

## AS AND FOR A THIRTEENTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTY-SEVENTH: Upon information and belief, the plaintiff in the underlying action sustained his injuries, if any, wholly due to the negligence of the plaintiff in the instant action.

## AS AND FOR A FOURTEENTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTY-EIGHTH: The insurance/indemnity provisions contained in the contract relied upon by plaintiff in its complaint are in violation of the New York General Obligations Law Section 15-108 and are void and unenforceable as against public policy.

2121611 1

## AS AND FOR A FIFTEENTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

THIRTY-NINETH: To the extent that the Greenwich is liable, which Greenwich expressly denies, in the underlying Conrad action, a proper allocation of loss or damage between Greenwich, the plaintiff and/or other insurers, if any, is required. Such allocation may result in no sums being allocated to the Greenwich policy. In no event is Greenwich required to provide coverage in excess of its share under a fair and proper allocation.

## AS AND FOR A SIXTEENTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

FOURTIETH: Any person/entity seeking to establish coverage under any policy issued to 105 by Greenwich bears the burden of proving the terms and conditions of that policy. To the extent that the terms and conditions of a policy cannot be established for any particular policy period during which coverage is alleged, claims of coverage as to that period fail as a matter of law.

## AS AND FOR A SEVENTEENTH SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE

FORTY-FIRST: The Complaint does not set forth sufficient facts to allow Greenwich to determine all potential affirmative defenses (including defenses based upon the terms, conditions or exclusions of the policies that have been issued by Greenwich.) Accordingly, Greenwich reserves its right to assert additional defenses when such information is ascertained through discovery and further investigation. Greenwich specifically reserves the right to rely upon any defense arising from the terms, conditions and exclusions of its purported policy.

2121611.1

WHEREFORE, Defendant Greenwich demands judgment dismissing the plaintiff's Complaint; judgment over and against plaintiff declaring that Greenwich has no obligation to provide any coverage to plaintiff with respect to the underlying Conrad action; judgment declaring the rights of Greenwich as to a proper allocation of loss or damages against plaintiffs; judgment declaring the rights of Greenwich as to a proper allocation of loss or damages against the other insurers, if any; judgment awarding Greenwich its costs, disbursements and attorneys' fees incurred in this action; and such other and further relief as to this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Defendant Greenwich demands a trial by jury on all issues so triable.

Dated: New York, New York
       December 16, 2005

By: _____
Jill Cadre (JC-4127)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendant
Greenwich Insurance Company
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
File No.: 06928.00226

TO:    Donald F. Schneider
       Attorney for Plaintiff
       90 Broad Street, 6th Floor
       New York, NY 10004
       212-265-2266

2121611 1

STATE OF NEW YORK   )
                        ss.:

COUNTY OF NEW YORK  )

MICHELE SAVINI, being duly sworn, deposes and says:

That deponent is not a party to the action, is over 18 years of age and resides in Staten Island, New York.

That on the 16th day of December, 2005 deponent served the within **DEFENDANT GREENWICH INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT** upon:

      DONALD F. SCHNEIDER
      Attorney for Plaintiff
      90 Broad Street, 6th Floor
      New York, NY 10004
      212-265-2266

the attorneys for the respective parties in this action, at the above address designated by said attorneys for that purpose by depositing same, enclosed in a post-paid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

_(signature)_
MICHELE SAVINI

Sworn to before me this

16th day of December, 2005.

