# MEMORANDUM OF LAW

**FILE COPY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

105 STREET ASSOCIATES, LLC                    Index No.: 05-cv-9938 (VM)

                        Plaintiff,

        -against-

GREENWICH INSURANCE COMPANY,

                        Defendant.
------------------------------------------------------------------------ X

RECEIVED
APR 1 3 2007
CHAMBERS OF
JUDGE MARRERO


# MEMORANDUM OF LAW OF DEFENDANT GREENWICH INSURANCE COMPANY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, New York 10017


Of Counsel:    Glenn J. Fuerth

2741024.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1
FACTUAL BACKGROUND ............................................................................... 1
ARGUMENT ..................................................................................................... 10
   I.   NOTICE TO THE BROKER IS NOT NOTICE TO GREENWICH ............................... 11
   II.   105 STREET FAILED TO COMPLY WITH THE NOTICE PROVISION OF THE
   POLICY AND GREENWICH PROPERLY AND TIMELY DENIED COVERAGE ........... 12
   III.   GREENWICH TIMELY DISCLAIMED COVERAGE AND IS NOT OBLIGATED
   TO INDEMNIFY 105 STREET IN THE PRIMARY ACTION ......................................... 18
   IV.   105 STREET IS NOT ENTITLED TO REIMBURSEMENT OF ATTORNEY FEES,
   COSTS AND OTHER EXPENSES ....................................................................... 21
CONCLUSION .................................................................................................. 23

2741024.1

## TABLE OF AUTHORITIES

**Cases**

*2540 Associates, Inc. v. Assicurazioni Generali, S.P.A.,* 271 A.D.2d 282, 283,
707 N.Y.S.2d 59 (1st Dept. 2000) .......................................................... 11, 12, 18, 19

*26 Warren Corp. v. Aetna Casualty and Surety Company,* 253 A.D.2d 375
(1st Dept. 1998) ....................................................................................... 17

*Allcity Ins. Co. v. Jimenez,* 78 N.Y.2d 1054, 1056, 576 N.Y.S.2d 87, 581 N.E.2d 1342
(N.Y. 1991) .............................................................................................. 13, 19

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) ...................................... 11

*County of Nassau v. Michigan Mut. Ins. Co.,* 276 A.D.2d 578 (2nd Dept. 2000) ............... 21, 22

*DiGuglielmo v. Travelers Prop. Cas.,* 6 A.D.3d 344, 346
(1st Dep't 2004) ....................................................................................... 18

*Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 416 N.Y.S.2d 539,
389 N.E.2d 1061 (N.Y. 1979) ...................................................................... 19

*Incorporated Village of Pleasantville v. Calvert Ins. Co.,* 204 A.D.2d 689,
612 N.Y.S.2d 441 (2d Dept. 1994) ............................................................... 11

*Johnson v. General Mutual Ins. Co.,* 24 N.Y.2d 42 (1969) ...................................... 22

*Kamyr, Inc. v. St. Paul Surplus Lines Ins. Co.,* 152 A.D.2d 62, 547 N.Y.S.2d 964
(3d Dept. 1989) ........................................................................................ 11

*Kreger Truck Renting Co. v. American Guarantee & Liability Ins. Co.,*
213 A.D.2d 453, 623 N.Y.S.2d 623 (2nd Dept. 1995) ....................................... 12

*Matsushita Elec. Induc. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986) ............ 10

*Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12 (1979) ............................ 21, 22

*Mount Vernon Fire Ins. Co. v. Harris,* 193 F. Supp. 2d 674, 680 (E.D.N.Y. 2002) ............ 18

*Norfolk & Dedham Mut. Fire Ins. Co. v. Petrizzi,* 121 A.D.2d 276, 278,
503 N.Y.S.2d 51, denied 68 N.Y.2d 611, 502 N.E.2d 1007, 510 N.Y.S.2d 1025
(1st Dep't 1986) ....................................................................................... 18

*Paramount Ins. Co. v. Rosedale Gardens, Inc.,* 293 A.D.2d 235, 743 N.Y.S.2d 59
(1st Dept. 2002) ....................................................................................... 13

*Progressive Casualty Ins. Co. v. Yodice,* 276 A.D.2d 540, 714 N.Y.S.2d 715
(2d Dept. 2000) ....................................................................................... 11, 12

*Pub. Serv. Mut. Ins. Co. v. Harlen House Assocs.,* 7 A.D.3d 421, 422, 423
(1st Dep't 2004) .................................................................................. 18, 19, 20, 21

*Public Service Mutual Ins. Co. v. Hollander,* 228 A.D.2d 283, 644 N.Y.S.2d 214 ............. 13

*Security Mutual Ins. Co. of New York v. Acker-Fitzsimons Corp.,* 31 N.Y.2d 436,
340 N.Y.S.2d 902, 293 N.E.2d 76 (1972) ................................................... 11, 12, 13

*SSBSS Realty Corp. v. Public Service Mutual Ins. Co.,* 253 A.D.2d 583,
677 N.Y.S.2d 136 (1st Dept. 1998) ............................................................... 12

*Travelers Ins. Co. v. Volmar Construction Co.,* 2002 WL 31723191 (1st Dept. 2002) ........... 13

*U.S. Delivery Systems, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA,*
265 A.D.2d 402, 696 N.Y.S.2d 502 (2d Dept. 1999) ....................................... 11

*White v. City of New York,* 81 N.Y.2d 955, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993) ....... 12, 13

*Wilczak v. Ruda & Capozzi, Inc.,* 203 A.D.2d 944, 611 N.Y.S.2d 73, 74 (4th Dep't 1994). ........ 19

A

**Rules**

*Fed R. Civ. P. 56(c)* ................................................................................................................ 10

*McKinney's Business Corp. Law §306(b)(1)* ......................................................................... 16, 17

2741024.1

Defendant GREENWICH INSURANCE COMPANY, ("Greenwich") by its attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, submits this Memorandum of Law in support of its motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of Greenwich, in support of its motion for summary judgment which seeks an order to be entered for the following relief:

> (a) Pursuant to Federal Rules of Civil Practice 56(c), dismissing the complaint of plaintiff, 105 STREET ASSOCIATES, LLC ("105 Street"), and

> (b) For such other and further relief as this Court may deem just and necessary.

