```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------
105 STREET ASSOCIATES, LLC,

                    Plaintiff,

       — against —                         05 Civ. 9938 (VM)

GREENWICH INSURANCE COMPANY,               DECISION AND ORDER


                    Defendant.
----------------------------------------
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff 105 Street Associates ("105 Associates") brought this action against defendant Greenwich Insurance Company ("Greenwich"), seeking a declaratory judgment determining that Greenwich is obligated to defend and indemnify 105 Associates with respect to a personal injury action (the "Conrad Action") that was filed against it in New York state court. This Court has diversity jurisdiction over 105 Associates's claims pursuant to 28 U.S.C. § 1332. The parties have both submitted motions for summary judgment. For the reasons set forth below, the parties' motions for summary judgment are DENIED.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-5-07

I. BACKGROUND[1]

The basis for 105 Associates' complaint against Greenwich is the Conrad Action, a personal injury suit brought by Richard Conrad ("Conrad") against 105 Associates, BFC Construction Corp. ("BFC Construction"), and BFC Partners, L.P. ("BFC Partners"). 105 Associates owns the real property where Conrad's personal injury accident is alleged to have occurred. 105 Associates had hired BFC Construction as a general contractor for a development project at the site. Conrad is alleged to have been employed by Jem Erectors, Inc., a subcontractor hired by BFC Construction. BFC Partners' role in the Conrad Action is unclear, but it should be noted that all three defendants are listed under the same business address and name Donald Capoccia ("Capoccia") as the addressee to whom the secretary of state will mail process if accepted on behalf of the entity.[2] (See Exhibit C attached to Barnaba Aff.)  Additionally, the letters BFC stand for the last initials of  Brandon Baron ("Baron"), Joseph Ferrara

---

[1] The factual summary below derives primarily from the following documents: the Declaration of Brad Richards, dated March 22, 2007 ("Richards Decl."), the Declaration of Donald Capoccia, dated March 23, 2007 ("Capoccia Decl."), the Affidavit of Michael Barnaba, dated April 11, 2007 ("Barnaba Aff."), the Declaration of Donald Capoccia in Reply, dated April 25, 2007 ("Cappoccia Reply Decl."), and the exhibits attached thereto.  Except where specifically referenced, no further citation to these sources will be made.

[2] New York Business Corporation Law § 304(a) designates the secretary of state as "the agent of every domestic corporation and every authorized foreign corporation upon whom process against the corporation may be served."

("Ferrara"), and Capoccia, who are the sole members of 105 Street Manager ("105 Manager"), a part-owner of 105 Associates. Capoccia asserts that 105 Manager's interest in 105 Associates is "nominal (.01%)," and that the remaining 99.99% of the company is owned by two entities with which "neither Baron, Ferrara nor [Capoccia] ever owned an interest in or were affiliated in any manner with." (Capoccia Decl. ¶ 2).

On August 6, 2002, Conrad sent a letter addressed to BFC Construction, notifying the company of his personal injury and claim, and requesting that the letter be forwarded to BFC Construction's liability insurance carrier. When BFC Construction failed to respond, Conrad sent a second, identical letter the following month, which also elicited no response.

On April 20, 2004, Conrad served a summons and complaint, naming 105 Associates, BFC Construction, and BFC Partners as defendants, upon the secretary of state, who promptly forwarded the documents to the defendant corporations. Though the documents were received by Estelle Rodriguez ("Rodriguez") on April 26, 2004, Capoccia alleges that Rodriguez was never authorized to accept or open mail addressed to 105 Associates or to Capoccia. He further asserts that Rodriguez never delivered the summons and complaint to him, nor did she notify

him in any other manner of the Conrad Action.

105 Associates claims that it was first notified of the Conrad action in "mid-July 2004," when the company received a letter from Conrad's attorney notifying it that Conrad would be moving for default judgment absent an appearance or answer by the defendants. After receiving the letter, 105 Associates promptly informed its insurance broker, North Shore Risk Management ("North Shore"), of the Conrad Action. Due to North Shore's erroneous determination of 105 Associates' insurance coverage, North Shore did not notify Greenwich of the claim until approximately one month later, on August 18, 2004. On September 20, 2004, Greenwich denied 105 Associates' claim on the grounds that notice of both the "suit" and the underlying "occurrence" was not given "as soon as practicable."

The insurance agreement between 105 Associates and Greenwich reads, in relevant part:

> [The insured] must see to it that [the insurer is] notified as soon as practicable of an "occurrence" or an offense which may result in a claim . . . . If any claim is made or "suit" is brought against any insured, [the insured] must . . . [n]otify [the insurer] as soon as practicable. [The insured] must see to it that [the insurer] receive[s] written notice of the claim or "suit" as soon as practicable.