_(signature)_
JILL CADRE
Notary public, State of New York
No. 02CA6121054
Qualified in Westchester County
Commission Expires Jan 3 2009

2123144.1

**Q**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------x

RICHARD CONRAD,                                    Index No. 105554/04

                              Plaintiff,

        -against-                                  **PLAINTIFF'S**
                                                   **RESPONSE TO**
105 STREET ASSOCIATES, LLC,                        **DEMAND FOR**
BFC CONSTRUCTION CORP., BFC PARTNERS, L.P.,        **RELIEF**
LARRY E. KNIGHT, INC and LARRY KNIGHT

                              Defendants.
-----------------------------------------------------------------------x

105 STREET ASSOCIATES, LLC, BFC
CONSTRUCTION CORP., and BFC PARTNERS, L.P.         Index No. 590118/05

                      Third-Party Plaintiffs

                -against-

LARRY E. KNIGHT, INC, LARRY KNIGHT and
JEM ERECTORS, INC.

                      Third-Party Defendants
-----------------------------------------------------------------------x

        Plaintiff, RICHARD CONRAD, by and through his attorneys, Kelner & Kelner, Esqs., as and

for his Response to Demand for Relief, respectfully states:

### AS AND FOR A FIRST CAUSE OF ACTION:

        That plaintiff, RICHARD CONRAD, demands the sum of TEN MILLION ($10,000,000.00)

DOLLARS as to the First Cause of Action.

### AS AND FOR A SECOND CAUSE OF ACTION:

        That plaintiff, RICHARD CONRAD, demands the sum of TEN MILLION ($10,000,000.00)

DOLLARS as to the Second Cause of Action.

## AS AND FOR A THIRD CAUSE OF ACTION:

That plaintiff, RICHARD CONRAD, demands the sum of TEN MILLION ($10,000,000.00)

DOLLARS as to the Third Cause of Action.

Dated:  New York, New York
        March 16, 2006

                                        Respectfully submitted,

                                        KELNER & KELNER

                              By:  _Gail S Kelner_____
                                        GAIL S. KELNER
                                        Attorneys for Plaintiff(s)
                                        140 Broadway, 37th Floor
                                        New York, New York 10005
                                        (212) 425-0700

TO:

SCHNEIDER GOLDSTEIN BLOOMFIELD LLP
Attorneys for Defendants/Third-Party Plaintiffs
105 STREET ASSOCIATES, LLC, BFC
CONSTRUCTION CORP. and BFC PARTNERS, L.P.
90 Broad Street, 6th Floor
New York, New York 10004
(212) 265-2266

CAMACHO MAURO MULHOLLAND, LLP
Attorneys for Defendants/Third-Party Defendants
LARRY E. KNIGHT, INC. and LARRY KNIGHT
Empire State Building
350 Fifth Avenue, Suite 5101
New York, New York 10118
File No.: UTMY-1311-K
(212) 947-4999
File No.:  UTMY-1311-K

2

BIVONA & COHEN, P.C.
Trial Counsel to Douglas Hayden, Esq.
Attorneys for Third-Party Defendant JEM ERECTORS, INC.
88 Pine Street, 25th Floor
New York, New York 10005
Att: Rod Coyne, Esq.
(212) 363-3100
File No.: SIF 33-28202 (JVC/RJC-1)

STATE OF NEW YORK    )
                            : ss.:
COUNTY OF NEW YORK  )

**GAYLE KAPLAN**, being duly sworn, deposes and says:

Deponent is not a party to the action, is over 18 years of age and resides in Brooklyn, New York.

On April 12, 2007, deponent served the within Notice of Motion, Plaintiff's Statement Pursuant to Civil Rule 56.1, Declaration of Donald Capoccia in Support, Declaration of Brad Richards in Support and Plaintiff's Memorandum of Law in Support of Motion For Summary Judgment upon Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys for the defendant, at 150 East 42nd Street, New York, New York 10017, by causing a true copy of same to be delivered by Federal Express for next day delivery.

_____
GAYLE KAPLAN

Sworn to before me this
12th day of April, 2007

_____
Notary Public
DONALD F. SCHNEIDER
Notary Public, State of New York
No. 02SC6034524
Qualified in Westchester County
Commission Expires: Dec. 13, 2009

S:\docs\BFC\Conrad\Greenwich Ins\affidavit of service by fed ex.wpd