## FACTUAL BACKGROUND

The declaratory judgment action by 105 Street seeks coverage for defense and indemnification of the underlying action, ( "Primary Action") a personal injury lawsuit brought against *inter alia*, 105 Street, by Richard Conrad ("Conrad"). The Primary Action by Conrad arises from injuries allegedly sustained while Conrad was working for a sub-contractor, Jem Erectors, Inc. ("Jem Erectors") at the premises owned by 105 Street located at 235-237 East 105th Street, New York, New York (hereinafter referred to as the "Subject Premises") on July 2, 2002.[1]

The three defendants in the Primary Action are: 105 Street; BFC Construction Corp. ("BFC Construction"); and BFC Partners, L.P. ("BFC Partners"). BFC Construction was the general contractor for the Subject Premises and its principals were Brandon Baron, Peter

---

[1] All references to the Conrad Summons and Complaint in the Primary Action will be made as ("Conrad Complt. ¶_"). A copy of the Conrad Complaint is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "A."

1

Ferrara, and Donald Capoccia.  It is unclear as to the role that BFC Partners played in the Primary Action.  However, it should be noted that the "BFC" in both BFC Construction and BFC Partners stand for the first letter of the last name of each principal, Baron, Ferrara and Capoccia. Moreover, the principals of 105 Street were Baron, Ferrara, and Capoccia as well.[2] (B. Baron Dep. pg. 12, line 17, Exhibit "B").

Additionally, all three named defendants in the Primary Action are located at the same business address.  As of March 26, 2007, according to the New York State Department of State, Division of Corporations, all three defendants in the Primary Action have the same designated agent and address for service of process: c/o Donald Capoccia, 2226 1st Avenue, New York, New York, 10029.[3]

At the time of the Conrad occurrence, 105 Street was insured by Greenwich under Commercial General Liability policy number WGG 5001058 (the "Policy")[4] for the policy period of April 13, 2002 to April 15, 2003.  The Certificate of Insurance for 105 Street[5] stated the named insured as:

> 105 Street Associates
> c/o BFC Construction Corp.
> 2226 1[st] Avenue
> New York, NY 10029

[Certificate, Exhibit "E"]

---

[2]  All references to the December 7, 2006 deposition transcript of Brandon Baron will be made as (B. Baron Dep. Pg_, Line ___.) A copy of the December 7, 2006 B. Baron transcript is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "B".

[3]  All references to the 105 Street, BFC Partners, and BFC Construction New York State Department of State Division of Corporations entity information will be made as ("NYS DOS Info"). Copies of the NYS DOS Info are annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "C."

[4]  All references to the Policy will be made as (Pol. Section __). A copy of the Policy is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "D."

[5]  All references to the Certificate of Insurance for 105 Street will be made as ("Certificate"). A copy of the Certificate is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "E."

2

Under the heading, "COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY," the Policy provides:

1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2)    The "bodily injury" or "property damage" occurs during the policy period.

c.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

The Policy contains the following definitions:

(3)    "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time

(13)    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

As a condition precedent to coverage, the Policy requires 105 Street to provide Greenwich with notice of an "occurrence," which may result in a claim, as soon as practicable. Specifically, the relevant portions of the Policy provide as follows:

**"SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS":**

2.    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

3

a.    You must see to it that **we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim**. To the extent possible, notice should include:

   (1)    How, when and where the "occurrence" or offense took place;

   (2)    The names and addresses of any injured persons and witnesses; and

   (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

   (1)    Immediately record the specifics of the claim or "suit" and the data received; and

   (2)    Notify us as soon as practicable. **You must see to it that we receive written notice of the claim or "suit" as soon as practicable.**

c.    You and any other involved insured must:

   (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2)    Authorize us to obtain records and other information;

   (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit";…

(Pol. Section IV, Exhibit "D") [*emphasis added*].

Accordingly, in order for coverage under the Policy to attach, 105 Street was required to provide notice to Greenwich of the occurrence as soon as practicable or once 105 Street, its agents and/or employees, were aware of the occurrence.

On August 6, 2002, Conrad J. Benedetto, counsel for Conrad in the Primary Action, wrote via certified mail to BFC Construction advising it of Conrad's recent filing of a

4

worker's compensation claim in connection with an alleged accident.[6]    Specifically, Mr. Benedetto states in said letter that the Conrad claim arises from a July 2, 2002 accident at 105th Street between 2nd and 3rd Avenue. (August 6, 2002 letter, Exhibit "F"). The Subject Premises, owned by 105 Street is located at 105th Street between 2nd and 3rd Avenues.[7]    Additionally, Mr. Benedetto requested that BFC Construction forward the August 6, 2002 letter to its liability carrier. At that time, 105 Street failed to notify Greenwich of Conrad's alleged accident and subsequent worker's compensation claim, typical predicates to personal injury lawsuits.

Moreover, on September 9, 2002, Mr. Benedetto again wrote via certified mail to BFC Construction with a "second request" that it forward the aforementioned letter to its liability carrier and informing it of the potential lawsuit.[8]    Again, notwithstanding the fact that 105 Street owned the Subject Premises cited in both the August 6, 2002 and September 9, 2002 letters as where the Conrad claim occurred, 105 Street failed to forward the claim to Greenwich pursuant to the Policy agreement (Pol. Section IV, Exhibit "D").