(Ex. A attached to Richards Decl.) The parties do not dispute that the injury allegedly suffered by Conrad qualifies as an

4

"occurrence" as that term is defined in the contract, nor that the Conrad Action qualifies as a "suit." They do, however, disagree as to whether 105 Associates notified Greenwich "as soon as [was] practicable" under the circumstances.

105 Associates also asserts that Greenwich's 34-day delay in responding to its claim violates state insurance law, which requires "an insurer [who] disclaim[s] liability or den[ies] coverage for death or bodily injury . . . [to] give written notice as soon as is reasonably possible of such disclaimer . . . to the insured and the injured person or any other claimant." New York Insurance Law § 3420(d). 105 Associates contends that Greenwich's allegedly unreasonable 34-day delay effectively constitutes a waiver of its right to disclaim. The Court will address below two issues raised in the parties' motions: (1) whether 105 Associates failed to comply with the requirement that notice be given to the insurance carrier "as soon as practicable," and (2) whether Greenwich's 34-day delay in informing 105 Associates that it would deny coverage was so unreasonable as to constitute a waiver of its right to disclaim.

## II.  DISCUSSION

A.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most

favorable to the non-moving party, no genuine issue of material fact remains for adjudication." Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986)). The role of a court considering a motion for summary judgment "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). The moving party bears the burden of demonstrating that no genuine issue of material fact exists or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. See Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). When deciding cross-motions for summary judgment, the standard to be applied "is the same as that for individual summary judgment motions and a court must consider each motion independent of the other." Schultz v. Stoner, 308 F.Supp.2d 289, 298 (S.D.N.Y. 2004).

B.   DENIAL OF COVERAGE FOR LATE NOTICE

New York law holds that "an insured's failure to comply with a policy's notice provision violates a condition precedent to coverage, and relieves an insurer of an

obligation to defend or indemnify the insured." Nouveau Elevator Indus., Inc. v. Cont'l Cas. Ins. Co., No. 05 cv 0813, 2006 WL 1720429, at *3 (E.D.N.Y. June 21, 2006); see also Commercial Union Ins. Co. V. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 271 (2d Cir. 1987) (finding that "under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy"). An insurer must receive timely notice of a claim or potential claim "in order to be able to take an active, early role in the litigation process and in any settlement discussions and to set adequate reserves." Argo Corp. v. Greater New York Mut. Ins. Co., 827 N.E.2d 762, 765 (N.Y. 2005). Because "[l]ate notice of lawsuit in the liability insurance context is so likely to be prejudicial," New York courts do not consider whether the insurer was actually prejudiced by late notice. Id.; see also Olin Corp. v. Insurance Co. of North America, 743 F.Supp. 1044, 1053 (S.D.N.Y. 1990) ("Late notice is a complete defense whether or not the insurance company was prejudiced by the delay.").

In the present case, the insurance agreement contained a notice provision requiring 105 Associates to notify Greenwich of any claim or potential claim "as soon as practicable," and the parties disagree as to when this notice provision was triggered. With respect to the two letters sent to BFC

Construction in August and September of 2002, there is clearly still a disputed issue of fact regarding whether 105 Associates received notice of the Conrad action through these letters. The dispute centers around the connection between the defendants in the Conrad Action and the specific role played by Rodriguez in each of the three defendant corporations. Though the stated reasons proffered by 105 Associates for failing to receive timely notification of the Conrad action are somewhat less than compelling (see Capoccia Reply Decl. ¶ 4-6), such outstanding issues of fact necessarily preclude summary judgment based on the 2002 correspondence. See Anderson, 477 U.S. at 247-50.

Accordingly, the issue for the court is whether 105 Associates' duty to notify Greenwich was triggered when it received actual notice of the lawsuit by way, allegedly, of the July 2004 letter from Conrad's attorney, or when it received constructive notice of the lawsuit through Conrad's service of process upon the secretary of state in April 2004. See New York Business Corporation Law § 306(b)(1) ("Service of process on [a] corporation shall be complete when the secretary of state is so served."). The Second Circuit, interpreting New York law, has held that "[t]he test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time

would have suggested to a reasonable person the possibility of a claim." Sparacino v. Pawtucket Mutual Insurance Co., 50 F.3d 141, 143 (2d Cir. 1995) (citing Commercial Union, 822 F.2d at 272; Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co., 748 F.2d 118, 121-22 (2d Cir. 1984)) (emphasis added).