On April 20, 2004, Conrad served a summons and complaint naming 105 Street, BFC Construction, and BFC Partners as defendants, on the Secretary of State in connection with the July 2, 2002 accident.[9]    On the same day, the Secretary of State forwarded the Conrad summons and complaint via certified mail to 105 Street, BFC Construction, and BFC Partners.[10]

---

[6]    All references to the August 6, 2002 letter from Conrad J. Benedetto to BFC Construction will be made as ("August 6, 2002 letter"). A copy of the August 6, 2002 letter is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "F."

[7]    All references to the March 26, 2007 Google Map of 235 105th Street, New York, New York, will be made as ("Google Map"). A copy of the Google Map is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "G."

[8]    All references to the September 9, 2002 letter from Conrad J. Benedetto to BFC Construction will be made as ("September 9, 2002"). A copy of the September 9, 2002 letter is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "H."

[9]    All references to the Affidavit of Service by the Secretary of State, dated April 20, 2004, will be made as ("AOS"). A copy of the Affidavit of Service is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "I."

[10]    All references to the Receipt for Service dated April 20, 2004, will be made as ("Receipt"). A copy of the receipt is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "J."

5

Furthermore, the Service of Process Unit, Division of Corporations, confirmed delivery and produced the signed return receipt by Estelle Rodriguez, the employee responsible for forwarding claims of the business entities residing at 2226 1st Avenue, New York, New York.[11] However, despite the fact that 105 Street was a first-named defendant on the summons and complaint signed for by Estelle Rodriguez on April 26, 2004, 105 Street again failed to notify Greenwich of the Conrad lawsuit until August 18, 2004.

On July 8, 2004, counsel for Conrad wrote to Donald Capoccia, the registered agent for service of process and partner in all three of the named defendants in the Primary Action.[12] The July 2004 letter notified BFC Construction that it was in default as it had not interposed an answer or appeared in connection with the Conrad action. (July 8, 2004 letter). Additionally, counsel enclosed a courtesy copy of the summons and complaint and again directed BFC Construction to forward all documents to its liability carrier. (July 8, 2004 letter).

Nevertheless, according to Steven Potolsky, owner of North Shore Risk Management (hereinafter "North Shore"), the insurance broker for 105 Street, the July 8, 2004 letter was not forwarded to North Shore until July 19, 2004.[13] At that time, Mr. Potolsky was inexplicably confused as to whether 105 Street was covered by insurance for the Primary Action, and thus failed to forward the claim to Greenwich for another month.[14] (Potolsky Summary, Exhibit "M"). In fact, Mr. Potolsky conceded that he did not immediately forward the July 8,

---

[11] All references to the March 28, 2007 letter and annexed copy of the April 26, 2004 certified mail return receipt, from Service of Process Unit, Division of Corporations, will be made as ("March 28, 2007 letter"). A copy of the March 28, 2007 letter is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "K."

[12] All references to the July 8, 2004 letter from Kelner & Kelner to Donald Capoccia will be made as ("July 8, 2004 letter"). A copy of the July 8, 2004 letter is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "L."

[13] All references to the Steven Potolsky summarization of events will be made as ("Potolsky Summary"). A copy of the Potolsky summary is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "M."

[14] All references to the Steven Potolsky deposition transcript will be made as ("Potolsky Dep. Pg_ Line _."). A copy of the Potolsky transcript is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "N."

6

2004 letter to Greenwich because it was an "oversight" that was "corrected...a number of weeks later." (Potolsky Dep., pg. 77, lines 12-13, Exhibit "N").

Specifically, Mr. Potolsky was initially confused as to whether 105 Street had coverage for the Conrad claim and as such, failed to immediately notify Greenwich of the late claim.[15] Two years prior, on or about September 18, 2002, Ms. Rodriguez had forwarded Mr. Potolsky the August 6, 2002 and September 9, 2002 letters from Mr. Benedetto informing BFC Construction of the Conrad worker's compensation claim. (July 26, 2004 letter, Exhibit "O"). Among the papers forwarded by Ms. Rodriguez to Mr. Potolsky was a Certificate of Insurance for Jem Erectors, the subcontractor Conrad was employed by at the time of the alleged accident. (Potolsky Dep., pg. 33, lines 22-25, Exhibit "N"). Mr. Potolsky claims that the confusion concerning coverage stemmed from Jem Erector's Certificate of Insurance because it stated that the coverage provided was for a project on Madison Avenue, not for 105th Street, the Subject Premises. (Potolsky Dep., pg. 34, lines 19-23, Exhibit "N"). Due to his confusion, Mr. Potolsky phoned Ms. Rodriguez to inquire as to the correct location of the Conrad accident. (Potolsky Dep., pg. 35, lines 7-9, Exhibit "N"). At that time, Mr. Potolsky claims that Ms. Rodriguez told him that she had no further information to give him other than what was already forwarded to North Shore. (Potolsky Dep., pg. 35, lines 16-18, Exhibit "N"). Despite being the broker for both 105 Street and BFC Construction, and the individual responsible for securing insurance coverage for the Subject Premises, Mr. Potolsky failed to forward the August 6, 2002 and September 9, 2002 letters to Greenwich in a timely fashion.

Two years later when Mr. Potolsky received the July 8, 2004 letter from 105 Street he was again confused and sent the paperwork back to Ms. Rodriguez. (July 24, 2004

---

[15] All references to the July 26, 2004 letter from Steven Potolsky to Estelle Rodriguez, will be made as ("July 26, 2004 letter"). A copy of the July 26, 2004 letter is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "O."