Greenwich argues that the Court should follow the New York Appellate Division decision in 26 Warren Corp. v. Aetna Casualty and Surety Co., 676 N.Y.S.2d 173, 174 (App. Div. 1st Dep't 1998). There, the insured's duty to notify the insurer was held to have been triggered when the secretary of state was served, even though the insured did not receive a forwarded copy and thus had no actual notice of the pending lawsuit. The terms of the contract in 26 Warren Corp., however, expressly stated that "the insured shall immediately forward to the [insurer] every demand, notice, summons or other process received by him or his representative," and the secretary of state was found to be "a representative within the meaning of the policy." Id. (emphasis added). By contrast, the language of the agreement in the present case is far less explicit in that it does not expressly describe specific circumstances that trigger the insured's duty to notify the insurer, and instead merely requires that notice be provided "as soon as practicable." Where a contested provision of an insurance agreement lacks "a definite and

9

precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion," that provision is ambiguous and should be "interpreted against the insurer and in favor of coverage for the insured." Breed v. Insurance Co. of North Am., 385 N.E.2d 1280, 1282 (N.Y. 1978); Nouveau, 2006 WL 1720429 at *3. Faced with a nearly identical set of facts, including an insurance agreement requiring that the insured provide notice to the insurer as soon as practicable, the Nouveau court found "that the policy at issue required [the insured] to have actual knowledge of the [underlying] action in order to trigger its duty to notify [the insurer] of the lawsuit." Id. (emphasis added). The Court therefore finds that the date on which 105 Associates claims to have received actual notice of the suit is the appropriate starting point from which to judge the reasonableness of its delay in notifying Greenwich.

Summary judgment would be appropriate on this issue only if the delay between the date that 105 Associates claims it received actual notice of the Conrad Action and the day that it informed Greenwich of the claim was unreasonable as a matter of law. 105 Associates claims that it first received notice of the claim by way of a letter from Conrad's attorney in mid-July, 2004, informing it that Conrad intended to move

for a default judgment in the Conrad Action. Greenwich was not appraised of the Conrad Action until August 18, 2004. This one month delay was allegedly due to the error of 105 Associates' insurance broker, North Shore, which returned the forwarded summons and complaint to 105 Associates shortly after it received the documents, and informed them that their insurance policy would not cover the Conrad Action. With the assistance of 105 Associates' counsel, this error was eventually corrected and North Shore forwarded the documents to Greenwich.

Greenwich does not dispute that the notification delay between July and August 2004 was due entirely to North Shore's error. Instead, Greenwich argues that, contrary to the insurance agreement, 105 Associates failed to notify Greenwich specifically, and that 105 Associates' reliance on North Shore to inform Greenwich of the action is irrelevant. However, the Court recognizes that "the provision that notice be given 'as soon as practicable' call[s] for a determination of what was within a reasonable time in the light of the facts and circumstances of the case at hand." Mighty Midgets, Inc. v. Centennial Ins. Co., 389 N.E.2d 1080, 1083 (N.Y. 1979). Specifically, New York courts recognize that reliance on an insurance broker's faulty statements concerning the extent of an insurance agreement may be reasonable if the circumstances

11

permit. In Universal Underwriters Ins. Co. v. Patriot Ambulette, Inc., 539 N.Y.S.2d 981 (App. Div. 2d Dep't 1989), the court found that the insured provided notice "as soon as practicable" where its five-month delay in notifying the insurer was due to its insurance broker's mistake. The Second Circuit has similarly held that an insured reasonably "relied on its broker's broad and unequivocal statement that . . . [the insurer] 'will not pick up any coverage for the [underlying personal injury] incident,'" and excused a one year delay in providing notice of an "occurrence" to the insurer. Sparacino, 50 F.3d at 144. Thus, the one-month delay between the alleged date of actual notice (mid-July, 2004) and the date on which Greenwich became aware of the claim (August 18, 2004) was not necessarily so unreasonable as to be outside the scope of what is, legally, "as soon as practicable." In any event, the issue of "[w]hether or not an insured's failure to provide timely notice to an insurer is reasonable under the circumstances is ordinarily a question of fact precluding summary judgment." Mount Vernon Fire Ins. Co. v. Abesol Realty Corp., 288 F. Supp. 2d 302, 311 (E.D.N.Y. 2003).

Thus, the Court finds that there clearly are disputed issues of material fact concerning not only date as of which notice of the Conrad Action can be attributed to 105

Associates, but also as to whether 105 Associates delay in notifying Greenwich of the claim was reasonable under the circumstances. Thus, the parties' motions for summary judgment on this issue are denied.