7

letter, Exhibit "O"). Again, despite being the broker, Mr. Potolsky believed that 105 Street was not covered by insurance for the Conrad claim. (July 24, 2004 letter, Exhibit "O"). Almost another month went by until Mr. Potolsky realized his ongoing mistake and forwarded the file on to Greenwich.[16]

Accordingly, more than two years after it occurred and four months after the lawsuit was served, Greenwich was not notified of the accident until the late afternoon of August 18, 2004[17]. (Barnaba Aff., ¶3). Michael Barnaba, a Senior Claims Consultant for XL Insurance, the claim administrator for Greenwich, handled the Conrad claim.[18]  (Barnaba Aff., ¶1). After receiving the notice of claim from North Shore, on August 20, 2004, Mr. Barnaba requested from Ms. Weiner of North Shore, among other things, the summons and complaint in the Conrad action (Barnaba Aff. ¶3). August 20, 2004 was the first time that Greenwich was provided with the summons and complaint that was initially served on 105 Street **four months** prior on April 20, 2004. (Barnaba Aff., ¶3). Additionally, it should be noted that many documents requested from 105 Street remain outstanding to date. (Barnaba Aff., ¶5).

Specifically, on August 25, 2004, Mr. Barnaba faxed Estelle Rodriguez, an employee and contact for 105 Street, with requests for various documents necessary to properly investigate the newly submitted Conrad claim.[19]  Among other things, Mr. Barnaba requested: copies of insurance certificates of 105 Street and BFC Construction; contracts between 105

---

[16] All references to the August 18, 2004 letter from Steven Potolsky to Donald Schneider, will be made as ("August 18, 2004 letter"). A copy of the August 18, 2004 letter is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "P."

[17]  All references to the Affidavit of Michael Barnaba, sworn to on April 5, 2007, will be made as ("Barnaba Aff. ¶__). A copy of the Barnaba Aff. is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth.

[18] All references to the December 29, 2006 Michael Barnaba deposition transcript will be made as ("Barnaba Dep., pg.__, line __). A copy of the Barnaba transcript is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "Q.

[19]  All references to the August 25, 2004 fax from Mr. Barnaba to Ms. Rodriguez will be made as ("August 25, 2004 fax"). A copy of the August 25, 2004 fax is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "R."

8

Street and BFC Construction; contracts between 105 Street or BFC Construction and the subcontractor, Jem Erectors, Inc.; copies of corporate filings identifying the principals/members of 105 Street; advisement as to whether 105 Street had an "on-site representative" for the duration of the construction project; and copies of any and all incident/claim reports, daily project logs, etc. (Barnaba Aff., ¶5). To date, a number of the aforementioned documents remain outstanding. (Barnaba Aff., ¶5). Significantly, 105 Street failed to provide any copies of an incident/claim report, daily project log, or any documentation pertaining to the Conrad incident. (Barnaba Aff., ¶5).

After receiving notice from North Shore, Greenwich immediately began investigating the Conrad claim and retained Wilson, Elser, Moskowitz, Edelman & Dicker, LLP (hereinafter "Wilson Elser") as coverage counsel to confirm that 105 Street had not notified Greenwich in a timely fashion of the Primary Action and/or the Conrad incident (Barnaba Aff., ¶4). While Wilson Elser was analyzing the coverage issue, to the extent that 105 Street provided contracts with other entities involved in the construction project to Greenwich, Mr. Barnaba began sending out tender letters. (Barnaba Aff., ¶6). As a result, at least one of the tenders was denied based on late reporting. (Barnaba Aff., ¶6).

Upon completion of its coverage analysis, Wilson Elser submitted a coverage opinion to Greenwich recommending a declination of coverage for the Conrad action as a result of late notice.[20] (Barnaba Aff.,¶8). Specifically, Wilson Elser emphasized that 105 Street was served with the summons and complaint on April 20, 2004, over four months prior to submitting the claim to Greenwich. (Barnaba Aff.,¶8).

---

[20]  All references to the September 10, 2004 letter from Wilson Elser to XL Insurance, redacted pursuant to the November 7, 2006 Court Order, will be made as ("September 10, 2004 letter"). A copy of the September 10, 2004 letter is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "S."

9

On September 15, 2004, Ed Walsh, Assistant Vice President and Claim Manager for XL Insurance, officially authorized Mr. Barnaba to disclaim coverage for the Conrad action to 105 Street due to late notice (Barnaba Aff., ¶9). A mere five days later, on September 20, 2004 a denial letter based on Wilson Elser's opinion of late notice was served on 105 Street.[21] (Barnaba Aff., ¶10).

On or about October 24, 2005, 105 Street served a summons and complaint on Greenwich, seeking defense and indemnification for the Primary Action in the Supreme Court of the State of New York, New York County.[22] In response, pursuant to 28 USCA 1332, on or about November 21, 2005, Greenwich filed a notice of removal in the United States District Court for the Southern District of New York.[23] The United States District Court for the Southern District removed the action, and Greenwich interposed an Answer on or about December 16, 2005.[24]

## ARGUMENT

This Court should grant summary judgment to defendant Greenwich as there are no genuine issues of material fact, and thus Greenwich is entitled to judgment as a matter of law dismissing the complaint. See *Fed R. Civ. P. 56(c); Matsushita Elec. Induc. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the Plaintiff's favor. *Anderson v. Liberty*

---

[21] All references to the September 20, 2004 denial letter from Wilson Elser on behalf of Greenwich to 105 Street will be made as ("September 20, 2004 letter"). A copy of the September 20, 2004 letter is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "T."

[22] All references to the 105 Street Summons and Complaint against Greenwich will be made as ("Complt. ¶_"). A copy of the Complaint is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "U."

[23] All references to the Notice of Removal will be made as ("Removal Notice"). A copy of the Removal Notice is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "V."

[24] All references to the Answer will be made as ("Answer"). A copy of the Answer is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "W."

*7Lobby, Inc.,* 477 U.S. 242, 249 (1986). In the case at bar, it is clear that 105 Street cannot

proffer sufficient evidence to defeat Greenwich's motion for summary judgment.