C.  LATE NOTICE OF DISCLAIMER

105 Associates also claims that once notified of the Conrad Action and its assertion of coverage, Greenwich violated New York state insurance law by failing to "give written notice as soon as [was] reasonably possible of [its] disclaimer." New York Insurance Law § 3420(d). New York jurisprudence holds that "[a] failure by the insurer to give [notice of disclaimer] as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage . . . precludes effective disclaimer or denial." Hartford Ins. Co. v County of Nassau, 46 N.Y.2d 1028, 1029 (1979). In this case, Greenwich issued the disclaimer 34 days after North Shore appraised it of the Conrad Action. Greenwich asserts that it required this time in order to conduct a thorough investigation of the facts and to determine why 105 Associates allegedly failed to receive the various notifications of the action. As part of its investigation, Greenwich solicited the aid of outside legal counsel after an initial review revealed that the claim was relatively complex. Outside counsel completed its examination

and submitted its recommendation to deny coverage based on late notification on September 10, 2004; Greenwich notified 105 Associates of the disclaimer ten days later.

Where an insurer fails to promptly inform an insured that its claim is denied based on the insured's violation of a timely notice provision, the insurer's delay may be excused if it can "establish that the delay . . . was reasonably related to its completion of a thorough and diligent investigation." Schulman v. Indian Harbor Ins. Co., 836 N.Y.S.2d 682, 684 (App. Div. 2d Dep't 2007). In its motion to dismiss, 105 Associates offers case law suggesting that delays of thirty days or more are unreasonable as a matter of law. In each case, the insurer was found to have improperly disclaimed because "any added information that the insurer could have learned from further investigation did not affect the insurer's decision to deny coverage in the first place . . . . [A]ny delay in notification based on such extra investigation is unreasonable as a matter of law." New York University v. First Financial Ins. Co., 322 F.3d 750, 755 (2d Cir. 2003). In West 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co., 736 N.Y.S.2d 34 (App. Div. 1st Dep't 2002), the insurer's 30-day delay was found to be unreasonable as a matter of law because the insured's delay "was obvious from the face of the notice of claim and the accompanying

complaint, and [the insurer] had no need to conduct an investigation before determining whether to disclaim." Id. at 34; see also 2833 Third Ave. Realty Associates v. Marcus, 784 N.Y.S.2d 863 (App. Div. 1st Dept. 2004).

That 105 Associates so vigorously disputes the reasonableness of its own late notice, in the face of what appears facially to be a late claim, suggests that the viability of Greenwich's disclaimer was not so "obvious." The other cases on which 105 Associates relies in its attempt to demonstrate the unreasonableness of Greenwich's delay are distinguishable on other grounds. In Allstate Ins. Co. v. Swinton, 811 N.Y.S.2d 108 (App. Div. 2d Dep't 2006), a 34-day delay was found to be unreasonable when the insurer offered no reason as to why the lengthy investigation was necessary, and further refused to produce the claims adjuster who investigated the accident. Here, by contrast, Greenwich has offered reasons to support its delay, and has also submitted the affidavit of Michael Barnaba ("Barnaba"), the Greenwich claims analyst who investigated the Conrad Action, to support its assertions.

105 Associates also relies on the unreasonable 36-day delay at issue in Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co., 806 N.Y.S.2d 53 (App. Div. 1st Dep't 2005), but the delay in that case was attributable to the insurer's

15

internal staffing problems rather than to a lengthy claim investigation. See id. at 57.

In asserting that Greenwich did not actually require a full month to investigate the claim, 105 Associates relies on Barnaba's notes, which indicate that he was aware that "late notice may be an issue" as early as the day on which Greenwich first received notice of the claim. (Barnaba Notes attached as Ex. L to Richards Decl.). The Court is not persuaded that Barnaba's observation constituted an actual decision by Greenwich to deny coverage, even though Greenwich ultimately affirmed Barnaba's initial reaction. In light of the circumstances of this case, including Greenwich's assessment that the claim was sufficiently complex and that consultation with outside counsel was necessary, an investigation into the facts was warranted, and the 34-day delay by Greenwich in giving notice of disclaimer was not unreasonable as a matter of law. Summary judgment on this issue is therefore not appropriate.

### III. ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the motion for summary judgment of plaintiff 105 Street Associates, LLC ("105 Associates") (Docket No. 21) granting the relief sought in the complaint is DENIED; and it is further

**ORDERED** that the motion for summary judgment of defendant Greenwich Insurance Company ("Greenwich") (Docket No. 28) is DENIED; and it is further

**ORDERED** that the parties's appear before the Court for a conference on September 14, 2007 at 2:00 p.m. to set a trial date and discuss any outstanding pre-trial issues.

**SO ORDERED.**

DATED:   New York, New York
         September 5, 2007

_____
Víctor Marrero
U.S.D.J.