**I.    NOTICE TO THE BROKER IS NOT NOTICE TO GREENWICH**

The Policy clearly requires notice to Greenwich as a condition precedent to coverage.

Courts have historically held that an insurance broker is the agent of the insured, not of the

insurer. *2540 Associates, Inc. v. Assicurazioni Generali, S.P.A.*, 271 A.D.2d 282, 707 N.Y.S.2d

59 (1st Dept. 2000); *Progressive Casualty Ins. Co. v. Yodice*, 276 A.D.2d 540, 714 N.Y.S.2d 715

(2d Dept. 2000). Notice to the insurance broker is not notice to the liability insurer. *Security*

*Mutual Ins. Co. of New York v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293

N.E.2d 76 (1972); *Incorporated Village of Pleasantville v. Calvert Ins. Co.*, 204 A.D.2d 689, 612

N.Y.S.2d 441 (2d Dept. 1994); *Kamyr, Inc. v. St. Paul Surplus Lines Ins. Co.*, 152 A.D.2d 62,

547 N.Y.S.2d 964 (3d Dept. 1989). Only if there is some evidence of action on the insurer's part

will a broker be held to have acted as the insurer's agent. *U.S. Delivery Systems, Inc. v. National*

*Union Fire Ins. Co. of Pittsburgh, PA*, 265 A.D.2d 402, 696 N.Y.S.2d 502 (2d Dept. 1999).

Contrary to the assertion that 105 Street first received notice of the Conrad lawsuit in

"mid-July"[25], its broker North Shore did not notify Greenwich of the occurrence until late on

August 18, 2004. (Barnaba Aff., ¶3). Moreover, Greenwich could not properly investigate the

Conrad claim until at earliest, August 20, 2004, after Greenwich requested the Conrad summons

and complaint, as well as the other documents necessary to properly investigate the Primary

Action. (Barnaba Aff., ¶3). Despite being requested, not all of the demanded documents by

Greenwich were produced by 105 Street. (Barnaba Aff., ¶5). Thus, 105 Street cannot claim

---

[25]    All references to the March 20, 2007 letter to the Court by counsel for plaintiff, Donald Schneider, will
be made as ("March 20, 2007 letter"). A copy of the March 20, 2007 letter is annexed to the declaration in support,
dated April 13, 2007, by Glenn J. Fuerth as Exhibit "X."

thatit notified Greenwich prior to August 18, 2004, because notice to North Shore, its broker, was not notice to Greenwich, its liability insurer. (Barnaba Aff., ¶2,). *2540 Associates, Inc. v. Assicurazioni Generali, S.P.A.*, 271 A.D.2d 282, 707 N.Y.S.2d 59 (1st Dept. 2000); *Progressive Casualty Ins. Co. v. Yodice*, 276 A.D.2d 540, 714 N.Y.S.2d 715 (2d Dept. 2000).

Section IV of the Policy, entitled Commercial General Liability Conditions, specifically, paragraph 2(a) of that section provides as follows:

> You must see to it that **we** are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. [emphasis added] (Exhibit "D").

Further, the second paragraph of the first page of the Policy specifically provides that, "[t]he words 'we', 'us' and 'our' refer to the company providing this insurance." (Exhibit "D"). It cannot be disputed that Greenwich is the company that provided insurance to 105 Street. Further, North Shore was not an agent of Greenwich, and thus 105 Street and its agents failed to comply with the notice conditions of the policy as notice was only provided to its broker prior to August 18, 2004, not to Greenwich.

## II.    105 STREET FAILED TO COMPLY WITH THE NOTICE PROVISION OF THE POLICY AND GREENWICH PROPERLY AND TIMELY DENIED COVERAGE

It is well settled that compliance with the terms of an insurance contract is a condition precedent to coverage. *White v. City of New York*, 81 N.Y.2d 955, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993); *Security Mutual Ins. Co. Of New York v. Acker-Fitzsimons Corp.*, supra; *SSBSS Realty Corp. v. Public Service Mutual Ins. Co.*, 253 A.D.2d 583, 677 N.Y.S.2d 136 (1st Dept. 1998) (three-month delay in notifying insurer of trip and fall unreasonable as a matter of law); *Kreger Truck Renting Co. v. American Guarantee & Liability Ins. Co.*, 213 A.D.2d 453, 623 N.Y.S.2d 623 (2nd Dept. 1995).

The requirement that notice be given "as soon as practicable" is a standard provision in liability policies that has been interpreted to require notice within a reasonable time under the circumstances. *Travelers Ins. Co. v. Volmar Construction Co.*, 2002 WL 31723191 (1st Dept. 2002). Absent a showing of legal justification, the failure to comply with the notice condition vitiates coverage. *Allcity Ins. Co. v. Jimenez*, 78 N.Y.2d 1054, 576 N.Y.S.2d 87, 581 N.E.2d 1342. An insurer need not show prejudice to sustain a coverage disclaimer. *Paramount Ins. Co. v. Rosedale Gardens, Inc.*, 293 A.D.2d 235, 743 N.Y.S.2d 59 (1st Dept. 2002). Instead, the burden is on the insured to demonstrate reasonableness for the delay. *Public Service Mutual Ins. Co. v. Hollander*, 228 A.D.2d 283, 644 N.Y.S.2d 214, citing *Security Mutual Ins. Co. of New York v. Acker-Fitzsimons Corp.*, supra. As such, an insurance carrier may disclaim coverage under an insurance contract where an insured fails to provide notice of a potential claim as soon as practicable. *White v. City of New York*, 81 N.Y.2d 955, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993).

It is undisputed that the Policy, which is the subject of this litigation, has a notice requirement. Specifically, Coverage "A" of Section I of the Policy entitled, "Bodily Injury and Property Damage Liability," provides, in pertinent part, as follows:

### 1. Insuring Agreement

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

13

Furthermore, Section IV of the Policy entitled, "Commercial General Liability Conditions," in

pertinent part, provides as follows:

> 2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit
>
> a.    You must see to it that we are notified <u>as soon as</u> <u>practicable</u> of an "occurrence" or an offense, which may result in a claim.  To the extent possible, notice should include: (emphasis added)
>
> (1)    How, when and where the "occurrence" or offense took place;
>
> (2)    The names and addresses of any injured persons and witnesses; and
>
> (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

Section V of the Policy provides the following definitions:

> 3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> 13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

As can be seen from the above referenced policy language, 105 Street was required to

give Greenwich notice of an occurrence "as soon as practicable." (Pol. Section IV, Exhibit "D").

In the instant declaratory judgment action, the incident in the Primary Action occurred on

July 2, 2002. (Conrad Complaint ¶48, Exhibit "A").  Greenwich did not receive notice until at

earliest, August 18, 2004, over two years after the occurrence, and four months after the lawsuit

was served, despite the fact that 105 Street could have given notice on at least the following

occasions:

- July 2, 2002 – Date of Loss

14

- August 6, 2002 – Notice of Worker's Compensation Claim

- September 9, 2002 – 2nd Notice of Worker's Compensation Claim

- April 20, 2004 – Summons & Complaint Served

- July 8, 2004 – Notice of Default of Primary Action

Thus, 105 Street did not notify Greenwich of the occurrence "as soon as practicable."

(Pol. Section IV, Exhibit "D").   105 Street's two year delay in notifying Greenwich of the

Conrad incident was unreasonable given the fact that 105 Street was aware of the incident given

the close business, legal, and insurance-related relationship between BFC Construction and 105

Street.  The August 6, 2002 and September 9, 2002 letters advising Plaintiff of the Conrad

worker's compensation claim, including the date and location of the claimed occurrence, was

sufficient notice of an occurrence *which may result in a claim.*  (August 6, 2002 letter, Exhibit

"F"; September 9, 2002 letter, Exhibit "H"; and Pol. Section IV, Exhibit "D").

Moreover, if anyone was in the position to possess knowledge of the business entities that

would be affected by the Conrad claim, it would be an employee of BFC Construction.  First,

BFC Construction is cited as the corporation in "care of" (c/o) of 105 Street on the Certificate of

Insurance.  (Certificate, Exhibit "E.").  Second, all three of the named defendants in the Primary

Action are housed in the same 3,000 square foot business space[26]: 2226 First Avenue, New York,

New York.  (G. Baron Dep. pg. 17, line 17, Exhibit "Y."). In fact, there were approximately only

five (5) or six (6) employees in the entire aforementioned office space[27].  (Richards Dep., pg. 48,

line 19, Exhibit "Z").  Third, Donald Capoccia is the agent of service from the Secretary of State

---

[26] All references to the January 11, 2007 deposition transcript of Greg Baron will be made as (G. Baron Dep. Pg_ Line __.) A copy of the January 11, 2007 G. Baron transcript is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "Y".

[27] All references to the May 24, 2006 deposition transcript of Brad Richards will be made as (Richards Dep. Pg_ Line __.) A copy of the May 24, 2006 Richards transcript is annexed to the declaration in support, dated April 13, 2007, by Glenn J. Fuerth as Exhibit "Z".

15

for all three of the named defendants in the Primary Action. (NYS DOS Info, Exhibit "C").

Fourth, with regard to BFC Construction, the "BFC" stood for "Baron, Ferrara, and Capoccia."

All three of the principals of BFC Construction, were also the partners of 105 Street. (B. Baron

Dep. pg. 12, line 17, Exhibit "B").

Of significant note, all three of the named defendants share employees, including Estelle

Rodriguez, one of the employees responsible for opening the mail for both BFC Construction

and 105 Street. (B. Baron Dep., p. 23, line 15, Exhibit "B").   In addition to opening the mail,

Ms. Rodriguez is responsible for sending Notice of Claims for personal injuries and forwarding

insurance-related documents to North Shore, the insurance broker for 105 Street and BFC

Construction. (B. Baron Dep., p. 24, line 19, Exhibit "B").   In fact, Ms. Rodriguez was the

employee who signed the certified mail return receipt from the Secretary of State for the April

20, 2004 Conrad summons and complaint (March 28, 2007 letter, Exhibit "K").   In addition to

the foregoing, Ms. Rodriguez was identified as the contact person for 105 Street when

Greenwich required additional information to investigate the Conrad claim.   (Barnaba Aff., ¶5,

7).   Accordingly, 105 Street cannot claim that notice to BFC Construction of the Conrad incident

(occurring at the premises owned by 105 Street) and lawsuit was not notice to 105 Street as well.

In addition to claiming that 105 Street was not aware of the Conrad claim prior to the

initiation of the Conrad lawsuit, 105 Street also claims that it did not receive the April 20, 2004

summons and complaint until "mid-July." (March 20, 2007 letter, Exhibit "X").   However,

service of process on a domestic corporation is deemed complete when the Secretary of State is

so served, and thus 105 Street was served on April 20, 2004.   (AOS, Exhibit "I").   *McKinney's*

*Business Corp. Law §306(b)(1)*.

16

In *26 Warren Corp. v. Aetna Casualty and Surety Company*, 253 A.D.2d 375 (1st Dept. 1998), Plaintiff-insured failed to timely notify its insurer of a lawsuit because it claimed that it never received a copy of the summons and complaint from the Secretary of State. . Plaintiff-insured's policy notice provision explicitly stated that a condition precedent to coverage was that, "the insured shall immediately forward to [the insurer] every demand, notice, summons or other process received by him or his representatives." *Id.* The Court held that the insurer's provision was "devoid of ambiguity" and that the receipt of service of the summons and complaint by the Secretary of State "constituted receipt by a representative within the meaning of the policy." *Id.* at 376.

On April 20, 2004, 105 Street was properly served through the Secretary of State in accordance with New York State Business Law. *McKinney's Business Law §306(b)(1),* (AOS, Exhibit "I"). Also on April 20, 2004, the Secretary of State immediately mailed the Conrad summons and complaint via certified mail to Donald Capoccia, 2226 First Avenue, New York, New York, 105 Street's designated agent and address for service of process. (Receipt of Service, Exhibit "J", and NYS DOCS Info, "Exhibit "C"). Additionally, a receipt of the certified mail, dated April 26, 2004, was returned to the Secretary of State by the U.S. Postal Service, signed by Estelle Rodriguez. (March 28, 2007 letter, Exhibit "K"). It should be noted that 105 Street is the first-named defendant on the Complaint, and yet Ms. Rodriguez still failed to forward the Complaint to Greenwich. (Complt., Exhibit "U"). However, regardless of 105 Street's assertions that it never received the Conrad summons and complaint, 105 Street, as a matter of law, was served on April 20, 2004 when the Secretary of State was served. *26 Warren Corp. v. Aetna Casualty and Surety Company,* 253 A.D.2d 375. Accordingly, 105 Street breached the

17

Policy notice provisions when it failed to notify Greenwich of the Conrad action in a timely manner.

Greenwich was therefore well within its rights to disclaim coverage, as compliance with the notice provision of the policy is a condition precedent to defense and indemnification. In light of 105 Street's failure to comply with the notice provision of the policy, Greenwich properly and timely disclaimed coverage as a matter of law.

**III.    GREENWICH TIMELY DISCLAIMED COVERAGE AND IS NOT OBLIGATED TO INDEMNIFY 105 STREET IN THE PRIMARY ACTION**

Under New York law, an insurer is not obligated to rely upon allegations in a complaint to determine coverage, but rather insurers are urged to conduct investigations into coverage to avoid piecemeal disclaimers. See *Pub. Serv. Mut. Ins. Co. v. Harlen House Assocs.*, 7 A.D.3d 421, 423 (1st Dep't 2004) citing *Norfolk & Dedham Mut. Fire Ins. Co. v. Petrizzi*, 121 A.D.2d 276, 278, 503 N.Y.S.2d 51, denied 68 N.Y.2d 611, 502 N.E.2d 1007, 510 N.Y.S.2d 1025 (1st Dep't 1986) (holding that it is reasonable for an insurer to investigate before deciding to disclaim coverage. This allows the disclaimer to be based on 'concrete evidence' and avoids 'piecemeal disclaimers'); see also *2540 Associates, Inc. v. Assicurazioni Generali, S.P.A.*, 271 A.D.2d 282 (1st Dep't 2000) (holding that investigation into claims is preferred to piecemeal disclaimers); see also *Mount Vernon Fire Ins. Co. v. Harris*, 193 F. Supp. 2d 674, 680 (E.D.N.Y. 2002) (holding that "forcing an insurer to issue 'piecemeal denials of coverage would frustrate [the insurer's] right to investigate claims'"); see also *DiGuglielmo v. Travelers Prop. Cas.*, 6 A.D.3d 344, 346 (1st Dep't 2004) citing *2540 Associates, Inc. v. Assicurazioni Generali, S.P.A.*, 271 A.D.2d 282 (1st Dep't 2000) (holding that "an insurer is not required to disclaim on timeliness grounds before conducting a prompt, reasonable investigation into other possible grounds for disclaimer; in fact,

18

a 'reasonable investigation is preferable to piecemeal disclaimers" especially after reporting the incident to the insurer seven months after its occurrence); see also *Wilczak v. Ruda & Capozzi, Inc.*, 203 A.D.2d 944, 611 N.Y.S.2d 73, 74 (4th Dep't 1994).

Greenwich was well within its rights, and in fact encouraged by New York law, to conduct its investigation into 105 Street's claim. *2540 Associates, Inc. v. Assicurazioni Generali, S.P.A.*, 271 A.D.2d 282, 283 (1st Dep't 2000), citing *First Financial Insurance Co.*, 1 N.Y.3d 64, 69 (N.Y. 2003) citing *Allcity Ins. Co. v. Jimenez*, 78 N.Y.2d 1054, 1056, 581 N.E.2d 1342, 576 N.Y.S.2d 87 (N.Y. 1991) citing *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (N.Y. 1979). As the summons and complaint could not facially confirm when and who first became aware of the incident, but did allege that the incident occurred in July of 2002, Greenwich was justified in conducting an investigation into 105 Street's potential late notice. Additionally, the summons and complaint was dated April 20, 2004, but Greenwich was not notified until August 18, 2004. (Barnaba Aff. ¶3). In order to gather accurate information, an investigation was essential. *2540 Associates, Inc. v. Assicurazioni Generali, S.P.A.*, 271 A.D.2d 282, 283 (1st Dep't 2000); *Pub. Serv. Mut. Ins. Co. v. Harlen House Assocs.*, 7 A.D.3d 421 (1st Dep't 2004).

Two days later, on August 20, 2004, Michael Barnaba, a Greenwich claims analyst, emailed North Shore, the broker for 105 Street, requesting additional documentation concerning the Conrad claim, including a request for the summons and complaint which had not been provided to Greenwich. (Barnaba Aff. ¶3). Although North Shore immediately forwarded the summons and complaint, a number of documents demanded from 105 Street remain outstanding to this day. (Barnaba Aff. ¶5).

19

Five days later, on August 25, 2004, Greenwich retained coverage counsel to confirm the untimeliness of 105 Street's notification to Greenwich of the Conrad claim. (Barnaba Aff. ¶4). Sixteen days later, on September 10, 2004, after a thorough investigation, Wilson Elser opined that coverage should be denied to 105 Street on the basis of late notice. (Barnaba Aff. ¶8). Five days thereafter, Ed Walsh, Assistant Vice President and Claim Manager for XL Insurance, authorized Mr. Barnaba to disclaim coverage. (Barnaba Aff. ¶9). A mere five days later, Greenwich properly and timely disclaimed coverage to 105 Street, only 30 days after receiving the summons and complaint in the Primary Action. (Barnaba Aff. ¶10).

It should be noted that despite being the broker for both 105 Street and BFC Construction, and the individual responsible for securing insurance coverage for the Subject Premises, Mr. Potolsky required an entire month to investigate and comprehend the complexity and confusion surrounding the Conrad claim. (August 18, 2004 letter, Exhibit "P"). In contrast, Greenwich was able to investigate, secure coverage counsel, send tender letters, and disclaim coverage without all the relevant documentation within a month of receiving the Conrad summons and complaint. (September 20, 2004 letter, Exhibit "T").

In *Pub. Serv. Mut. Ins. Co. v. Harlen House Assocs.*, 7 A.D.3d 421 (1st Dep't 2004), the insureds owned and managed an apartment building at which a tenant was injured by a gunshot. The policy provision governing notice to the insured was nearly identical to that of the Greenwich Policy. *Pub. Serv. Mut. Ins. Co. v. Harlen House Assocs.*, 7 A.D.3d 421 (1st Dep't 2004). The Court held that the insureds had to notify the insurer of a possible claim as soon as practicable, and its delay, nearly seven months, was unreasonable as a matter of law as they had information shortly after the incident indicating the tenant might have been seriously injured. Id. at 422. The Court further held, as a matter of law, that the insurer did not unreasonably delay

20

disclaiming coverage as it properly conducted an investigation into the insured's possible late notice. Id. at 422, 423. Specifically, the Court held that the insurer did not have enough information to disclaim coverage until it received the investigative report. Id. at 423. Accordingly, the court held that the insurer's disclaimer, which was issued only 27 days after it learned of the grounds for disclaimer, was timely as a matter of law. Id.

In the case at hand, Greenwich did not have sufficient information in the materials provided in the notice of claim to disclaim coverage. (Barnaba Aff. ¶7). Greenwich was therefore justified in conducting its investigation into the potential violation of the notice provision of the Policy by 105 Street. Accordingly, on or about September 10, 2004, when Greenwich received confirmation from Wilson Elser supporting the declination of coverage, this was the date upon which the time for Greenwich to disclaim coverage began to accrue (Barnaba Aff. ¶8); *Pub. Serv. Mut. Ins. Co. v. Harlen House Assocs.,* 7 A.D.3d 421 (1st Dep't 2004).

Therefore, Greenwich's disclaimer on September 20, 2004 is both proper and timely as it was made only 10 days after Greenwich became aware of information substantiating the grounds for disclaiming coverage.

## IV.    105 STREET IS NOT ENTITLED TO REIMBURSEMENT OF ATTORNEY FEES, COSTS AND OTHER EXPENSES

Plaintiff is not entitled to any fees as a result of the declaratory judgment action because Greenwich did not place them in a defensive posture. *Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12 (1979); see also *County of Nassau v. Michigan Mut. Ins. Co.,* 276 A.D.2d 578 (2nd Dept. 2000). New York Courts regularly hold that an insured is not entitled to attorneys' fees where it has brought an action against its insurer to determine the availability or applicability of insurance. Id. Moreover, New York Courts generally have looked to whether the

21

insurer commenced legal proceedings in order to assess an insured's claim for attorneys' fees. Id. (Noting that even though the insurer denied coverage for the claim and the insured brought an action to determine its rights as a result, the insured is not entitled to attorneys' fees).

In *Mighty Midgets, Inc. v. Centennial Ins. Co.*, an insured brought a declaratory judgment action against its insurer after the insurer had declined to defend the insured in a personal injury action. Id. The New York Court of Appeals denied the insured recovery of its attorney's fees and expenses incurred. Id. The Court explained: "it is the rule in New York that such a recovery may not be had in an affirmative action brought by an [insured] to settle its rights . . ., but only when he has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." Id. citing *Johnson v. General Mutual Ins. Co.*, 24 N.Y.2d 42 (1969). Because the insured in that case had taken the offensive, and thus had not been compelled "to defend against an attempt by its insurer to obtain a declaration of its right to disclaim," the Court found that the insured was not entitled to recover its attorney's fees and costs. Id.

105 Street filed a summons and complaint seeking an Order declaring its rights and legal limitations under the subject policy. (Complt. ¶17, Exhibit "U"). Since 105 Street brought this affirmative action against Greenwich to settle its rights under the policy, 105 Street is not entitled to attorneys fees and costs incurred in its own defense of the underlying claims because Greenwich properly and timely denied coverage.

As such, 105 Street's request for relief for costs and disbursements must be denied, and the complaint must be dismissed in its entirety.

2741024.1

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Court enter an Order pursuant

to Federal Rules of Civil Practice 56(c), granting summary judgment in favor of defendant,

Greenwich Insurance Company.

Dated: New York, New York
      April 13, 2007

                          Yours, etc.,

        WILSON, ELSER, MOSKOWITZ EDELMAN & DICKER LLP

                By:          _____
                              Glenn J. Fuerth (GJF5848)
                              Attorneys for Defendant
                              GREENWICH INSURANCE COMPANY
                              150 East 42nd Street
                              New York, New York 10017-5639
                              (212) 490-3000

TO:    Donald F. Schneider
        Attorney for Plaintiff
        90 Broad Street, 6th Floor
        New York, NY 10004
        212-265-2266